COPY

1   Laurence M. Rosen, Esq. (SBN 219683)
2   THE ROSEN LAW FIRM, P.A.
    333 South Grand Avenue, 25th Floor
3   Los Angeles, CA 90071
4   Telephone: (213) 785-2610
    Facsimile: (213) 226-4684
5   Email: lrosen@rosenlegal.com

6   -and-

7   Phillip Kim, Esq.
    THE ROSEN LAW FIRM, P.A.
8   275 Madison Avenue, 34th Floor
    New York, New York 10016
9   Telephone: (212) 686-1060
    Facsimile: (212) 202-3827
10  Email: pkim@rosenlegal.com

11  Counsel for Plaintiff

12              UNITED STATES DISTRICT COURT
13              CENTRAL DISTRICT OF CALIFORNIA

14  ------------------------------------------------X
15  SUSAN HUFNAGLE, INDIVIDUALLY        CASE NO. CV10-8695 VBF
    AND ON BEHALF OF ALL OTHERS                  (VBKx)
16  SIMILARLY SITUATED,

17          Plaintiff,                  COMPLAINT

18                                      CLASS ACTION
            vs.
19  RINO INTERNATIONAL
20  CORPORATION, DEJUN ZOU, JENNY
    LIU, BEN WANG, LI YU, KENNITH C.    JURY TRIAL
21  JOHNSON, JIANPING QIU, XIE QUAN,    DEMANDED
22  and ZEJIN LI,

23  '

24          Defendants.
25  ------------------------------------------------X

26

27

28

                            1
    Class Action Complaint for Violation of the Federal Securities Laws

FILED
CLERK, U.S. DISTRICT COURT

NOV 1 2 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Plaintiff Susan Hufnagle ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against Defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Orient Paper, Inc. ("RINO," or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of RINO between March 31, 2009, and November 11, 2010, inclusive, seeking to recover damages caused by Defendants' violations of federal securities laws.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder

(17 C.F.R. §240.10b-5) and under Sections 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").

3.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. §77v(a), Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

5.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased RINO securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant RINO purports to engage in the business of environmental protection and remediation. RINO's sole business activities are acting as a holding company of its direct and indirect subsidiaries, Innomind Group Limited, a company organized under the laws of the British Virgin Islands, and Dalian Innomind Environment Engineering Co., Ltd. ("Dalian Innomind"), a limited

liability company organized under the laws of the People's Republic of China ("PRC"), which contractually controls and operates affiliate Dalian Rino Engineering Science and Technology Co., Ltd. ("Dalian Rino"), a limited liability company organized under the laws of the PRC, and its subsidiaries Dalian Rino Environmental Engineering Design Co., Ltd. and Dalian Rino Environmental Construction and Installation Engineering Project Co., Ltd.  At all relevant times herein, the Company's common stock was actively traded on the NASDAQ   under ticker "RINO."

8.     Defendant Jianping Qiu ("Qiu") was the Company's Chairman of the board of directors since 2008.

9.     Defendant Dejun Zou ("Zou") was the Company's Chief Executive Officer and a director since 2007.

10.     Defendant Kennith C. Johnson ("Johnson") was a Company Director since 2008.

11.     Defendant Xie Quan ("Quan") has been a director of the Company since March 2008.

12.     Defendant Zejin Li ("LI") has been a director of the Company at all relevant times herein.

13.     Defendant Jenny Liu ("Liu") was Chief Financial Officer of RINO from June, 2009 through April, 2010.

Class Action Complaint for Violation of the Federal Securities Laws

14.     Defendant Li Yu ("Yu") has been RINO's Chief Accounting Officer since November 2009 and its accounting manager since its inception.

15.     Defendant Ben Wang ("Wang") has served as Chief Financial Officer of RINO since April 2010.

16.     Dejun Zou, Ben Wang, Li Yu, Jenny Liu, Kennith C. Johnson, Jianping Qiu, Xie Quan, and Zejin Li are collectively referred to hereinafter as the "Individual Defendants."

