ROBBINS UMEDA LLP
BRIAN J. ROBBINS (190264)
brobbins@robbinsumeda.com
CRAIG W. SMITH (164886)
csmith@robbinsumeda.com
GREGORY E. DEL GAIZO (247319)
gdelgaizo@robbinsumeda.com
CONRAD B. STEPHENS (266790)
cstephens@robbinsumeda.com
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile:  (619) 525-3991

[Proposed] Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SUSAN HUFNAGLE, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>     vs.<br><br>RINO INTERNATIONAL CORPORATION, et al.,<br><br>                    Defendants. | NO: CV-10-08695-VBF-VBK<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL<br><br>Judge: Hon. Valerie Baker Fairbank<br>Courtroom: 9<br>Hearing Date: February 14, 2011<br>Hearing Time: 1:30 p.m. |

| | | |
|---|---|---|
| 1 | | |
| 2 | BRENDA CHAU, Individually and on Behalf of All Others Similarly Situated, | NO: CV-10-09517-VBF-VBK |
| 3 | | |
| 4 | Plaintiff, | |
| 5 | vs. | |
| 6 | RINO INTERNATIONAL CORPORATION, et al., | |
| 7 | Defendants. | |
| 8 | LI BAIG, Individually and on Behalf of All Others Similarly Situated, | NO: CV-10-01754-VBF-VBK |
| 9 | | |
| 10 | Plaintiff, | |
| 11 | vs. | |
| 12 | RINO INTERNATIONAL CORPORATION, et al., | |
| 13 | Defendants. | |
| 14 | ALAN STEVENS, Individually and on Behalf of All Others Similarly Situated, | NO: CV-10-09011-VBF-VBK |
| 15 | | |
| 16 | Plaintiff, | |
| 17 | vs. | |
| 18 | RINO INTERNATIONAL CORPORATION, et al., | |
| 19 | | |
| 20 | Defendants. | |
| 21 | XI ZHANG, Individually and on Behalf of All Others Similarly Situated, | NO: CV-10-01887-VBF-VBK |
| 22 | | |
| 23 | Plaintiff, | |
| 24 | vs. | |
| 25 | RINO INTERNATIONAL CORPORATION, et al., | |
| 26 | Defendants. | |
| 27 | | |
| 28 | | |

| | |
|---|---|
| PAUL H. VU, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>RINO INTERNATIONAL CORPORATION, et al.,<br><br>　　　　　　　Defendants. | NO: CV-10-01908-VBF-VBK |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS.......................................................................... 2

III.  ARGUMENT ............................................................................................... 6

    A.   The Actions Should Be Consolidated ................................................ 6

    B.   Mr. Botta Satisfies the "Lead Plaintiff" Requirements of the
        Exchange Act and Should Be Appointed Lead Plaintiff ..................... 6

        1.   Mr. Botta Has Timely Moved for Appointment as Lead
            Plaintiff ...................................................................................... 8

        2.   Mr. Botta Has the Requisite Financial Interest in the
            Relief Sought by the Class........................................................ 8

        3.   Mr. Botta Satisfies the Requirements of Rule 23 ..................... 9

    C.   Mr. Botta's Selection of Lead Counsel Should Be Approved ............ 11

IV.   CONCLUSION .......................................................................................... 12

Class member Frank Botta respectfully submits this memorandum of law in support of his motion for: (1) consolidation pursuant to Federal Rules of Civil Procedure 42(a); (2) appointment as lead plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B); and (3) approval of his selection of Robbins Umeda LLP ("Robbins Umeda") as lead counsel for the class.

## I. INTRODUCTION

Presently pending in this district are six securities class action lawsuits brought on behalf of all persons who purchased or acquired RINO International Corporation ("RINO" or the "Company") securities during the period between May 15, 2008 and November 19, 2010, inclusive (the "Class Period") against RINO and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act"). These actions are: *Hufnagle v. RINO International Corporation, et al.*, No. CV-10-8695-VBF-VBK; *Baig v. RINO International Corporation, et al.*, No. SACV-10-1754-CJC-RNBx; *Stevens v. RINO International Corporation, et al.*, No. CV-10-9011-PA-VBKx; *Chau v. RINO International Corporation, et al.*, No. CV-10-09517-RGK-PJWx; *Zhang v. RINO International Corporation, et al.*, No. SACV-10-01887-CJC-RNBx; and *Vu v. RINO International Corporation, et al.*, No. CV-10-01908-AG-MLGx (the "Related Actions"). In securities class actions, the PSLRA requires district courts to resolve consolidation prior to appointing a lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). Here, the actions should be consolidated because they

each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (CD. Cal. 1999).

After its decision on consolidating, the Court must appoint a lead plaintiff. The PSLRA sets forth the manner by which courts are to select a lead plaintiff. Pursuant to the PSLRA, the court is to appoint as lead plaintiff the movant with the largest financial interest in the litigation that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).

