1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOLD BENNETT CERA & SIDENER LLP
SOLOMON B. CERA (99467)
THOMAS C. BRIGHT (169713)
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
scera@gbcslaw.com
tbright@gbcslaw.com

JOHN TORBETT (165615)
ATTORNEY AT LAW
2416 5th Street, Suite 102
Santa Monica, CA 90405
Telephone: (310) 403-9806
jtlaw@dslextreme.com

Attorneys for The Guerrilla and Hua-Mei Partnerships

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN HUFNAGLE, Individually and on Behalf of All Others Similarly Situated, | Case No. CV10-8695 VBF (VBKx) |
| | CLASS ACTION |
| Plaintiff, | |
| vs. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE GUERRILLA AND HUA-MEI PARTNERSHIPS FOR (I) APPOINTMENT AS LEAD PLAINTIFFS; (II) APPROVAL OF SELECTION OF LEAD COUNSEL; AND (III) CONSOLIDATION OF RELATED CASES |
| RINO INTERNATIONAL CORPORATION, DEJUN ZOU, JENNY LIU, BEN WANG, LI YU, KENNITH C. JOHNSON, JIANPING QIU, XIE QUAN, and ZEJIN LI, | |
| Defendants. | |
| [caption continues on next page] | |

DATE:     February 14, 2011
TIME:     1:30 p.m.
CTRM:     9, Spring Street
          Los Angeles, CA
JUDGE:    Hon. Valerie Baker
          Fairbank

#123389

| | |
|---|---|
| ALI BAIG, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>      vs.<br><br>RINO INTERNATIONAL CORPORATION, DEJUN ZOU, BEN WANG, YI LIU, aka/ JENNY LIU, and YU LI,<br><br>      Defendants. | Case No.: SACV10-1754 VBF (VBKx) |
| ALAN STEVENS , Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>      vs.<br><br>RINO INTERNATIONAL CORPORATION, ZOU DEJUN, QIU JIANPING, JENNY LIU, BEN WANG, YU LI, KENNITH C. JOHNSON, QUAN XIE and LI ZEJIN LI,<br><br>      Defendants. | Case No. CV10-09011 VBF (VBKx) |

[caption continues on next page]

#123389

| | |
|---|---|
| 1  XI ZHANG, Individually and on Behalf | Case No. SACV10-01887 VBF (VBKx) |
| 2  of All Others Similarly Situated, | |
| 3            Plaintiff, | |
| 4        vs. | |
| 5  RINO INTERNATIONAL | |
| 6  CORPORATION, KENNITH C. | |
| 7  JOHNSOHN, ZEJIN LI, JENNY LIU, | |
|    JIANPING QIU, XIE QUAN, BEN | |
| 8  WANG, LI YU, WEIGUO ZHANG, | |
| 9  and DEJUN ZOU, | |
| 10           Defendants. | |
| 11 | |
| 12  BRENDA CHAU, Individually and on | Case No. CV10-09517 VBF (VBKx) |
|     Behalf of All Others Similarly Situated, | |
| 13 | |
| 14           Plaintiff, | |
| 15        vs. | |
| 16  RINO INTERNATIONAL | |
| 17  CORPORATION, JIANPING QIU, | |
| 18  DEJUN ZOU, KENNITH C. | |
|     JOHNSON, XIE QUAN, ZEJIN LI, | |
| 19  JENNY LIU, BRUCE RICHARDSON, | |
| 20  QUAN XIE and WEIGUO ZHANG, | |
| 21 | |
| 22           Defendants. | |
| 23  [caption continues on next page] | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

|   |   |
|---|---|
| PAUL H. VU, Individually and on Behalf of All Others Similarly Situated, | Case No. SACV10-01908 VBF (VBKx) |
| Plaintiff, | |
| vs. | |
| RINO INTERNATIONAL CORPORATION, ZOU DEJUN, BEN WANG, YI LIU aka JENNY LIU, BRUCE RICHARDSON, YU LI, QIU JIANPING, KENNITH C. JOHNSON, QUAN XIE, ZEJIN LI and WEIGUO ZHANG, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  STATEMENT OF FACTS ............................................................................ 2

