Kim E. Miller (SBN 178370)
E-mail: kim.miller@ksfcounsel.com
KAHN SWICK & FOTI, LLC
500 5th Ave., Suite 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

Lewis S. Kahn
E-mail: lewis.kahn@ksfcounsel.com
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

Jeff Westerman
E-mail: jwesterman@milberg.com
MILBERG, LLP
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, California 90071
Telephone: (213) 617-1975

*Counsel for the Bourouis Investor Group and [Proposed] Lead Counsel for the Class*

*Counsel for the Bourouis Investor Group and [Proposed] Liaison Counsel for the Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN HUFNAGLE, Individually and On Behalf Of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>        vs.<br><br>RINO INTERNATIONAL CORP., et al.<br><br>                Defendants. | CIVIL ACTION NO. 10-cv-08695-VBF (VBKx)<br><br>NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>Judge: Hon. Valerie Baker Fairbank<br>Date:   February 14, 2011<br>Time:   1:30 p.m.<br>CTRM: 9 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALI BAIG, Individually and On
Behalf Of All Others Similarly
Situated,

      Plaintiff,

   vs.

RINO INTERNATIONAL CORP.,
et al.

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO. 2010-cv-01754

ALAN STEVENS, Individually and
On Behalf Of All Others Similarly
Situated,

      Plaintiff,

   vs.

RINO INTERNATIONAL CORP.,
et al.

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO. 2010-cv-09011

XI ZHANG, Individually and On
Behalf Of All Others Similarly
Situated,

      Plaintiff,

   vs.

RINO INTERNATIONAL CORP.,
et al.

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO. 2010-cv-01887

NOTICE OF MOTION AND MTN TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD
PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1

2
BRENDA CHAU, Individually and
On Behalf Of All Others Similarly
3
Situated,                                   CIVIL ACTION NO.: 2010-cv-09517

4
        Plaintiff,

5
    vs.

6

7
RINO INTERNATIONAL CORP.,
et al.
8

        Defendants.
9

10

11

12
PAUL H VU, Individually and On
Behalf Of All Others Similarly
13
Situated,                                   CIVIL ACTION NO. 2010-cv-01908

14
        Plaintiff,

15

16
    vs.

17
RINO INTERNATIONAL CORP.,
18
et al.

19
        Defendants.
20

21

22

23

24

25

26

27

28
NOTICE OF MOTION AND MTN TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD
PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................ 1

PRELIMINARY STATEMENT ........................................................................ 3

PROCEDURAL BACKGROUND ...................................................................... 4

FACTS OF THE CASE ..................................................................................... 5

ARGUMENT ..................................................................................................... 8

I.   The Court Should Consolidate All Related Actions ..................................... 8

II.  The Bourouis Investor Group Should Be Appointed Lead Plaintiff .... 10

A.   The Procedural Requirements of the PSLRA ..................................... 10

B.   The Bourouis Investor Group Is "The Most Adequate Plaintiff" ..... 11

1.   The Bourouis Investor Group Has Complied With the PSLRA
and Should Be Appointed Lead Plaintiff ......................................... 11

2.   The Bourouis Investor Group Has the Largest Financial Interest .... 12

3.   The Bourouis Investor Group Satisfies the Requirements of Rule
23   ................................................................................................. 12

a)   The Bourouis Investor Group's Claims Are Typical of the
Claims of All Class Members ........................................................... 13

b)   The Bourouis Investor Group Will Adequately Represent the
Class ................................................................................................. 14

III.  The Court Should Approve the Bourouis Investor Group's Choice
of Lead and Liaison Counsel ........................................................................ 15

CONCLUSION ................................................................................................. 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bang v. Acura Pharm. Inc,*
  10-cv-5757, 2011 WL 91099 (N.D. Ill. January 11, 2011) .................................................... 12

*Crossen v. CV Therapeutics,*
  2005 U.S. Dist. LEXIS 41396 (N.D. Cal. August 9, 2005) ................................................. 14

*Ferrari v. Gisch,*
  225 F.R.D. 599 (C.D. Cal. 2004) ........................................................................................ 12

*Friedman v. Quest Energy Partners LP,*
  261 F.R.D. 607 (W.D. Okla. 2009) ..................................................................................... 12