17.     During the Class Period, each of the Individual Defendants, as senior executive officers, agents, and/or directors of RINO and its subsidiaries and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.   Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

18.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets, and present

and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.

19.   It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein is the result of collective actions of the narrowly defined group of defendants identified above.   Each of the above officers and directors of RINO and its subsidiaries and affiliates, by virtue of his or her position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein.   Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

20.    As officers, directors and controlling persons of a publicly-held company whose securities were and are registered with the SEC pursuant to the Exchange Act, and that was traded on the Amex and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information.   The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

21.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.  Because of their Board membership and/or executive and managerial positions with RINO, each of the Individual Defendants had access to the adverse undisclosed information about RINO's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations

made by or about RINO and its business issued or adopted by the Company materially false and misleading.

22.     The Individual Defendants, because of their positions of control and authority as officers, directors, agents, and/or controlling persons of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or to cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and press releases detailed herein and is therefore primarily liable for the representations contained therein.

23.     Each Defendant is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of RINO securities by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme (i) deceived the investing public regarding RINO's business, operations, management and the intrinsic value of RINO's securities; and (ii) caused Plaintiff and other members of the Class to purchase RINO securities at artificially inflated prices.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

Class Action Complaint for Violation of the Federal Securities Laws

24.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of RINO during the Class Period and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, RINO's securities were actively traded on the NASDAQ Bulletin Board.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by RINO or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

Class Action Complaint for Violation of the Federal Securities Laws

28.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)   whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)   whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of RINO; and

(c)   to what extent the members of the Class have sustained damages and the proper measure of damages.

29.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

30.    During the Class Period, RINO issued materially false and misleading statements and omitted to state material facts that rendered their affirmative statements misleading as they related to the Company's financial performance, business prospects, and financial condition.  As a result of these materially false and

misleading statements, the price of the Company's securities was artificially inflated to a Class Period high of over $19.00 per share.  As the truth of the Company's materially false and misleading statements entered the market, the price of the Company's stock plummeted, falling to $11.10 per share.

31.     The Class Period begins on March 31, 2009, when the Company filed its annual report for the year ended December 31, 2008 on Form 10-K with the SEC.  The 10-K was signed by Defendants Zou, Qiu, Quan and Johnson and, pursuant to Sarbanes-Oxley Act of 2002 ("SOX"), was separately certified by Zou and Qiu.

32.     In the 10-K, the Company claimed to have generated $139.3 million in revenue during fiscal year 2008.

33.     On March 31, 2010, the Company filed an annual report for the year ended December 31, 2009 on Form 10-K with the SEC. The 10-K was signed by Defendants Zou, Qiu, Quan, Lim Jenny Liu and Johnson and, pursuant to SOX, was separately certified by Zou and Qiu.

34.     In the 10-K, the Company claimed to have generated $192.6 million in revenue during fiscal year 2009.

35.     The amounts of revenue that RINO reported in its annual reports for 2008 and 2009 were materially false and misleading.  The financial statements which RINO filed in its annual reports with China's State Administration of Industry and Commerce showed amounts for revenue, income and assets that were

much lower than those filed in its annual reports with the SEC.  For example, for 2009, RINO reported only $11 million of revenue to the Chinese authorities, while telling U.S. investors in its SEC filings that it had earned revenue of $192.6 million.

36.     The material discrepancies between RINO's SEC filed financial statements and its official Chinese filed financial statements indicates the defendants have engaged in a wide-ranging fraud.

## TRUTH BEGINS TO EMERGE

37.     The relevant truth began to enter the market and/or materialize through partial disclosures.

38.     On November 10, 2010, a market research and trading firm by the name of Muddy Waters released an investment report (the "Report") asserting that there is a substantial financial fraud at RINO.

39.     The thirty-page Report rated the Company's stock as a "strong sell" and set forth a host of detailed criticisms that questioned the veracity of the information contained in the Company's financial statements and press releases. The Report shocked the market and caused the Company's stock to decline from its closing price of $15.52 on November 9, 2010 to close at $11.10 on November 11, 2010  —a decline of roughly 28%.