Here, Mr. Botta should be appointed as lead plaintiff because: (1) he timely filed for appointment as lead plaintiff; (2) to the best of his knowledge, Mr. Botta has the largest financial interest in this litigation; and (3) he will adequately represent the interests of the class. *See Id.*; *see also infra* Part III. B. Additionally, Mr. Botta has retained experienced and competent counsel to represent the class. As the "most adequate plaintiff," Mr. Botta's selection of Robbins Umeda as lead counsel should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.   STATEMENT OF FACTS

RINO engages in the business of environmental protection and remediation. Its business purportedly consists of designing, manufacturing, installing, and servicing wastewater treatment, and flue gas desulphurization equipment principally for use in China's iron and steel industry. RINO is a Nevada corporation headquartered in

Jinzhou District, Dalian, People's Republic of China. RINO became a publicly traded corporation through a reverse merger with a shell company called Applied Biometrics.

The defendants have issued multiple improper statements regarding aspects of the Company's financial operations and results, which raise significant concerns about the Company's future business prospects. For example, on May 15, 2008, RINO filed its quarterly report for the period ended March 31, 2008, with the U.S. Securities and Exchange Commission ("SEC") on Form 10-Q. RINO reported revenues of $19,045,425 compared to revenues of $9,790,321 for the first quarter of 2007; gross profits of $7,722,567 for the first quarter 2008, compared to $4,899,131 in the first quarter 2007. Attached as exhibits to the first quarter 2008 10-Q were certifications of the Company's Chief Executive Officer, DeJun Zou ("Zou"), and the Company's Chief Financial Officer, Ben Wang.

On March 31, 2009, the Company filed its annual report for the year ended December 31, 2008, on Form 10-K with the SEC. The 10-K contained statements by defendants Zou, Jianping Qui ("Qiu"), Xie Quan ("Quan"), and Kenneth C. Johnson ("Johnson") and, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), was separately certified by Zou and Qiu. In the Form 10-K, the Company claimed to have generated $139.3 million in revenue during fiscal year 2008.

On March 31, 2010, the Company filed an annual report for the year ended December 31, 2009, on Form 10-K with the SEC. The 10-K contained statements by defendants Zou, Qiu, Quan, Johnson, Yu Li, and Jenny Liu and, pursuant to SOX, was

separately certified by Zou and Qiu. In the Form 10-K, the Company claimed to have generated $192.6 million in revenue during fiscal year 2009.

The amounts of revenue that RINO reported in its annual reports for 2008 and 2009 were materially false and misleading. On November 10, 2010, a market research and trading firm by the name of Muddy Waters released an investment report asserting that there is a pervasive financial fraud at RINO (the "Report"). The Report exposed numerous improper statements made by the defendants in press releases and SEC filings. In particular, the Report listed a number of accounting red flags indicating that defendants had caused RINO to file false financial statements with the SEC in an effort to inflate the value of RINO stock. Specifically, the SEC filings were misleading because the Company's financial results reported in filings to Chinese regulatory authorities reported RINO's consolidated 2009 revenue was only $11 million. A vast 94.2% lower than its filings reported to the SEC. Thus, RINO's financial results were grossly inflated by including revenue that it had not earned. The Report also detailed that: (1) many of the Company's customer relationships do not exist; (2) RINO has serious accounting flaws; and (3) RINO's management is siphoning cash from the Company for their own business and personal uses, including the purchase of a $3.2 million house in Orange County, California. The defendants have offered no credible defense to the Report's findings. In fact, analysts said their own analyses were in line with the Report's findings.

The impact of the Report was severe. Its release caused the Company's stock to decline from its closing price of $15.52 on November 9, 2010 to close at $11.10 on November 11, 2010 — a decline of roughly 28%.

On November 16, 2010, the Company postponed a previously scheduled earnings conference call after consulting with the chairman of the Company's audit committee. On November 19, 2010, the Company filed a Form 8-K with the SEC disclosing that the Company's independent auditors, Frazer Frost delivered a letter ("Auditor's Letter") to the Company and each of its directors. The Auditor's Letter stated that the "Company did not in fact enter into two of the six purported contracts, and a third contract among the six was unexplainable." Moreover, Zou said that there might be problems with up to 40% of the Company's contracts. As such, in a Form 8-K filed with the SEC on November 19, 2010, the Company disclosed that RINO's previously issued financial statements for the fiscal years ending December 31, 2008 and 2009, and the interim quarters ending March 31, 2008 through September 30, 2010, should no longer be relied upon. In addition, the Company's interim unaudited financial statements for the periods March 31, 2010, June 30, 2010, and September 30, 2010, should no longer be relied on inasmuch as such financial statements incorporate results from 2008 and 2009.

On December 2, 2010, the NASDAQ delisted RINO's stock because: (1) the Company's financial reports could no longer be relied upon; (2) the Company's admission that it had not entered into certain previously disclosed contracts; and (3)

the Company's failure to respond to the NASDAQ staff's request for additional information regarding allegations raised by the Report.

When the RINO's shares resumed trading on December 8, 2010, on the OTC, the stock further declined $2.92 or 48% and closed at $3.15 per share.

As a result of the material misstatements and omissions in the Company's public statements, which were prepared and approved by the defendants, RINO shareholders purchased shares at artificially inflated prices.