III. ARGUMENT .............................................................................................. 5

    A.   The Guerrilla and Hua-Mei Partnerships Should Be Appointed Lead Plaintiffs ....................................................................................................... 5

        1.   The Legal Requirements Under The PSLRA ............................. 5

        2.   Notice of Pendency ................................................................. 7

        3.   The Guerrilla and Hua-Mei Partnerships Believe They Have The Largest Financial Interest In The Relief Sought By The Class .. 7

        4.   The Guerrilla and Hua-Mei Partnerships Otherwise Satisfy The Requirements Of Rule 23 ........................................................ 9

    B.   The Court Should Approve The Guerrilla and Hua-Mei Partnerships' Selection Of Lead Counsel .................................................................... 11

    C.   The Related Actions Should Be Consolidated ................................... 12

IV.  CONCLUSION .......................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Armour v. Network Assoc., Inc.*
  171 F.Supp.2d 1044 (N.D.Cal. 2001) ..................................................... 10, 11

*Ferrari v. Gisch*
  225 F.R.D. 599 (C.D.Cal. 2004) ................................................................. 10

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9th Cir. 1992)....................................................................... 10

*In re Cavanaugh*
  306 F.3d 726 (9th Cir. 2002)....................................................................... 6, 8

*In re McKesson HBOC, Inc. Sec. Litig.*
  97 F.Supp.2d 993 (N.D.Cal. 1999) .............................................................. 8

*In re Northern District of California, Dalkon Shield IUD Prods. Liab. Litig.*
  693 F.2d 847 (9th Cir. 1982)....................................................................... 10

*In re Olsten Corp. Sec. Litig.*
  3 F.Supp.2d 286 (E.D.N.Y. 1998)................................................................ 8

*In re Peregrine Systems, Inc. Sec. Litig.*
  2002 WL 32769239 (S.D.Cal. Oct. 11, 2002) .............................................. 7

*In re Rent-Way Sec. Litig.*
  305 F.Supp.2d 491 (W.D. Pa. 2003) ........................................................... 12

*In re SiRF Technology Holdings, Inc. Securities Litigation*
  2008 WL 2220601 (N.D.Cal. May 27, 2008) .............................................. 11

*Investors Research Co. v. United States Dist. Court*
  877 F.2d 777 (9th Cir. 1989)....................................................................... 12

*Kaplan v. Gelfond*
  240 F.R.D. 88 (S.D.N.Y. 2001) ................................................................... 13

*Lax v. First Merchant's Acceptance Corp.*
  1997 WL 461036 (N.D.Ill. Aug. 11, 1997)................................................... 8

*Ruland v. InfoSonics Corp.*
  2006 WL 3746716 (S.D.Cal. Oct. 23, 2006) ................................................ 8

# TABLE OF AUTHORITIES

*Siegall v. Tibco Software, Inc.*
     2006 1050173 (N.D.Cal. Feb 24, 2006)......................................................12

*Southwest Marine Inc. v. Triple A Machine Shop, Inc.*
     720 F.Supp. 805 (N.D. Cal. 1989) ...........................................................13

*Takeda v. Turbodyne Techs., Inc.*
     67 F.Supp. 2d 1129 (C.D. Cal. 1999).......................................................13

*Tanne v. Autobytel, Inc.*
     226 F.R.D. 659 (C.D.Cal. 2005) ...........................................................9, 10

*Wenderhold v. Cylink Corp.*
     188 F.R.D. 577 (N.D.Cal. 1999) ................................................................9

*Zucker v. Zoran Corp.*
     2006 WL 3591156 (N.D.Cal. Dec. 11, 2006) .............................................9