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1988) ............................................................................................ 14

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3rd Cir. 2001) .............................................................................................. 12

*Miller v. Ventro Corp.,*
  2001 U.S. Dist. LEXIS 26027 (N.D. Cal. November 28, 2001) ......................................... 15

*Primavera Familienstiftung v. Askin*,
  173 F.R.D. 115 (S.D.N.Y. 1997) .......................................................................................... 9

*Sabbagh v. Cell Therapeutics, Inc.*,
  2010 WL 3064427 (W.D. Wash. Aug. 2, 2010) ................................................................. 12

*Schriver v. Impac. Mortg. Holdings, Inc.,*
  2006 Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) ........................................................... 13

*Siegall v. Tibco Software, Inc.,*
  2006 U.S. Dist. LEXIS 26780, (N.D. Cal. February 24, 2006) .......................................... 13

*Takeda v. Turbodyne Techs.,*
  67 F.Supp. 2d 1129 (C.D. Cal. 1999) ................................................................................... 9

*Werner v. Satterlee, Stephens, Burke & Burke,*
  797 F.Supp. 1196 (S.D.N.Y. 1992) ....................................................................................... 9

*Yousefi v. Lockheed Martin Corp.,*
  70 F. Supp. 2d 1061 (C.D. Cal. 1999) ................................................................................... 8

1

**Statutes**

15 U.S.C. § 77z-1 ...................................................................................................... *passim*

15 U.S.C. § 78u-4 ..................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... 13, 14

Fed. R. Civ. P. 42 ........................................................................................................... 8. 9

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1  ## NOTICE OF MOTION AND MOTION

2  **TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

3      PLEASE TAKE NOTICE that on February 14, 2011, at 1:30 P.M., or as soon

4  thereafter as the matter may be heard, before the Honorable Judge Valerie Baker

5  Fairbank, United States District Court, Central District of California, Los Angeles

6  Division, Courtroom 9, 312 N. Spring Street, Los Angeles, CA, Mohammed

7  Bourouis, Kent Steels, Sherry and Richard Spooner, and Mike Darouvor, collectively

8  the "Bourouis Investor Group," ("BIG" or "Movant") will and hereby does move for

9  consolidation of these actions; to be appointed Lead Plaintiff in the consolidated

10 action pursuant to the lead plaintiff provisions of the Private Securities Litigation

11 Reform Act of 1995 ("PSLRA"), codified as Section 27(a)(3) of the Securities Act of

12 1933 ("Securities Act"), 15 U.S.C. § 77z-1, and/or Section 21D(a)(3) of the Securities

13 Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3); and for approval of

14 Movant's selection of the law firm of Kahn Swick & Foti, LLC ("KSF") as lead

15 counsel, and Milberg LLP ("Milberg") as liaison counsel for the Class.

16     This motion is based on this Notice of Motion and Motion, the Memorandum of

17 Points and Authorities in Support thereof, the Declaration of Kim E. Miller in Support

18 thereof, the pleadings on file in this action, oral argument, and such other matters as

19 the Court may consider in hearing this motion. BIG makes this Motion on the belief it

20 is the most "adequate plaintiff" as defined in the PSLRA because:

21     1. Movant has the largest financial interest in the relief sought by the Class and

22 has incurred substantial losses in the amount of $1,286,304.53 as a result of Movant's

23 purchase and/or acquisition of shares of RINO securities between May 15, 2008, and

24 November 19, 2010, inclusive (the "Class Period")[1]; and

25

26 _____

[1] This is the Class Period alleged in *Chau v. Rino Int'l Corp. et al*, 10-cv-09517,

27 and is the longest class period alleged in the six related complaints filed in this
district.

28

2. Movant satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure ("Rule") 23.

BIG further requests that the Court approve its selection of KSF as lead counsel, and Milberg as liaison counsel, for the Class. KSF and Milberg are both nationally recognized law firms with significant class action, securities fraud, and complex litigation experience; and possess the resources to effectively and properly pursue this action.