40.     The Muddy Waters Report listed a number of accounting red flags indicating that defendants had caused RINO to file false financial statements with the SEC in an effort to inflate the value of RINO stock.

Class Action Complaint for Violation of the Federal Securities Laws

41.    The red flags of fraud alleged in the Muddy Waters Report included the following:

a) RINO reported 2009 revenue of $193 million. Chinese regulatory filings show that RINO's consolidated 2009 revenue was only $11 million, or 94.2% lower than it reported in the US.

b) Management has diverted tens of millions of dollars for its own use. Management "borrowed" $3.2 million to purchase a luxury home in Orange County, CA the day that RINO closed its $100.0 million financing.

c) Many of its claimed customer relationships do not exist.

d) RINO's management is draining cash from the company for its own business and personal uses. The management is in flagrant breach of its VIE agreements, which require it to pay income to RINO (as opposed to taking it).

e) RINO's balance sheet has an astonishingly small amount of tangible assets for a manufacturer. Rather, it is filled with low quality "paper" assets that balance out the inflated earnings, and likely hide leakage.

f) Actual profit margins are really half to a third of what RINO reported to investors.

**Applicability of Presumption of Reliance:**

**<u>Fraud-on-the-Market Doctrine</u>**

Class Action Complaint for Violation of the Federal Securities Laws

42.   At all relevant times, the market for RINO's common stock was an efficient  market for the following reasons, among others:

(a)   RINO's stock met the requirements for listing, and is listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)   During the class period, on average, over several hundreds of thousands of shares of  RINO stock were traded on a weekly basis, demonstrating a very active and broad market for RINO stock and permitting a *very strong* presumption of an efficient market;

(c)   As a regulated issuer, RINO filed periodic public reports with the SEC and was eligible and did file short form registration statements with the SEC on Form S-3 during the Class Period;

(d)   RINO regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)   RINO was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous NASD member firms were active market-makers in RINO stock at all times during the Class Period;  and

(g)     Unexpected material news about RINO was rapidly reflected and incorporated into the Company's stock price during the Class Period.

43.    As a result of the foregoing, the market for RINO's common stock promptly digested current information regarding RINO from all publicly available sources and reflected such information in RINO's stock price.   Under these circumstances, all purchasers of RINO's common stock during the Class Period suffered similar injury through their purchase of RINO's common stock at artificially inflated prices, and a presumption of reliance applies.

## FIRST CLAIM

### Violation of Section 10(b) Of

### The Exchange Act Against and Rule 10b-5

### Promulgated Thereunder Against All Defendants

44.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.    This claim is brought against RINO and all of the Individual Defendants.

46.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as

alleged herein; and (2) cause plaintiff and other members of the Class to purchase RINO's common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

47.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for RINO's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of RINO as specified herein.

49.    These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors

Class Action Complaint for Violation of the Federal Securities Laws

of RINO's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about RINO and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of RINO's common stock during the Class Period.

50.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives,  directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of

1
2
3

information to the investing public which they knew or recklessly disregarded was

materially false and misleading.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

     51.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing RINO's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

21
22
23
24
25
26
27
28

     52.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of RINO's common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of RINO's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in

which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired RINO common stock during the Class Period at artificially high prices and were or will be damaged thereby.

53.   At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding RINO's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their RINO common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

54.   By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

55.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

56.   This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) Of

### The Exchange Act Against the Individual Defendants

57.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.   The Individual Defendants acted as controlling persons of RINO within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were

issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

59.     In particular, each Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.     As set forth above, RINO and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

61.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

62.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil

Procedure and Plaintiff's counsel as Class Counsel;

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 12, 2010                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

_____
Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

-and-

Phillip Kim, Esq.
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, New York 10016

1

Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com

2

3

Counsel for Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint for Violation of the Federal Securities Laws

**Rosen, Laurence**

| | |
|---|---|
| **From:** | postmaster@rosenlegal.com |
| **Sent:** | Friday, November 12, 2010 11:21 AM |
| **To:** | lr54321@gmail.com |
| **Subject:** | Confirmation of Receipt of Certification |

Dear Susan A Hufnagle,

We have received your certification in the RINO International Corp. class action litigation. Thank you for submitting your information. Below is a copy of your certification - please retain it for your records. If you have any questions, please feel free to contact us at 1-866-rosenlegal (866-767-3653) or via e-mail at info@rosenlegal.com.