### III. ARGUMENT

#### A. The Actions Should Be Consolidated

"If actions before the court involve a common question of law or fact, the court may…consolidate the actions…." Fed. R. Civ. P. 42(a). Here, the Related Actions assert claims on behalf of purchasers of RINO common stock for the alleged violations of the Exchange Act during the Class Period. The claims, class periods, defendants, and factual allegations are substantially the same. Accordingly, "[c]onsolidating these cases for all purposes will be the most efficient solution for the court, and will ease the litigation burden on all parties involved." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999).

#### B. Mr. Botta Satisfies the "Lead Plaintiff" Requirements of the Exchange Act and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in each private action arising under the Exchange Act that is brought as a

plaintiff class action pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(1)-(3)(B)(i).

First, a notice to the class must be published within twenty days of filing the initial action informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Here, the relevant notice was published on Business Wire on November 15, 2010. *See* Declaration of Gregory E. Del Gaizo in Support of Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Del Gaizo Decl."), Ex. A. Within sixty days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this the Exchange Act is "the person or group of persons" that –

>   (aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

### 1. Mr. Botta Has Timely Moved for Appointment as Lead Plaintiff

All class members who are interested in moving for the appointment of lead plaintiff in this matter must do so by January 14, 2011. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B). Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on November 15, 2010), Mr. Botta timely hereby moves this Court to be appointed lead plaintiff on behalf of all members of the class. Mr. Botta has also duly signed and filed a certification stating his willingness to serve as a representative party on behalf of the class. *See* Del Gaizo Decl., Ex. B.

### 2. Mr. Botta Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, Mr. Botta suffered losses of $280,900 based on his Class Period purchases of RINO stock. *See* Del Gaizo Decl., Ex. B. To Mr. Botta's knowledge, his financial interest in this matter is the largest of any competing lead plaintiff movant. As a result, Mr. Botta should be appointed lead plaintiff. *See* 15 U.S.C. section78u- 4(a)(3)(B).

### 3. Mr. Botta Satisfies the Requirements of Rule 23

According to 15 U.S.C. section 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Of these four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed. *Apple v. LJ Int'l, Inc.*, No. CV 07-6076 GAF(JWJx), 2008 U.S. Dist. LEXIS 12618, at *16 (C.D. Cal. Feb. 8, 2008) ("At this stage of the litigation, 'nothing more than a preliminary showing is required' with respect to typicality and adequacy.") (citation omitted).

The test of typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of

conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The adequacy requirement is met if no conflicts exist between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation. Fed. R. Civ. P. 23(a)(4); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Mr. Botta satisfies the typicality requirement of Rule 23 because, just like all other class members, he: (1) purchased RINO securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby. Thus, Mr. Botta's claims are typical of those of other class members because his claims and the claims of other class members arise out of the same course of events.

Similarly, Mr. Botta is an adequate class representative because his interest in aggressively pursuing the claims against defendants is clearly aligned with the interests of the members of the class, who were similarly harmed as a result of defendants' false and misleading statements. There is no antagonism between Mr. Botta's interests and those of the other members of the class. Further, Mr. Botta's certification and the Del Gaizo Decl., demonstrate Mr. Botta's ability, incentive, and commitment to vigorously prosecute this action. Del Gaizo Decl., Ex. B. Moreover, Mr. Botta is a sophisticated investor with a significant stake in the outcome of this litigation and is the very sort of lead plaintiff envisioned by Congress in enacting the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995) reprinted in 1995 U.S.C.C.A.N. 679, 733 ("class members with large amounts at stake will represent the

interests of the plaintiff class more effectively than class members with small amounts at stake."). *See also* Del Gaizo Decl., Ex. B.

Finally, and as demonstrated below, Mr. Botta's proposed counsel is highly qualified, experienced, and able to conduct this complex litigation in an efficient, effective, and professional manner. Thus, Mr. Botta satisfies Rule 23's typicality and adequacy requirements for the purposes of this motion.

### C. Mr. Botta's Selection of Lead Counsel Should Be Approved

Pursuant to 15 U.S.C. section 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent. In that regard, Mr. Botta, as the presumptively most adequate plaintiff, has selected Robbins Umeda to serve as lead counsel for the class. Robbins Umeda possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Del Gaizo Decl., Ex. C. Moreover, Robbins Umeda also has significant shareholder litigation experience. *Id*. As a result, the Court should approve Mr. Botta's selection of Robbins Umeda as lead counsel for the class.

## IV. CONCLUSION

For the foregoing reasons, the six Related Cases before the Court are virtually identical and should be consolidated. In addition, the Court should appoint Mr. Botta as lead plaintiff and approve his selection of Robbins Umeda as lead counsel for the class.

Dated: January 14, 2011

Respectfully submitted,

ROBBINS UMEDA LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
GREGORY E. DEL GAIZO
CONRAD B. STEPHENS

s/Brian J. Robbins
BRIAN J. ROBBINS

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile:  (619) 525-3991

[Proposed] Lead Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 14, 2011.

_____s/Brian J. Robbins_____
BRIAN J. ROBBINS

570176