## STATUTES, RULES AND REGULATIONS

15 U.S.C. §77z-1(a)(3)(B)(ii) ......................................................................12

15 U.S.C. §78(j)(b) .......................................................................................1

15 U.S.C. §78(t)............................................................................................1

15 U.S.C. §78u-4(a)(1) .................................................................................5

15 U.S.C. §78u-4(a)(3)(A)(i)........................................................................5

15 U.S.C. §78u-4(a)(3)(B)........................................................................1, 5

15 U.S.C. §78u-4(a)(3)(B)(i).....................................................................1, 5

15 U.S.C. §78u-4(a)(3)(B)(ii).....................................................................12

15 U.S.C. §78u-4(a)(3)(B)(iii)......................................................................7

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)...............................................................2, 5

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) ...............................................................6

# TABLE OF AUTHORITIES

15 U.S.C. §78u-4(a)(B)(v)...................................................................................11

17 C.F.R. §240.10b-5 ........................................................................................1

Federal Rule of Civil Procedure

    Rule 23...............................................................................................5, 9, 10

Securities Exchange Act of 1934

    Section 10(b) ....................................................................................1, 13

    Section 20(a).....................................................................................1, 13

    Section 21D(a)(3)(B)...............................................................................1

    Section 21D(a)(3)(B)(v) ........................................................................11

## OTHER AUTHORITIES

H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), reprinted in
    1995 U.S.C.C.A.N. 679............................................................................11

#123389

Guerrilla Partners, L.P. and Hua-Mei 21st Century Partners, L.P. (the "Guerrilla and Hua-Mei Partnerships") respectfully submit this memorandum in support of their motion: (i) to appoint the Guerrilla and Hua-Mei Partnerships as Lead Plaintiffs, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), (ii) for approval of its selection of the law firm of Gold Bennett Cera & Sidener LLP as Lead Counsel for the Class; and (iii) for consolidation of all related cases.

## I.   PRELIMINARY STATEMENT

Currently pending in this District are six (6) securities class actions (the "Related Cases") brought on behalf of those who purchased the common stock of RINO International Corporation ("RINO") no earlier than May 15, 2008 through no later than November 19, 2010, inclusive (the "Class Period").[1]

The Related Cases allege violations of Sections 10(b) and 20(a) of the Exchange Act, as amended by the PSLRA (15 U.S.C. §§78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5), against RINO and certain of its executive officers.  The first of the Related Cases was filed on November 12, 2010 by Susan Hufnagle, and notice of the pendency of the action was published to investors on the same day, which provided a deadline to seek Lead Plaintiff status by January 14, 2011.[2]

Pursuant to the PSLRA, the Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. §78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant has the "largest financial interest"

---

[1]   None of the related cases allege the same Class Periods.

[2]   A copy of Ms. Hufnagle's notice is attached as Exhibit A to the Declaration of Thomas C. Bright in Support Of The Motion Of The Guerilla And Hua-Mei Partnerships For (I) Appointment As Lead Plaintiffs; (III) Approval Of Selection Of Lead Counsel; And (III) Consolidation Of Related Cases (the "Bright Decl.").

#123389

in the relief sought by the Class in this litigation and also makes a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  For the reasons set forth below, the Guerrilla and Hua-Mei Partnerships believe they are the "most adequate plaintiff" by virtue of their substantial investment in RINO common stock.  Specifically, the Guerrilla and Hua-Mei Partnerships incurred losses totalling approximately $455,891 in connection with their purchases of RINO common stock during the Class Period.[3]  The Guerrilla and Hua-Mei Partnerships further satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure as their claims are typical of the other class members and they will fairly and adequately represent the Class.

Further, the Guerrilla and Hua-Mei Partnerships fully understand the Court-appointed Lead Plaintiffs' duties to the Class under the PSLRA, and are willing and able to undertake the responsibilities entailed in acting as Lead Plaintiffs to ensure vigorous prosecution of this action.  The Guerrilla and Hua-Mei Partnerships have selected Gold Bennett Cera & Sidener LLP, a law firm with substantial experience in prosecuting securities class actions, to serve as Lead Counsel for the Class.  Accordingly, the Guerrilla and Hua-Mei Partnerships respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

## II.   STATEMENT OF FACTS

RINO, through its subsidiaries, is a provider of environmental protection equipment for the iron and steel industry in the People's Republic of China.  Specifically, RINO designs, manufactures, installs, and services proprietary and patented wastewater treatment, flue gas desulphurization equipment, and high temperature anti-oxidation systems.

---

[3]   PSLRA-required Certification of the Guerrilla and Hua-Mei Partnerships is attached as Exhibit B to the Bright Decl.

#123389

Throughout the class period, defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company did not enter into at least two customer contracts and 20-40% of the Company's other contracts had problems for which it reported revenues during its 2008 and 2009 fiscal years; (2) the Company's reported revenues for fiscal year 2009 to the SEC that were inflated by 94%; (3) the Company's management was draining cash from the Company for their own business and personal uses; (4) the Company lacked adequate internal and financial controls; and (5) as a result of the foregoing, the Company's financial results were materially false and misleading at all relevant times.

On November 10, 2010, Muddy Waters LLC ("Muddy Waters"), a research firm, issued a report calling into question, among others things, the Company's customer relationships, accounting, and financial results.  The research firm claimed that its investigation indicated that RINO had fabricated customer relationships, exaggerated sales, and issued phony financial statements.  In particular, the report highlighted that the same day that RINO closed a $100 million financing transaction, certain officers/directors "borrowed" $3.2 million from the Company to purchase a luxury home in Orange County, California.

On this news, shares of RINO declined by $2.34 per share, more than 15%, to close on November 10, 2010, at $13.18 per share, on unusually high volume.  The stock further declined another $2.08 per share, or 15.08%, to close on November 11, 2010, at $11.10 per share after the Company launched an internal review into Muddy Waters' allegations.

Then on November 15, 2010, RINO announced extremely disappointing third quarter 2010 results with revenues of $52.7 million and net income of $8.8 million, just over half the net income reported the prior year.  RINO also reduced

its revenue forecast for 2010 from $221-$229 million to $203-$211 million. On this news, RINO's shares declined $3.46 per share, or more than 31%, to close on November 15, 2010, at $7.55 per share.

On November 19, 2010, RINO disclosed in a filing with the SEC that it had received a letter from its independent auditing firm which recounted a conversation between a member of the firm and RINO's Chief Executive Officer, defendant Zou Dejun.  During this conversation, Dejun revealed that RINO had, in fact, not entered into two of the six customer contracts discussed in the Muddy Waters report. Furthermore, the independent auditors advised that (1) its audit reports of the Company's previously issued financial statements for fiscal years 2008 and 2009, and (2) its reviews of the Company's quarterly financial statements for periods between March 31, 2008 and September 30, 2010 should no longer be relied upon.

Additionally, further to an agreement dated October 5, 2007; 5,580,000 shares of RINO common stock beneficially owned by defendants Dejun and Jianping were deposited into an escrow account in order to secure RINO's obligation under the Securities Purchase Agreement and Make Good Escrow Agreement dated October 5, 2007, between the Company and certain investors. RINO was required to deliver the shares to such investors in the escrow account in the event the Company failed to achieve certain after-tax income targets.  The defendants were motivated to report favorable results during the class period so as to receive millions of shares of RINO stock held in escrow.

When RINO's shares resumed trading on the OTC on December 8, 2010, after being halted by NASDAQ on November 17, 2010, the stock further declined $2.92 or 48% and closed at $3.15 per share.

#123389

## III.   ARGUMENT

### A.   The Guerrilla and Hua-Mei Partnerships Should Be Appointed Lead Plaintiffs

The Guerrilla and Hua-Mei Partnerships respectfully submit that they should be appointed Lead Plaintiffs because they are the movants "most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B).

#### 1.   The Legal Requirements Under The PSLRA

The PSLRA, 15 U.S.C. §78u-4(a)(1), sets forth procedures for the appointment of lead plaintiffs to oversee class actions brought under the Exchange Act.  Within 20 days after the date on which a class action is filed under the PSLRA, *see* 15 U.S.C. §78u-4(a)(3)(A)(i), the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class: (i) of the pendency of the action, the claims asserted therein, and the purported class period; and (ii) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

Further, under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiffs filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person, or group of persons, that:

> (aa)   has either filed the complaint or made a motion in response to a notice. . . ;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

#123389

1
2
3
4
5
6
7
8

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).  The presumption established above may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either (i) "will not fairly and adequately protect the interests of the class," or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

9
10
11
12

The Ninth Circuit Court has explained that the "Reform Act provides a simple three-step process for identifying the lead plaintiff" pursuant to the criteria set forth in the PSLRA.  *See In re Cavanaugh*, 306 F.3d at 729-30.  As *Cavanaugh* instructed:

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> The first step consists of publicizing the pendency of the action, the claims made and the purported class period. In step two, the district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the "presumptively most adequate plaintiff" – and hence the presumptive lead plaintiff – the one who "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.  It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy."  If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff.  If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time

#123389

-6-

considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.  The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements.

*Id.* (alteration in original) (internal citations and footnotes omitted).  *See also In re Peregrine Systems, Inc. Sec. Litig.*, 2002 WL 32769239, at *2-4 (S.D.Cal. Oct. 11, 2002).

### 2.     Notice of Pendency

Plaintiff in *Hufnagle v. RINO International Corporation, et al.*, Case No. SACV10-08695 VBF (VBKx), the first-filed action, caused an initial notice to be published on *Business Wire* on November 15, 2010.  *See* Exhibit A to the Bright Decl.  The notice announced that a securities class action had been filed against the defendants herein, and advised purchasers of RINO securities that they had sixty days from November 15, 2010 (*i.e.*, January 14, 2011) to seek lead plaintiff status. *See Id.*  The Guerrilla and Hua-Mei Partnerships have filed this motion before the expiration of the 60-day period from such publication.

In addition, and pursuant to the requirements of the PSLRA, the Guerrilla and Hua-Mei Partnerships have duly signed a certification stating that they are familiar with the factual and legal issues alleged and are willing to serve as representative plaintiffs on behalf of the Class.  *See* Bright Decl. Ex. B.

### 3.     The Guerrilla and Hua-Mei Partnerships Believes They Have The Largest Financial Interest In The Relief Sought By The Class

The Guerrilla and Hua-Mei Partnerships should be appointed Lead Plaintiffs because they have the largest financial interest in the relief sought by the Class. 15 U.S.C. §78u-4(a)(3)(B)(iii).  There is no prescribed method for determining which movant has the largest financial interest.  The Ninth Circuit notes that "the

court may select accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n. 4.  "Many courts apply the following four factors in making the financial interest determination: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs."  *Ruland v. InfoSonics Corp.*, 2006 WL 3746716, at *4 (S.D.Cal. Oct. 23, 2006) (citing *Lax v. First Merchant's Acceptance Corp.*, 1997 WL 461036, at *5 (N.D.Ill. Aug. 11, 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 296 (E.D.N.Y. 1998); and *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F.Supp.2d 993 (N.D.Cal. 1999)).  In light of each of these factors, the Guerrilla and Hua-Mei Partnerships believes they have the largest financial interest in the outcome of this lawsuit.

As the Guerrilla and Hua-Mei Partnerships' Certificate of Plaintiff confirms, the Guerrilla and Hua-Mei Partnerships purchased approximately 34,500 shares of RINO common stock on a gross basis during the Class Period.  See Bright Decl., Ex. B.

The Guerrilla and Hua-Mei Partnerships sold no shares prior to November 19, 2010, the latest alleged end of the Class Period.  Therefore, the Guerrilla and Hua-Mei Partnerships' net purchases of common stock were also 34,500 shares.  In addition, the Guerrilla and Hua-Mei Partnerships had net expenditures of approximately $582,037 for RINO common stock prior to November 19, 2008.  As a result of the revelation of RINO's misconduct, the Guerrilla and Hua-Mei Partnerships suffered approximately $455,891 in losses, whether calculated on a LIFO or FIFO basis.  The magnitude of the Guerrilla and Hua-Mei Partnerships' financial interest in this litigation can be summarized as follows:

#123389

-8-

| Factor | The Guerrilla and Hua-Mei Partnerships' Position |
|--------|---------------------------------------------------|
| Gross Purchases: | 34,500 shares |
| Net Purchases: | 34,500 shares |
| Net Expenditures: | $582,037 |
| Approximate FIFO Loss: | $455,891 |
| Approximate LIFO Loss: | $455,891 |

The Guerrilla and Hua-Mei Partnerships sold all of their shares on December 16, 2010 for approximately $126,145.80.  Therefore, the Guerrilla and Hua-Mei Partnerships' total loss is approximately $455,891.

Accordingly, the Guerrilla and Hua-Mei Partnerships believe that they have the largest financial interest of any qualified movant seeking appointment as Lead Plaintiff.

**4.     The Guerrilla and Hua-Mei Partnerships Otherwise Satisfy The Requirements Of Rule 23**

The Guerrilla and Hua-Mei Partnerships should be appointed Lead Plaintiff because they also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  On a motion to serve as Lead Plaintiff, the movant need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.  *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D.Cal. 2005) (citing *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D.Cal. 1999) (stating that, at this stage of the litigation, nothing more than a preliminary showing is required)).  The Guerrilla and Hua-Mei Partnerships unquestionably satisfy both requirements in this case.

The Guerrilla and Hua-Mei Partnerships' claims are typical of the claims of other Class members.  "The 'typicality' requirement is satisfied when the named plaintiffs have (1) suffered the same injuries as class members; (2) as a result of the same course of conduct; and (3) their claims are based on the same legal issues."  *Zucker v. Zoran Corp.*, 2006 WL 3591156, at *3 (N.D.Cal. Dec. 11, 2006) (citing

-9-

1   *Armour v. Network Assoc., Inc.*, 171 F.Supp.2d 1044, 1050 (N.D.Cal. 2001)); *see*

2   *also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The

3   Guerrilla and Hua-Mei Partnerships' claims in this action arise from the very same

4   course of misconduct at RINO as the claims of the other Class members – i.e., the

5   artificial inflation and consequent market correction of RINO stock caused by

6   Defendants' fraudulent public disclosures.  *See, e.g., Tanne v. Autobytel, Inc.*, 226

7   F.R.D. 659, 667 (C.D.Cal. 2005) (finding a Lead Plaintiff movant's claim to be

8   typical where the movant like all class members, "(1) purchased or acquired

9   Autobytel securities during the Class period, (2) at prices alleged to be artificially

10  inflated by defendants' materially false and misleading statements and/or

11  omissions, and (3) suffered damage as a result."); *see also Ferrari v. Gisch,* 225

12  F.R.D. 599, 606 (C.D.Cal. 2004).

13       The Guerrilla and Hua-Mei Partnerships likewise satisfy the adequacy

14  requirement of Rule 23.  "The Ninth Circuit has held that representation is

15  'adequate' when counsel for the class is qualified and competent, the

16  representative's interests are not antagonistic to the interests of absent class

17  members, and it is unlikely that the action is collusive."  *Autobytel*, 226 F.R.D. at

18  667 (citing *In re Northern District of California, Dalkon Shield IUD Prods. Liab.*

19  *Litig*., 693 F.2d 847, 855 (9th Cir. 1982)).  The Guerrilla and Hua-Mei Partnerships

20  satisfy each of these elements of the adequacy requirement.

21       The Guerrilla and Hua-Mei Partnerships will adequately represent the Class

22  because their interests are perfectly aligned with those of the other Class members

23  and are not antagonistic in any way.  Indeed, the Guerrilla and Hua-Mei

24  Partnerships seek identical relief on identical claims based on identical legal

25  theories.  There are, furthermore, no facts suggesting that any actual or potential

26  conflict of interest or other antagonism exists between the Guerrilla and Hua-Mei

27  Partnerships and other Class members.

28

#123389

The Guerrilla and Hua-Mei Partnerships have also submitted a Certification affirming their understanding of the duties owed to Class members through their commitment to oversee the prosecution of this Class action. *See* Bright Decl., Ex. B. Through that Certification, the Guerrilla and Hua-Mei Partnerships accept the fiduciary obligations they will assume if appointed Lead Plaintiffs in this action.

Moreover, the Guerrilla and Hua-Mei Partnerships are the type of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA – a sophisticated institutional investor with a real financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also In re SiRF Technology Holdings, Inc. Securities Litigation,* 2008 WL 2220601, at *3 (N.D.Cal. May 27, 2008); *Armour v. Network Associates, Inc.*, 171 F.Supp.2d 1044, 1048 (N.D.Cal. 2001). Finally, The Guerrilla and Hua-Mei Partnerships have demonstrated their adequacy through their selection of Gold Bennett Cera & Sidener LLP as counsel to represent the Class. As discussed more fully below, Gold Bennett Cera & Sidener LLP is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to conduct complex securities class action litigation effectively.

**B.     The Court Should Approve The Guerrilla and Hua-Mei Partnerships' Selection Of Lead Counsel**

The Court should approve the Guerrilla and Hua-Mei Partnerships' choice of the law firm of Gold Bennett Cera & Sidener LLP to serve as Lead Counsel. Pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, codified at 15 U.S.C. §78u-4(a)(B)(v), the Lead Plaintiff is to select and retain Lead Counsel to represent the Class, subject to Court approval. The Guerrilla and Hua-Mei Partnerships have selected and retained the law firm of Gold Bennett Cera & Sidener LLP. For more

than 40 years, Gold Bennett Cera & Sidener LLP has played a leading role in some of the most significant cases in the country.  The firm has a long history of prosecuting cases such as this case.  These cases have resulted in recoveries in excess of $2 billion.  A copy of the firm's resume is attached to the Bright Decl. as Exhibit C.

Gold Bennett Cera & Sidener LLP has the requisite experience and resources to obtain an excellent result for the Class.  Bright Decl., Ex. C.  Indeed, the court in *In re Rent-Way Sec. Litig.*, 305 F.Supp.2d 491, 515 (W.D. Pa. 2003), a securities fraud class action prosecuted by the firm, stated as follows:

> Having thus initially expressed our confidence in [Gold Bennett Cera & Sidener's] abilities, the Court has not since been disappointed.  On the contrary, [Gold Bennett Cera & Sidener] have shown themselves to be attorneys of the highest caliber, at all times prosecuting this action with a high degree of skill and professionalism.

Accordingly, the Court should approve the Guerrilla and Hua-Mei Partnerships' selection of Gold Bennett Cera & Sidener LLP as Lead Counsel.

## C.    The Related Actions Should Be Consolidated

Rule 42(a) grants the Court discretion to consolidate "actions involving a common question of law or fact."  The Court has "broad discretion under this rule to consolidate cases pending in the same District.  *Investors Research Co. v. United States Dist. Court*, 877 F.2d 777 (9th Cir. 1989).  In addition, the Securities Act and the Exchange Act dictate that consolidation should occur where, as here, more than one action asserts "substantially the same claim."  15 U.S.C. §77z-1(a)(3)(B)(ii); 15 U.S.C. §78u-4(a)(3)(B)(ii); *see also Siegall v. Tibco Software, Inc.,* 2006 1050173, at *2 (N.D.Cal. Feb 24, 2006) ("[T]he Private Securities Litigation Reform Act ("PSLRA") directs that cases should be consolidated when more than one action is filed on behalf of a class asserting substantially the same claim or claims.").  The actions, however, need not be identical before they may be

consolidated.  *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 91-92 (S.D.N.Y. 2001) (differing class periods and different defendants do not prevent consolidation).

Upon establishing that common questions of law exist, "a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by the consolidation."  *Southwest Marine Inc. v. Triple A Machine Shop, Inc.*, 720 F.Supp. 805, 807 (N.D. Cal. 1989).  Securities class actions are particularly appropriate for consolidation.  *See Takeda v. Turbodyne Techs., Inc.,* 67 F.Supp. 2d 1129, 1130 (C.D. Cal. 1999) (stating that securities class actions should be consolidated "in the interest of judicial economy and to relieve the parties and absent class members of the burdens associated with participating in duplicative litigation . . . .").

The Related Cases with their alleged Class Periods are as follows:

| Case Name | Original Case Number | Date Filed | Class Period Alleged |
|---|---|---|---|
| *Hufnagle v. RINO International Corporation, et al.* | CV10-8695 VBF (VBKx) | November 12, 2010 | March 31, 2009 through November 11, 2010 |
| *Baig v. RINO International Corporation, et al.* | SACV10-1754 VBF (VBKx) | November 15, 2010 | November 13, 2009 through November 11, 2010 |
| *Stevens v. RINO International Corporation, et al.* | CV10-9011 PA (VBKx) | November 22, 2010 | February 17, 2009 through November 12, 2010 |
| *Zhang v. RINO International Corporation, et al.* | SACV10-01887 CJC (RNBx) | December 10, 2010 | July 13, 2009 through November 12, 2010 |
| *Chau v. RINO International Corporation, et al.* | CV10-09517 RGK (PJWx) | December 10, 2010 | May 15, 2008 through November 19, 2010 |
| *Vu v. RINO International Corporation, et al.* | SACV10-01908 AG (MLGx) | December 15, 2010 | May 15, 2008 through November 17, 2010 |

1    Consolidation is necessary because these cases have the same core

2    defendants and share many others.  The complaints also allege the same basis of

3    liability: Sections 10(b) and 20(a) of the Exchange Act.  Further, each of these

4    actions alleges that defendants made materially false statements during the Class

5    Period about RINO's financial and business condition, which in turn artificially

6    inflated the market price for RINO securities.  In light of the common questions of

7    law and fact and in the interests of promoting judicial efficiency and conservation

8    of resources, consolidation of these related actions is appropriate under Fed. R.

9    Civ. P. 42(a).

10   **IV.    CONCLUSION**

11       For the foregoing reasons, the Guerrilla and Hua-Mei Partnerships

12   respectfully requests that the Court: (i) appoint the Guerrilla and Hua-Mei

13   Partnerships as Lead Plaintiffs pursuant to the PSLRA; and (ii) approve the

14   Guerrilla and Hua-Mei Partnerships' selection of Gold Bennett Cera & Sidener

15   LLP as Lead Counsel for the Class; and (iii) consolidate all related cases; and grant

16   such other and further relief as the Court may deem just and proper.

17   Dated:  January 14, 2011          Respectfully submitted,

18

19                                     By: s/John Torbett

20                                     John Torbett

21                                     Attorney At Law
                                       2416 5th Street, Suite 102

22                                     Santa Monica, CA 90405

23                                     Telephone: (310) 403-9806
                                       jtlaw@dslextreme.com

24

25

26

27

28

#123389

-14-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOLD BENNETT CERA &
SIDENER LLP
Solomon B. Cera
Thomas C. Bright
595 Market Street, Suite 2300
San Francisco, California 94105
Tel: (415) 777-2230
Fax: (415) 777-5189
scera@gbcslaw.com
tbright@gbcslaw.com

Attorneys for The Guerrilla and Hua-Mei
Partnerships

#123389

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on January 14, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this action.

     I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 14, 2011.

<u>s/John Torbett</u>
John Torbett

#123389

-16-