For the foregoing reasons and those stated more fully herein below, the Bourouis Investor Group respectfully requests that this Court: (1) appoint it to serve as Lead Plaintiff in this action; (2) approve its selection of Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**PRELIMINARY STATEMENT**

The Bourouis Investor Group ("BIG" or "Movant"), which includes as its members Mohammed Bourouis, Kent Steels, Sherry and Richard Spooner, and Mike Darouvor, hereby moves: to consolidate all related securities fraud class actions and all related securities fraud class actions[2] filed against RINO International Corporation, Inc." (RINO or the "Company") and other defendants ("Defendants"); to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act of, 15 U.S.C. § 78u-4(a)(3)(B), and/or Section 27(a)(3) of the Securities Act, 15 U.S.C. § 77z-1(a)(3), as amended by Section 101(a) of the PLSRA; and for approval of its selection of the law firm of KSF as lead counsel, and Milberg as liaison counsel, for the Class in this case.

As described in its Certification, attached to the Declaration of Kim E. Miller in Support of the Motion For Consolidation Of Related Cases, To Be Appointed Lead Plaintiff and To Approve Proposed Lead Plaintiff's Choice of Counsel ("Miller Decl.") at Exhibit A, BIG fully understands its duties and responsibilities to the Class and is willing and able to oversee the vigorous prosecution of this action. BIG suffered losses of $1,286,304.53 as a result of its members' purchases of shares of RINO securities between the dates of May 15, 2008, and November 19, 2010, inclusive (the "Class Period"). To the best of its knowledge, BIG has sustained the largest loss of any investor seeking to be appointed as Lead Plaintiff.

In addition to having the largest financial interest in the outcome of this

---

[2] The related securities fraud class actions include: *Susan Hufnagle v. Rino Int'l Corp. et al*, 2:2010-cv-08695 (filed 11/12/2010); *Ali Baig v. Rino Int'l Corp. et al*, 8:2010-cv-01754 (filed 11/15/2010); *Alan Stevens v. Rino Int'l Corp. et al*, 2:2010-cv-09011 (filed 11/22/2010); *Xi Zhang v. Rino Int'l Corp. et al*, 8:2010-cv-01887 (filed 12/10/2010); *Brenda Chau v. Rino Int'l Corp. et al*, 2:2010-cv-09517 (filed 12/10/2010); *Paul H Vu v. Rino Int'l Corp. et al,* 8:2010-cv-01908 (filed 12/15/2010).

litigation, the Certifications of BIG's members demonstrate the group's intent to serve as lead plaintiff in this litigation, including its members' cognizance of the duties of serving in that role.[3] Miller Decl. at Exhibit A. Moreover, BIG satisfies the applicable requirements of the PSLRA and FRCP 23 and is presumptively the "most adequate plaintiff."

Accordingly, BIG respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), and/or Section 27(a)(3) of the Securities Act, as amended by the PSLRA, for an order: (1) consolidating all related and future related actions concerning the subject matters of this action pursuant to Fed. R. Civ. P. 42(a); (2) appointing the Bourouis Investor Group as Lead Plaintiff in this action pursuant to the Exchange Act and the Securities Act; and (3) approving the Bourouis Investor Group's selection of the law firm of KSF as lead counsel and Milberg as liaison counsel.

## PROCEDURAL BACKGROUND

The first lawsuit of six[4] related lawsuits against Defendants, *Susan Hufnagle v. Rino International Corporation et al.*, 2010-cv-08695, was filed in the Central District of California on November 12, 2010, alleging violations of the Exchange Act. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on November 15, 2010, the first notice that a class action had been initiated against Defendants was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff. The first notice incorrectly stated that members of the proposed Class had to move to serve as

---

[3] The relevant federal securities laws specifically authorize any Class Members seeking to be appointed Lead Plaintiffs to either file a complaint or move for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(A)(II).

[4] *See supra* fn. 1.

4

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1  lead plaintiff no later than January 11, 2010. *See* Miller Decl. at Exhibit B. The Rosen
2  Firm filed a second notice on November 19, 2010, correcting the error and notifying
3  the proposed Class that members had until January 14, 2011, to move for lead
4  plaintiff. *See* Miller Decl. at Exhibit C.

5  BIG's members are class members (*see* Miller Decl. at Exhibit A) and BIG has
6  timely filed this motion within the 60-day period following publication of the
7  November 19, 2010 notice.

8  **FACTS OF THE CASE**

9  As alleged in the complaints filed in the six related lawsuits, RINO, through its
10 subsidiaries, operates as an environmental protection and remediation company in the
11 People's Republic of China ("PRC"). The Company engages in designing,
12 manufacturing, installing, and servicing wastewater treatment and flue gas
13 desulphurization equipment primarily for use in the iron and steel industry; and anti-
14 oxidation products and equipment for use in the manufacture of hot rolled steel plate
15 products.

16 According to the Company, the main cause of airborne pollution in the PRC is
17 sulfur dioxide emissions from coal, with sulphur dioxide-induced acid rain costing
18 China more than $13.3 billion annually in various losses. RINO states that in 2005,
19 the latest year for which statistics are available, the Chinese iron & steel industry
20 discharged 1.24 million metric tons of sulphur dioxide into the atmosphere.

21 Based on government mandates, over the next few years, coal-fired sinters and
22 other like furnace operations must install desulphurization equipment or face stiff,
23 monthly penalties or, possibly, have their operations shut down. RINO claims that the
24 Company's Desulphurization System is the only sinter processing equipment available
25 in the PRC market that is specifically designed for flue gas desulphurization
26 applications that are larger than 90 square meters - the standard size for sinter
27 operations in the PRC iron & steel industry. Accordingly, RINO states that the

28

Company has a substantial competitive advantage over its international competitors.

Throughout the Class Period, the Company represented that it was experiencing steady financial growth due, in large part, to the success of its Flue Gas Desulphurization equipment ("FGD") sales. For example, in its annual report for 2008, filed with the SEC on March 31, 2009 on Form 10-K (the "2008 10-K"), RINO stated:

> Our desulphurization system has been installed in steel mills such as Jinan Iron & Steel Co., Panzhihua Iron & Steel, Shengfeng Iron & Steel, Handan Iron & Steel, Chongqing Iron & Steel. and Kunming Iron & Steel, Hulingnianyuan Iron and Steel, Nanchangchangli Iron & Steel, Qianjing Iron & Steel and Yuhua Iron & Steel. *For fiscal years 2007 and 2008, revenues generated from our desulphurization business was $33.1 million and $105.3 million, respectively, representing 52.3% and 75.6% of our total revenues for fiscal years 2007 and 2008, respectively.*

[Emphasis added.]

The Company further reported in its 2008 10-K: "[f]or the year ended December 31, 2008, the Company had 25 flue gas desulphurization contracts and sales amounted to $105.3 million compared with 5 contracts and $33.1 million sales for the year ended December 31, 2007."

Likewise, in its annual report for 2009, filed with the SEC on March 31, 2010 on Form 10-K (the "2009 10-K"), RINO reported: "[f]or the year ended December 31, 2009, we recorded revenues of $116.4 million, as compared to revenues of $105.3 million for the year ended December 31, 2008, representing an increase of 10.6%." The Company further reported that FGD sales comprised approximately 60.4% of RINO's total sales for 2009.

Based on the Company's increasingly favorable financial results, RINO received positive analyst coverage throughout the Class Period. For example, on October 15, 2010, RINO was selected by Forbes.com as one of "Five Chinese Stocks Buffett Would Love." Similarly, on October 25, 2010, RINO was selected for *The*

*Motley Fool's* "Wall Street Buy List."

Unknown to investors, however, the statements were materially false and/or misleading when made in that they failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company did not enter into at least two customer contracts and 20-40% of the Company's other contracts had problems for which it reported revenues during its 2008 and 2009 fiscal years; (2) that the Company's revenues reported to the SEC for fiscal year 2009 were inflated by 94%; (3) that the Company's management was draining cash from the Company for its own business and personal uses; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial results were materially false and misleading at all relevant times.

On November 10, 2010, Muddy Waters LLC ("Muddy Waters"), a research firm issued a report calling into question, among others, the Company's customer relationships, accounting, and financial results. The research firm claimed that its investigation indicated that RINO had fabricated customer relationships, exaggerated sales, and issued phony financial statements. In particular, the report highlighted that the same day that RINO closed a $100 million financing transaction, certain officers/directors "borrowed" $3.2 million from the Company to purchase a luxury home in Orange County, California.

On this news, shares of RINO declined by $2.34 per share, more than 15%, to close on November 10, 2010, at $13.18 per share, on unusually high volume. The stock further declined another $2.08 per share, 15.08%, to close on November 11, 2010, at $11.10 per share after launching an internal review due to Muddy Waters' allegations.

Then on November 15, 2010, RINO announced extremely disappointing third quarter 2010 results with revenues of $52.7 million and net income of $8.8 million,

just over half the net income reported on the prior year. RINO also reduced its revenue forecast for 2010 from $221-$229 million to $203- $211 million.

On this news, RINO's shares declined $3.46 per share, or more than 31%, to close on November 15, 2010, at $7.55 per share. On November 19, 2010, the Company disclosed receipt of a letter from its independent auditors, Frazer Frost LLP ("Frazer Frost"), revealing that at least two of the six contracts discussed by Muddy Waters were not entered and "there might be problems with 20 – 40%" of the other contracts. Furthermore, Frazer Frost advised that its audit reports of the Company's previously issued financial statements for fiscal years 2008 and 2009 and its reviews of the Company's quarterly financial statements for periods between March 31, 2008 and September 30, 2010 should no longer be relied upon. As a result, the Company further disclosed that "RINO's previously issued financial statements for the fiscal years ending December 31, 2008 and 2009, and the interim quarters ending March 31, 2008 through September 30, 2010, should no longer be relied upon." Moreover, the interim quarterly unaudited financial statements in 2010 "should no longer be relied on inasmuch as such financial statements incorporate results from 2008 and 2009."

When RINO's shares resumed trading on the OTC on December 8, 2010, after being halted by Nasdaq on November 17, 2010, the stock further declined $2.92 or 48% and closed at $3.15 per share.

## ARGUMENT

### I.    The Court Should Consolidate All Related Actions

Consolidation pursuant to Rule 42(a) is proper and routinely granted in actions such as this, where there are common questions of law and fact.[5] *See Yousefi v.*

---

[5] If additional securities cases are filed alleging the same course of conduct and similar or identical claims against the same or similar defendants, consolidation would be proper. *See* Rule 42(a).

*Lockheed Martin Corp*., 70 F. Supp. 2d 1061, 1064 (C.D. Cal. 1999).[6] Courts have recognized that securities class actions, in particular, are ideally suited to consolidation pursuant to Rule 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all concerned persons. *See, e.g.*, *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Indeed, "[i]n securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact" and the parties will not be prejudiced. *Werner v. Satterlee, Stephens, Burke & Burke,* 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992) (quoted in *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 583 (N.D. Cal. 1999)); *See also Takeda v. Turbodyne Techs., Inc.,* 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999) (the PSLRA directs that cases should be consolidated where, as here, there is "more than one action on behalf of a class asserting substantially the same claim or claims."). Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. Accordingly, this Court should enter an Order that consolidates all six related actions and any future filed cases.

---

[6] Rule 42(a) of the Federal Rules of Civil Procedure allows this Court to order consolidation of separate actions:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all of the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs of delay.

II.     **The Bourouis Investor Group Should Be Appointed Lead Plaintiff**

    **A. The Procedural Requirements of the PSLRA**

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3), 15 U.S.C. § 77z-1(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class Members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i), 15 U.S.C. § 77z-1(a)(3)(A)(i).

Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A) and (B), 15 U.S.C. § 77z-1(a)(3)(A) and (B).

Next, according to the PSLRA, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant or movants that the Court determines to be most capable of adequately representing the interests of Class Members. 15 U.S.C. § 78u-4(a)(3)(B)(i), 15 U.S.C. § 77z-1(a)(3)(B)(i). In determining the "most adequate plaintiff," the act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
>     (aa)    has either filed the complaint or made a motion in response to a notice…
>
>     (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>     (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii), 15 U.S.C. § 77z-1(a)(3)(B)(iii).

Only by a showing that a lead plaintiff will not fairly and adequately represent the Class or is subject to unique defenses – that will render such plaintiff incapable of adequately representing the Class – will this presumption be overcome. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). As discussed in further detail below, BIG has met the requirements set forth by the PSLRA, and accordingly, this Court should enter an Order appointing BIG as lead plaintiff.

### B. The Bourouis Investor Group Is "The Most Adequate Plaintiff"

#### 1. The Bourouis Investor Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff

BIG moves this Court to be appointed Lead Plaintiff and has timely filed the instant motion within the 60-day period. Accordingly, BIG meets the requirement of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa) by timely filing its motion on January 14, 2011.

Moreover, BIG has sustained a substantial loss from its members' investments in RINO stock and its members have shown their willingness to represent the Class by signing Certifications detailing their RINO transaction information during the Class Period. *See* Miller Decl. Exhibit A. Furthermore, BIG is prepared to consult with counsel on a regular basis, prior to every major litigation event, and to direct the course of litigation, with the benefit of counsel's advice. In addition, BIG has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm biography of proposed lead counsel for the Class, KSF, is attached as Exhibit D to the Miller Declaration. The firm biography of proposed liaison counsel for the Class, Milberg, is attached as Exhibit E to the Miller Declaration.

BIG is a small, cohesive group of 5 members, two of which are related by marriage. The PSLRA contemplates a court appointing as lead plaintiff "the member **or members** of the purported plaintiff class" that the court determines to be the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). A group of this

size is cohesive and can work effectively as a lead plaintiff. *See, e.g., Bang v. Acura Pharm. Inc, et al.*, No. 10-cv-5757, 2011 WL 91099, (N.D. Ill. January 11, 2011) (Kendall, J.) (appointing a group of three unrelated investors, noting that the group "represents a presumptively effective group."); *See also Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 614 (W.D. Okla. 2009) (lead plaintiff group composed of three individual investors "is small enough that coordinated decision making will not present any difficulties"); *See Sabbagh v. Cell Therapeutics, Inc.*, 2010 WL 3064427, at *4-5 (W.D. Wash. Aug. 2, 2010) (Pechman, J.) (the trend in securities litigation "seems to be away from a blanket prohibition against 'lead plaintiff groups' with no pre-existing relationship"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266-67 (3rd Cir. 2001) (the PSLRA "contains no requirement mandating that the members of a proper group be 'related' in some manner.").

### 2. The Bourouis Investor Group Has the Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii) and 15 U.S.C. § 77z-1(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. "So long as the plaintiff with the largest losses satisfies the adequacy requirements, he is entitled to lead plaintiff status..." *Ferrari v. Gisch*, 225 F.R.D. 599, 602 (C.D. Cal. 2004) (*citing In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)). To its knowledge, BIG (with losses of $1,286,304.53) has the largest known financial interest in the relief sought by the Class. *See* Miller Decl. Exhibit A.

### 3. The Bourouis Investor Group Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal

Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. *Siegall v. Tibco Software, Inc.*, 2006 U.S. Dist. LEXIS 26780, at *15 (N.D. Cal. Feb. 24, 2006) ("In the context of determining the appropriate lead plaintiff, the requirements of 'typicality' and adequacy of representation are key factors."). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *Schriver v. Impac. Mortg. Holdings, Inc.*, 2006 Dist. LEXIS 40607, *16 (C.D. Cal. May 1, 2006) ("At the lead plaintiff appointment stage, the Rule 23 inquiry is not as searching as it would be on a motion for class certification; the prospective lead plaintiff need only make a prima facie showing that it meets the typicality and adequacy factors."). As detailed below, BIG satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff, as BIG has claims that are typical of those of other Class Members and can adequately serve as Lead Plaintiff.

### a) The Bourouis Investor Group's Claims Are Typical of the Claims of All Class Members

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule

23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other Class Members, and when the claims are based on the same legal theory. *See Crossen v. CV Therapeutics,* 2005 U.S. Dist. LEXIS 41396, at *13 (N.D. Cal. Aug. 9, 2005). The requirement that the proposed class representative's claims be typical of the claims of the Class does not mean, however, that the claims must be identical. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988).

In this case, the typicality requirement is met because BIG's claims are identical, non-competing, and non-conflicting with the claims of the other Class Members. BIG and all of the Class Members purchased RINO securities during the Class Period when the stock prices were artificially inflated as a result of the Defendants' fraudulent misrepresentations and omissions, and thus, BIG and the Class Members suffered damages as a result of these purchases. Simply put, BIG, like all other Class Members: (1) purchased RINO stock during the Class Period; (2) purchased RINO stock at artificially-inflated prices as a result of Defendants' misrepresentations and omissions; and (3) suffered damages thereby. BIG's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise[,]" *Crossen*, 2005 U.S. Dist. LEXIS 41396, at *13, and BIG is not subject to any unique or special defenses. Thus, BIG meets the typicality requirement of Rule 23 because its claims are the same as the claims of the other Class Members.

### b) The Bourouis Investor Group Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to: (1) whether there are any conflicts between the interests of the movant and the members of the Class; (2) whether the movant is an adequate representative of the Class; (3) whether the interests of the movant are

clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests. 15 U.S.C. § 78u-4(a)(3)(B), 15 U.S.C. § 77z-1(a)(3)(B). *See also Miller v. Ventro Corp.*, 2001 U.S. Dist. LEXIS 26027, at *44 (N.D. Cal. Nov. 28, 2001) (*citing Takeda v. Turbodyne Techs.*, 67 F.Supp. 2d 1129, 1132 (C.D. Cal. 1999)).

BIG's interests are clearly aligned with the members of the Class because their claims are identical. There is no evidence of antagonism between its interests and those of the proposed Class Members. Furthermore, BIG has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss its members incurred as a result of the wrongful conduct alleged in this Action. This motivation, combined with BIG's identical interest with the members of the Class, clearly shows that its members will adequately and vigorously pursue the interests of the Class. In addition, BIG has selected law firms that are highly experienced in successfully prosecuting securities class actions and complex litigation as proposed lead counsel and proposed liaison counsel.

In sum, because of BIG's common interests with the Class Members, its clear motivation and ability to vigorously pursue this action, and its competent counsel, the adequacy requirement of Fed. R. Civ. P. Rule 23(a) is met. Therefore, because BIG not only meets both the typicality and adequacy requirements of Fed. R. Civ. P. Rule 23(a) and has sustained the largest amount of losses at the hands of the Defendants, it is, in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.

### III.   The Court Should Approve the Bourouis Investor Group's Choice of Lead and Liaison Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v), 15 U.S.C. § 77z-1(a)(3)(B)(v). Thus, this Court should not disturb the

1  Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the

2  class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa), 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

3        BIG has selected KSF to serve as lead counsel for the Class and Milberg as

4  liaison counsel for the Class. As evidenced by their firm resumes, KSF and Milberg

5  have successfully prosecuted complex securities class actions and have been lead

6  counsel in numerous landmark and precedent-setting class actions. *See* Miller Decl.

7  Exhibits D & E. This Court may be assured that in the event this motion is granted,

8  the members of the Class will receive the highest caliber of legal representation.

9  **CONCLUSION**

10        For the foregoing reasons, BIG respectfully requests that this Court: (1)

11  consolidate all related actions and all future related actions; (2) appoint the Bourouis

12  Investor Group to serve as lead plaintiff in this action; (3) approve the Bourouis

13  Investor Group's selection of lead and liaison counsel for the Class; and (4) grant such

14  other and further relief as the Court may deem just and proper.

15

16  DATED: January 14, 2011               _____/s/ Jeff Westerman_____

17                                    Jeff Westerman

18                                    MILBERG, LLP

19                                    One California Plaza

                                  300 South Grand Avenue, Suite 3900

20                                    Los Angeles, California 90071

21                                    Telephone: (213) 617-1975

22                                    E-mail: jwesterman@milberg.com

23                                    *Counsel for the Bourouis Investor Group and [Proposed] Liaison Counsel for the Class*

24                                    KAHN SWICK & FOTI, LLC

25

26                                    ____/s/ Kim E. Miller____

                                  Kim E. Miller (SBN 178370)

27                                    500 5th Ave., Suite 1810

28                                    New York, NY 10110

Telephone: (212) 696-3730
Facsimile: (504) 455-1498
E-mail: kim.miller@ksfcounsel.com

Lewis S. Kahn
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
E-mail: lewis.kahn@ksfcounsel.com

*Counsel for the Bourouis Investor Group and [Proposed]Lead Counsel for the Class*

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Motion was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on January 14, 2011.

_____/s/ Jeff Westerman_____

Jeff Westerman
E-mail: jwesterman@milberg.com
MILBERG, LLP
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, California 90071
Telephone: (213) 617-1975