With increasing frequency, we find that our new clients were victimized by more than one company. If you think you may have lost monies in the market due to the dishonest acts or statements of a different company and would like it to be investigated, free of charge, please email us at reportfraud@rosenlegal.com.

Sincerely,

The Rosen Law Firm P.A.

--------

CERTIFICATION

Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against RINO International Corp.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The RINO International Corp. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

First name: REDACTED

Last name: REDACTED

Address: REDACTED

City: REDACTED

State, Zip: REDACTED

Email: REDACTED

Phone: REDACTED

The Plaintiff Certifies that:

1

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Shares Purchased:

Purchase Date(s): 11/10/2010
Number of shares: 100
Price per Share: 14.81

Shares Sold:

7. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except if detailed below:

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate: yes

By clicking on the button below, I intend to sign and execute this agreement: yes

Clicked to Submit Certification in the RINO International Corp. Action

Signed pursuant to California Civil Code Section 1633.1, et seq. - Uniform Electronic Transactions Act

-------------

Confidential Information

The information in this e-mail message is privileged and confidential information intended only for the use of

2

the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (866-767-3653) and return the original message to the above e-mail address. Thank you.

-------------

## Retention Agreement



REDACTED

REDACTED



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Valerie Baker Fairbank and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV10- 8695 VBF (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division** 312 N. Spring St., Rm. G-8 Los Angeles, CA 90012 | [ ] **Southern Division** 411 West Fourth St., Rm. 1-053 Santa Ana, CA 92701-4516 | [ ] **Eastern Division** 3470 Twelfth St., Rm. 134 Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 785-2610

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN HUFNAGLE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF(S)<br><br>v.<br><br>RINO INTERNATIONAL CORPORATION, DEJUN ZOU, JENNY LIU, BEN WANG, LI YU, KENNETH C. JOHNSON, JIANPING QIU, XIE QUAN, AND ZEJIN LI<br>DEFENDANT(S). | CASE NUMBER<br><br>**CV10-8695** VBF (VBKx)<br><br><br><br>**SUMMONS** |

TO:     DEFENDANT(S): <u>RINO INTERNATIONAL CORPORATON, DEJUN ZOU, BEN WANG, LI YU,</u>
<u>KENNITH C. JOHNSON, JIANPINQ QIU, XIE QUAN, ZEJIN LI , JENNY LIU</u>

A lawsuit has been filed against you.

Within <u>21</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Laurence M. Rosen</u>                         , whose address is <u>333 South Grand Avenue, 25th Floor Los Angeles, CA 90071</u>                         . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**TANYA DURANT**

Dated: _11-15-10_                   By: _____
                                        Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>Susan Hufnagle, Individually and on Behalf of All Others Similarly Situated | DEFENDANTS<br>RINO INTERNATIONAL CORPORATION, DEJUN ZOU, BEN WANG, LI YU, KENNITH C. JOHNSON, JIANPING QIU, XIE QUAN, JENNY LIU and ZEJIN LI |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Laurence M. Rosen, Esq. (SBN 219683), The Rosen Law Firm, P.A.,<br>333 South Grand Avenue, 25th Floor, Los Angeles, CA 90071<br>(213) 785-2610 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No            ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Securities Fraud Class Action, 15 USC 78j(b) and 78t(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☑ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:   Case Number: **CV10-8695**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Illinois |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | People's Republic of China |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

\* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _~signature~_    Date November 12, 2010

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |