# EXHIBIT A

## Losses of the Bourouis Investors Group in RINO Securities

**Total Losses:**  ($1,286,304.53)

**MOHAMMED BOUROUIS:**

| Purchase Date | Purchase Price | Number of Shares | Cost | Sale Date | Sale Price | Proceeds | Gain/(Loss) |
|---|---|---|---|---|---|---|---|
| 2/23/2010 | $20.46 | 6000 | $122,760.00 | held | $4.75 | $28,476.82 | ($94,283.18) |
| 4/13/2010 | $19.10 | 20000 | $382,000.00 | held | $4.75 | $94,922.73 | ($287,077.27) |
| 4/30/2010 | $17.00 | 20000 | $340,000.00 | held | $4.75 | $94,922.73 | ($245,077.27) |
| 6/29/2010 | $12.60 | 7000 | $88,200.00 | held | $4.75 | $33,222.95 | ($54,977.05) |

**Losses of Muhammed Bourouis**  ($681,414.77)

**KENT STEELS:**

| Purchase Date | Purchase Price | Number of Shares | Cost | Sale Date | Sale Price | Proceeds | Gain/(Loss) |
|---|---|---|---|---|---|---|---|
| 11/9/2010 | $16.10 | 2000 | $32,200.00 | held | $4.75 | $9,492.27 | ($22,707.73) |
| 11/9/2010 | $15.45 | 3000 | $46,350.00 | held | $4.75 | $14,238.41 | ($32,111.59) |
| 11/9/2010 | $16.00 | 4000 | $64,000.00 | held | $4.75 | $18,984.55 | ($45,015.45) |
| 11/9/2010 | $15.53 | 4000 | $62,120.00 | held | $4.75 | $18,984.55 | ($43,135.45) |
| 11/9/2010 | $15.70 | 5000 | $78,500.00 | held | $4.75 | $23,730.68 | ($54,769.32) |
| 11/10/2010 | $14.20 | 3000 | $42,600.00 | held | $4.75 | $14,238.41 | ($28,361.59) |
| 11/10/2010 | $13.90 | 3000 | $41,700.00 | held | $4.75 | $14,238.41 | ($27,461.59) |

**Losses of Kent Steels**  ($253,562.73)

**MIKE DAROUVAR:**
**Common Stock:**

| Purchase Date | Purchase Price | Number of Shares | Cost | Sale Date | Sale Price | Proceeds | Gain/(Loss) |
|---|---|---|---|---|---|---|---|
| 8/20/2009 | $12.25 | 100 | $1,225.00 | held | $4.75 | $474.61 | ($750.39) |
| 8/20/2009 | $12.30 | 130 | $1,599.00 | held | $4.75 | $617.00 | ($982.00) |
| 8/21/2009 | $12.71 | 770 | $9,786.70 | held | $4.75 | $3,654.53 | ($6,132.18) |
| 9/24/2009 | $17.33 | 1000 | $17,330.00 | held | $4.75 | $4,746.14 | ($12,583.86) |
| 10/6/2009 | $23.15 | 1000 | $23,150.00 | held | $4.75 | $4,746.14 | ($18,403.86) |
| 10/6/2009 | $23.26 | 1000 | $23,260.00 | held | $4.75 | $4,746.14 | ($18,513.86) |
| 10/20/2009 | $22.80 | 1000 | $22,800.00 | held | $4.75 | $4,746.14 | ($18,053.86) |
| 10/28/2009 | $19.60 | 500 | $9,800.00 | held | $4.75 | $2,373.07 | ($7,426.93) |
| 12/2/2009 | $30.90 | 1000 | $30,900.00 | held | $4.75 | $4,746.14 | ($26,153.86) |
| 12/3/2009 | $29.31 | 1000 | $29,310.00 | held | $4.75 | $4,746.14 | ($24,563.86) |
| 12/14/2009 | $29.00 | 1500 | $43,500.00 | held | $4.75 | $7,119.20 | ($36,380.80) |
| 1/11/2010 | $31.01 | 1000 | $31,010.00 | held | $4.75 | $4,746.14 | ($26,263.86) |
| 1/13/2010 | $28.01 | 670 | $18,766.70 | held | $4.75 | $3,179.91 | ($15,586.79) |
| 6/17/2010 | $14.70 | 1000 | $14,700.00 | held | $4.75 | $4,746.14 | ($9,953.86) |

**Subtotal**  ($221,749.99)

**Options:**

| Option type | Expiration Date | Purchase Date | Purchase Price | Number of Contracts | Cost | Sale Date | Sale Price | Proceeds | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|---|
| Call | 6/25/2010 | 1/29/2010 | $1.80 | 10 | $1,800.00 | expired | $0.00 | $0.00 | ($1,800.00) |
| Call | 6/25/2010 | 4/1/2010 | $1.00 | 10 | $1,000.00 | expired | $0.00 | $0.00 | ($1,000.00) |
| Call | 1/21/2012 | 3/16/2010 | $6.80 | 10 | $6,800.00 | held | $0.30* | $300.00 | ($6,500.00) |
| Call | 1/21/2012 | 3/16/2010 | $7.00 | 10 | $7,000.00 | held | $0.30* | $300.00 | ($6,700.00) |
| Call | 1/21/2012 | 4/30/2010 | $3.12 | 10 | $3,120.00 | held | $0.30* | $300.00 | ($2,820.00) |

**Subtotal**  ($18,820.00)

**Losses of Mike Darouvar**  ($240,569.99)

**RICHARD SPOONER:**

| Purchase Date | Purchase Price | Number of Shares | Cost | Sale Date | Sale Price | Proceeds | Gain/(Loss) |
|---|---|---|---|---|---|---|---|
| 3/17/2010 | $24.05 | 1000 | $24,050.00 | held | $4.75 | $4,746.14 | ($19,303.86) |
| 3/25/2010 | $24.11 | 1000 | $24,105.00 | held | $4.75 | $4,746.14 | ($19,358.86) |
| 4/7/2010 | $20.01 | 2000 | $40,020.00 | held | $4.75 | $9,492.27 | ($30,527.73) |
| 5/6/2010 | $14.30 | 1500 | $21,450.00 | held | $4.75 | $7,119.20 | ($14,330.80) |
| 5/7/2010 | $13.65 | 500 | $6,825.00 | held | $4.75 | $2,373.07 | ($4,451.93) |

**Losses of Richard Spooner**  ($87,973.18)

**SHERRY SPOONER:**

| Purchase Date | Purchase Price | Number of Shares | Cost | Sale Date | Sale Price | Proceeds | Gain/(Loss) |
|---|---|---|---|---|---|---|---|
| 1/13/2010 | $27.53 | 1000 | $27,530.00 | held | $4.75 | $4,746.14 | ($22,783.86) |

**Losses of Sherry Spooner**  ($22,783.86)

**Total Losses of the Bourouis Investors Group**  ($1,286,304.53)

*Closing price of these options as of 1/14/2010.
Note: Holding Price of $4.746136 calculated using closing prices through 1/14/2010.

No. 3068     P. 2

## CERTIFICATION PURSUANT TO SECURITIES LAWS

**Mohammed Bourouis** _____ (name) ("Movant") declares, as to the claims asserted under the federal securities law, that:

1. Movant has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws. Movant adopts the allegations of the complaint(s), and Movant retains the firm of Kahn Swick and Foti, LLC, to pursue such action on a contingent fee basis.

2. Movant did not purchase securities of RINO International Corp. at the direction of counsel or in order to participate in a private action under the federal securities laws.

3. Movant is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the Class Period, Movant has executed transactions in the securities of RINO International Corp, as follows. See attached Schedule.

5. In the last three years, Movant has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6. Movant will not accept payment for serving as a lead plaintiff beyond his/her/its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: **01-13**_____, 2011

Movant Signature

**Mohammed Bourouis**

Printed Name

Jan. 13. 2011  5:59PM

## LIST OF ALL TRANSACTIONS OF MOHAMMED BOUROUIS IN RINO INTERNATIONAL, INC.

| Transaction Date | Transaction Type | Number of Shares | Share Price |
|---|---|---|---|
| 2/23/2010 | Purchase | 6000 | $20.46 |
| 4/13/2010 | Purchase | 20000 | $19.10 |
| 4/30/2010 | Purchase | 20000 | $17.00 |
| 6/29/2010 | Purchase | 7000 | $12.60 |

## CERTIFICATION PURSUANT TO SECURITIES LAWS

_KENT L. STEELS_ (name) ("Movant") declares, as to the claims asserted under the federal securities law, that:

1.  Movant has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws, Movant adopts the allegations of the complaint(s), and Movant retains the firm of Kahn Swick and Foti, LLC, to pursue such action on a contingent fee basis.

2.  Movant did not purchase securities of **RINO International Corp.** at the direction of counsel or in order to participate in a private action under the federal securities laws.

3.  Movant is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.  During the Class Period, Movant has executed transactions in the securities of **RINO International Corp.** as follows. See attached Schedule.

5.  In the last three years, Movant has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6.  Movant will not accept payment for serving as a lead plaintiff beyond his/her/its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: ___1/13_____, 2011

_____
Movant Signature

_KENT L. STEELS_
Printed Name

## LIST OF ALL TRANSACTIONS OF KENT STEELS IN RINO INTERNATIONAL, INC.

| Transaction Date | Transaction Type | Number of Shares | Share Price |
|---|---|---|---|
| 11/9/2010 | Purchase | 2000 | $16.10 |
| 11/9/2010 | Purchase | 3000 | $15.45 |
| 11/9/2010 | Purchase | 4000 | $16.00 |
| 11/9/2010 | Purchase | 4000 | $15.53 |
| 11/9/2010 | Purchase | 5000 | $15.70 |
| 11/10/2010 | Purchase | 3000 | $14.20 |
| 11/10/2010 | Purchase | 3000 | $13.90 |

## CERTIFICATION PURSUANT TO SECURITIES LAWS

Mike Darouvar (name) ("Movant") declares, as to the claims asserted under the federal securities law, that:

1.  Movant has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws, Movant adopts the allegations of the complaint(s), and Movant retains the firm of Kahn Swick and Foti, LLC, to pursue such action on a contingent fee basis.

2.  Movant did not purchase securities of RINO International Corporation at the direction of counsel or in order to participate in a private action under the federal securities laws.

3.  Movant is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.  During the Class Period, Movant has executed transactions in the securities of RINO International Corporation as follows. See attached Schedule.

5.  In the last three years, Movant has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6.  Movant will not accept payment for serving as a lead plaintiff beyond his/her/its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: JAN/10/2011, 2010

_____
Movant Signature

MIKE  DARONVAR
Printed Name

**LIST OF ALL TRANSACTIONS OF MIKE DAROUVAR IN RINO INTERNATIONAL, INC.**

COMMON STOCK:

| Transaction Date | Transaction Type | Number of Shares | Share Price |
|---|---|---|---|
| 8/20/2009 | Purchase | 100 | $12.25 |
| 8/20/2009 | Purchase | 130 | $12.30 |
| 8/21/2009 | Purchase | 770 | $12.71 |
| 9/24/2009 | Purchase | 1000 | $17.33 |
| 10/6/2009 | Purchase | 1000 | $23.15 |
| 10/6/2009 | Purchase | 1000 | $23.26 |
| 10/20/2019 | Purchase | 1000 | $22.80 |
| 10/28/2009 | Purchase | 500 | $19.60 |
| 12/2/2009 | Purchase | 1000 | $30.90 |
| 12/3/2009 | Purchase | 1000 | $29.31 |
| 12/14/2009 | Purchase | 1500 | $29.00 |
| 1/11/2010 | Purchase | 1000 | $31.01 |
| 1/13/2010 | Purchase | 670 | $28.01 |
| 6/17/2010 | Purchase | 1000 | $14.70 |

OPTIONS:

| Transaction Date | Transaction Type | Number of Contracts* | Price* |
|---|---|---|---|
| 1/29/2010 | Purchase - 25 Call June 25 10 | 10 | $1.80 |
| 4/1/2010 | Purchase - 25 Call June 25 10 | 10 | $1.00 |
| 3/16/2010 | Purchase - 25 Call Jan 21 12 | 10 | $6.80 |
| 3/16/2010 | Purchase - 25 Call Jan 21 12 | 10 | $7.00 |
| 4/30/2010 | Purchase - 25 Call Jan 21 12 | 10 | $3.12 |

## CERTIFICATION PURSUANT TO SECURITIES LAWS

_Richard Spooner_ (name) ("Movant") declares, as to the claims asserted under the federal securities law, that:

1. Movant has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws, Movant adopts the allegations of the complaint(s), and Movant retains the firm of Kahn Swick and Foti, LLC, to pursue such action on a contingent fee basis.

2. Movant did not purchase securities of RINO International Corporation at the direction of counsel or in order to participate in a private action under the federal securities laws.

3. Movant is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the Class Period, Movant has executed transactions in the securities of RINO International Corporation as follows. See attached Schedule.

5. In the last three years, Movant has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6. Movant will not accept payment for serving as a lead plaintiff beyond his/her/its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: _Dec. 6_____, 2010

_____
Movant Signature

_____
Printed Name

**LIST OF ALL TRANSACTIONS OF RICHARD SPOONER IN RINO INTERNATIONAL, INC.**

| Transaction Date | Transaction Type | Number of Shares | Share Price |
|---|---|---|---|
| 3/17/2010 | Purchase | 1000 | $24.05 |
| 3/25/2010 | Purchase | 1000 | $24.11 |
| 4/7/2010 | Purchase | 2000 | $20.01 |
| 5/6/2010 | Purchase | 1500 | $14.30 |
| 5/7/2010 | Purchase | 500 | $13.65 |

## CERTIFICATION PURSUANT TO SECURITIES LAWS

_____Sherry A. Spooner_____ (name) ("Movant") declares, as to the claims asserted under the federal securities law, that:

1. Movant has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws, Movant adopts the allegations of the complaint(s), and Movant retains the firm of Kahn Swick and Foti, LLC, to pursue such action on a contingent fee basis.

2. Movant did not purchase securities of RINO International Corporation at the direction of counsel or in order to participate in a private action under the federal securities laws.

3. Movant is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the Class Period, Movant has executed transactions in the securities of RINO International Corporation as follows. See attached Schedule.

5. In the last three years, Movant has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6. Movant will not accept payment for serving as a lead plaintiff beyond his/her/its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: _____December 6_____, 2010

_____
Movant Signature

_____
Sherry A. Spooner

Printed Name

## LIST OF ALL TRANSACTIONS OF SHERRY SPOONER IN RINO INTERNATIONAL, INC.

| Transaction Date | Transaction Type | Number of Shares | Share Price |
|---|---|---|---|
| 1/13/2010 | Purchase | 1000 | $27.53 |

# EXHIBIT B

Dow Jones Reprints: This copy is for your personal, non-commerical use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool on any article or visit www.djreprints.com

See a sample reprint in PDF format
Order a reprint of this article now

MONDAY, NOVEMBER 15, 2010

# The Rosen Law Firm Files Class Action Lawsuit Charging RINO International Corporation with Securities Fraud -- RINO

NEW YORK--(BUSINESS WIRE)--November 15, 2010--
The Rosen Law Firm, P.A. today announced that it has filed a class action lawsuit on behalf of investors who purchased the common stock of RINO International Corporation ("RINO" or the "Company") (Nasdaq: RINO - News) during the period from March 31, 2009 to November 11, 2010, inclusive (the "Class Period"), seeking to recover damages for investors from violations of federal securities laws.

To join the RINO class action, visit the firm's website at http://www.rosenlegal.com, or call Laurence Rosen, Esq. or Phillip Kim, Esq., toll-free, at 866-767-3653; you may also email lrosen@rosenlegal.com or pkim@rosenlegal.com for information on the class action. The case is pending in the U.S. District Court for the Central District of California.

NO CLASS HAS YET BEEN CERTIFIED IN THE ABOVE ACTION. UNTIL A CLASS IS CERTIFIED, YOU ARE NOT REPRESENTED BY COUNSEL UNLESS YOU RETAIN ONE. YOU MAY CHOOSE TO DO NOTHING AT THIS POINT AND REMAIN AN ABSENT CLASS MEMBER.

The Complaint asserts violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against RINO and certain of its officers and directors for misrepresenting the Company's true financial performance. The Complaint alleges that contrary to the Company's annual report filed with the SEC for fiscal 2009 which reported $193 million of revenue, the Company's annual report filed with the Chinese authorities reported only $11 million of revenue for 2009. This discrepancy, along with other accounting inconsistencies, and questionable transactions between RINO and its management, has raised red flags and prompted an internal review. The Complaint asserts that when the market learned of this adverse information, the price of RINO stock dropped damaging investors.

If you wish to serve as lead plaintiff, you must move the Court no later than January 11, 2010. A lead plaintiff is a representative party acting on behalf of other class members in directing the litigation. If you wish to join the litigation, or to discuss your rights or interests regarding this class action, please contact Laurence Rosen, Esq. or Phillip Kim, Esq. of The Rosen Law Firm, toll-free, at 866-767-3653, or via e-mail at lrosen@rosenlegal.com or pkim@rosenlegal.com. You may also visit the firm's website at http://www.rosenlegal.com.

The Rosen Law Firm represents investors throughout the globe, concentrating its practice in securities

class actions and shareholder derivative litigation.

```
    CONTACT: The Rosen Law Firm P.A.
```
Laurence Rosen, Esq.

Phillip Kim, Esq.

Tel:

212-686-1060

Weekends Tel: 917-797-4425

Toll Free: 1-866-767-3653

Fax:

212-202-3827

lrosen@rosenlegal.com

pkim@rosenlegal.com

www.rosenlegal.co

```
    SOURCE: The Rosen Law Firm, P.A.
Copyright Business Wire 2010
```

**Copyright 2010 Dow Jones & Company, Inc. All Rights Reserved**

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed
by our **Subscriber Agreement** and by copyright law. For non-personal use or to order multiple copies,
please contact Dow Jones Reprints at 1-800-843-0008 or visit **www.djreprints.com**

# EXHIBIT C

Case 2:10-cv-08695-VBF -VBK    Document 34-2    Filed 01/14/11    Page 17 of 49    Page ID #:747

Dow Jones Reprints: This copy is for your personal, non-commerical use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool on any article or visit www.djreprints.com

See a sample reprint in PDF format
Order a reprint of this article now

FRIDAY, NOVEMBER 19, 2010

# CORRECTING and REPLACING The Rosen Law Firm Files Class Action Lawsuit Charging RINO International Corporation with Securities Fraud -- RINO

NEW YORK--(BUSINESS WIRE)--November 19, 2010--
Fifth paragraph, first sentence should read: If you wish to serve as lead plaintiff, you must move the Court no later than January 14, 2011 (instead of January 11, 2010).

The corrected release reads:

THE ROSEN LAW FIRM FILES CLASS ACTION LAWSUIT CHARGING RINO INTERNATIONAL CORPORATION WITH SECURITIES FRAUD -- RINO

The Rosen Law Firm, P.A. today announced that it has filed a class action lawsuit on behalf of investors who purchased the common stock of RINO International Corporation ("RINO" or the "Company") (Nasdaq: RINO - News) during the period from March 31, 2009 to November 11, 2010, inclusive (the "Class Period"), seeking to recover damages for investors from violations of federal securities laws.

To join the RINO class action, visit the firm's website at http://www.rosenlegal.com, or call Laurence Rosen, Esq. or Phillip Kim, Esq., toll-free, at 866-767-3653; you may also email lrosen@rosenlegal.com or pkim@rosenlegal.com for information on the class action. The case is pending in the U.S. District Court for the Central District of California.

NO CLASS HAS YET BEEN CERTIFIED IN THE ABOVE ACTION. UNTIL A CLASS IS CERTIFIED, YOU ARE NOT REPRESENTED BY COUNSEL UNLESS YOU RETAIN ONE. YOU MAY CHOOSE TO DO NOTHING AT THIS POINT AND REMAIN AN ABSENT CLASS MEMBER.

The Complaint asserts violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against RINO and certain of its officers and directors for misrepresenting the Company's true financial performance. The Complaint alleges that contrary to the Company's annual report filed with the SEC for fiscal 2009 which reported $193 million of revenue, the Company's annual report filed with the Chinese authorities reported only $11 million of revenue for 2009. This discrepancy, along with other accounting inconsistencies, and questionable transactions between RINO and its management, has raised red flags and prompted an internal review. The Complaint asserts that when the market learned of this adverse information, the price of RINO stock dropped damaging investors.

If you wish to serve as lead plaintiff, you must move the Court no later than January 14, 2011. A lead plaintiff is a representative party acting on behalf of other class members in directing the litigation. If you wish to join the litigation, or to discuss your rights or interests regarding this class action, please contact Laurence Rosen, Esq. or Phillip Kim, Esq. of The Rosen Law Firm, toll-free, at 866-767-3653, or via e-mail at lrosen@rosenlegal.com or pkim@rosenlegal.com. You may also visit the firm's website at http://www.rosenlegal.com.

The Rosen Law Firm represents investors throughout the globe, concentrating its practice in securities class actions and shareholder derivative litigation.

    CONTACT: The Rosen Law Firm P.A.

Laurence Rosen, Esq.

Phillip Kim, Esq.

275

Madison Avenue, 34th Floor

New York, New York 10016

Tel:

212-686-1060

Weekends Tel: 917-797-4425

Toll Free: 1-866--767-3653

Fax:

212-202-3827

lrosen@rosenlegal.com

pkim@rosenlegal.com

www.rosenlegal.co

    SOURCE: The Rosen Law Firm, P.A.
Copyright Business Wire 2010

**Copyright 2010 Dow Jones & Company, Inc. All Rights Reserved**

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our **Subscriber Agreement** and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit **www.djreprints.com**

# EXHIBIT D



**Madisonville, Louisiana**

206 Covington Street
Madisonville, LA 70447
Toll Free: (866) 467-1400
Phone: (504) 455-1400
Fax: (504) 455-1498

**New York, New York**

500 5th Avenue, Suite 1810
New York, NY 10110
Phone: (212) 696-3730
Fax: (504) 455-1498

www.ksfcounsel.com

# Table of Contents

The Firm ........................................................................................................................... 2

Securities Class Actions.................................................................................................. 2
   Current Cases ................................................................................................................ 2
   Recent Recoveries ......................................................................................................... 3

Corporate Governance and Shareholder Rights ........................................................ 4
   Current Cases ................................................................................................................ 4
   Recent Recoveries ......................................................................................................... 4

Mergers And Acquisitions .............................................................................................. 5
   Current Cases ................................................................................................................ 5
   Recent Recoveries ......................................................................................................... 5

Consumer Fraud............................................................................................................... 5
   Current Cases ................................................................................................................ 5
   Recent Recoveries ......................................................................................................... 6

Attorneys........................................................................................................................... 6
   Partners ........................................................................................................................ 6
      Lewis S. Kahn .......................................................................................................... 6
      Michael A. Swick ..................................................................................................... 7
      Charles C. Foti, Jr. .................................................................................................. 7
      Kim E. Miller ........................................................................................................... 8
      Albert M. Myers ...................................................................................................... 9
   Of Counsel ................................................................................................................... 11
      Neil Rothstein ......................................................................................................... 11
   Associates.................................................................................................................... 11
      Paul S. Balanon....................................................................................................... 11
      Sarah Catherine Boone........................................................................................... 12
      Melissa Ryan Clark ................................................................................................ 13
      Christopher W. Kaul ............................................................................................... 13
      Melinda A. Nicholson ............................................................................................ 14
      Geoffrey C. Rodriguez ........................................................................................... 14

# The Firm

Kahn Swick & Foti, LLC ("KSF") ([www.ksfcounsel.com](www.ksfcounsel.com)) is a law firm with offices in Louisiana and New York. KSF focuses predominantly on class action litigation, in the areas of securities and consumer fraud, and on shareholder derivative and other complex litigation. KSF was formed in 2000 as a partnership between established class action attorneys. Since its inception KSF has recovered tens of millions of dollars for its clients.

The lawyers of KSF have significant experience litigating complex securities cases. Among other cases the firm is involved in, KSF has been appointed to leadership roles in the following litigations:

# Securities Class Actions

## Current Cases

***In re Allot Communications Ltd. Securities Litigation,*** 1:07-cv-03455-RJH
*S.D.N.Y.*
*Co-Lead Counsel*
*$1.3 Million Settlement Preliminarily Approved*

***In re China Sunergy Securities Litigation***, 1:07-civ-7895-DAB
*S.D.N.Y.*
*Lead Counsel*
*$1.05 Million Settlement Preliminarily Approved*

***Gooden v. Smart Online et al.,*** 1:07-cv-785-WLO
*M.D. N.C.*
*Co-Lead Counsel*

***In re HomeBanc Corporation Securities Litigation,*** 1:08-cv-1461-TCB
*N.D. Ga.*
*Co-Lead Counsel*

***Miyahira v. Vitacost.com, Inc.,*** No. 1-80644-CIV-RYSKAMP/VITUNAC
*S.D. Fla.*
*Co-Lead Counsel*

***In re Nvidia Corporation Securities Litigation,*** 08-CV-4260-JW
*N.D. Cal.*
*Co-Lead Counsel*

***In re Superior Offshore International, Inc. Securities Litigation,*** 4:08-cv-00687-NFA
*S.D. Tex.*
*Lead Counsel*

## Recent Recoveries

*In re Virgin Mobile USA IPO Litigation,* 2:07-cv-05619-SDW-MCA (D.N.J.), *Co-Lead Counsel*, federal securities IPO-related class action against a company providing wireless communication services, certain officers and directors, certain controlling shareholder entities, and Virgin's underwriters, resulting in a cash settlement of **$19.5 million** for shareholders.

*In re BigBand Networks, Inc Securities Litigation,* 3:07-CV-05101-SBA (C.D. Cal.), *Co-Lead Counsel,* federal securities class action brought against a computer hardware corporation, certain officers and directors of the Company, and the Company's Underwriters, resulting in a cash settlement of **$11 million** for shareholders.

*In re U.S. Auto Parts Networks, Inc. Securities Litigation,* 2:07-cv-02030-GW-JC (C.D. Cal.), *Lead Counsel*, federal securities IPO-related class action against an online automotive supply company, certain members of its board of directors, and its underwriters, resulting in a cash settlement of **$10 million** for shareholders.

*In re ShoreTel, Inc. Securities Litigation*, 3:08-cv-00271-CRB (N.D. Cal.), *Lead Counsel,* federal securities IPO-related class action brought against an Internet protocol telecommunications company, certain of its officers and directors, and its underwriters, resulting in a cash settlement of **$3 million** for shareholders.

*In re Xethanol Corporation Securities Litigation,* 1:06-cv-10234-HB (S.D.N.Y.), *Lead Counsel*, federal securities fraud class action against an ethanol production company and certain of its officers and directors, resulting in a cash settlement of **$2.8 million** for shareholders.

*Mongeli v. Terayon Comm. Systems Inc. et al.,* 4:06-cv-03936-CW (N.D. Cal.), *Co-Lead Counsel*, federal securities fraud class action brought against a communications systems corporation, the Company's outside auditor, and certain officers and directors, resulting in a cash settlement of **$2.73 million** for shareholders.

*In re Opteum, Inc., Securities Litigation,* 2:07-cv-14278-DLG (S.D. Fla.), *Co-Lead Counsel,* federal securities fraud class action brought against a Real Estate Investment Trust and certain of its officers and directors, resulting in a cash settlement of **$2.35 million** for shareholders.

# Corporate Governance and Shareholder Rights

## Current Cases

***In re American International Group, Inc. 2007 Deriv. Litig.,*** 07-CV-10464 (LTS)
   *S.D.N.Y.*
   *Co-Lead Counsel*

***In re ArthroCare Corp. Sec. Lit.,*** No. 08-cv-574-SS
   *W.D. Tex.*
   *Co-Lead Counsel in the Consolidated Derivative Action*

***In re Bank of America Corp. Securities, Derivative, and Employment Retirement Income Security Act (ERISA) Litigation,*** 09 Civ.580 (DC)
   *SDNY*
   *Co-Lead Counsel in the Consolidated Derivative Action*

***In re Barnes & Noble Stockholder Derivative Litigation***, C.A. No. 4813-VCS
   *Court of Chancery of the State of Delaware*
   *Co-Lead Counsel*

***In re BP Shareholder Derivative Litigation***, Master File No. 4:10-cv-03447
   *S.D. Tex.*
   *Co-Lead Counsel*

***In re ITT Educational Services, Inc. Securities and Shareholder Derivative Litigation,*** 10-cv-8323
   *S.D.N.Y.*
   *Co-Lead Counsel*

***In re Moody's Corporation Shareholder Derivative Litigation,*** No. 1:08-CV-9323
   *S.D.N.Y.*
   *Lead Counsel*

***In re Morgan Stanley & Co., Inc. Auction Rate Secs. Deriv. Litig.,*** 1:08-cv-07587-AKH
   *S.D.N.Y.*
   *Lead Counsel*

## Recent Recoveries

***In re Proquest Company Shareholder Deriv. Litig. (pending),*** 2:06-cv-11845-AC-MKM (E.D. Mich.), *Co-Lead Counsel*, federal derivative action filed on behalf of ProQuest Company (now Voyager) against certain officers and directors, resulting in a settlement with important corporate governance changes.

# Mergers And Acquisitions

## Current Cases

**In re Alcon, Inc. Shareholder Litigation,** No. 10 Civ. 139
   *S.D.N.Y. 2010 (VM)*
   *Chair of Plaintiffs' Executive Committee*

## Recent Recoveries

**Golub v. Case, Pomeroy & Co., Inc. et al.,** C.A. No. 2449-N. (Delaware), *Co-Lead Counsel*, lawsuit challenging a merger agreement between Case, Pomeroy & Co. and CP Newco, Inc. resulting in a financial benefit of **$2.75 million** for the minority shareholders of the Company.

# Consumer Fraud

## Current Cases

**In re: Actimmune Marketing Litigation**, No. C 08-02376 MHP (N.D. Cal.), *member of Plaintiffs' Steering Committee*, putative nationwide class action on behalf of consumers and third-party payors who paid for the prescription drug Actimmune to treat idiopathic pulmonary fibrosis, an incurable disease for which Actimmune was not approved by the FDA as a treatment.  The complaint alleges that Actimmune was improperly marketed as providing a survival benefit for people with idiopathic pulmonary fibrosis despite the lack of any scientific study confirming the claim.

**Rose Goudeau, et. al. v. The Administrators of the Tulane Educational Fund, et. al.**, No. 2004-04758, Sec. 13, Div. J (Civil District Court for the Parish of Orleans), *Class Co-Counsel*, certified nationwide class action on behalf of the near relatives of individuals who donated their bodies to the Tulane Willed Body Program.  The complaint alleges that the Tulane Willed Body Program sold the donated bodies and/or body parts that it did not need to third parties. In September, 2010, a settlement was preliminarily approved by the court. A final fairness hearing is set for February, 2011.

## Recent Recoveries

*In re: General Motors Corp. Speedometer Products Liability Litigation,* MDL No. 1896, *Co-Lead Counsel.* These multi-state consumer fraud actions, consolidated in federal court in the Western District of Washington, alleged that certain makes and models of GM vehicles contain a defective component that caused premature speedometer failure. The settlement required GMC to repair certain of the vehicles and to extend warranties for a substantial period of time or mileage duration, at an estimated value to the Class in excess of **$300 million.**

# Attorneys

## Partners

### Lewis S. Kahn

Lewis Kahn is the founding partner of KSF, and also serves as the firm's managing partner. A substantial portion of Mr. Kahn's practice is devoted to representing shareholders in connection with losses suffered as a result of securities fraud, and in shareholder derivative litigation.

Mr. Kahn manages the firm's portfolio monitoring program for public and private institutional investors. Additionally, Mr. Kahn oversees the firm's lead plaintiff motion practice in PSLRA class action litigation, and serves on the firm's settlement team, which has been responsible for settlements including *In re Virgin Mobile USA IPO Litigation,* 2:07-cv-05619-SDW-MCA ($19.5 million settlement preliminarily approved), *In re BigBand Networks, Inc Securities Litigation,* 3:07-CV-05101-SBA ($11 million settlement), and *In re U.S. Auto Parts Networks, Inc. Securities Litigation,* 2:07-cv-02030-GW-JC ($10 million settlement).

In addition to securities lawsuits, Mr. Kahn has significant experience with consumer fraud and mass tort class actions.  Mr. Kahn has been appointed to various leadership positions in federal class action litigation.

Mr. Kahn is often turned to by the media for expert commentary in the field of class action litigation. Mr. Kahn's firm has been profiled in the *New York Times, Washington Post, Boston Globe*, and many other media outlets. Mr. Kahn holds a Bachelor's degree from New York University and received a Juris Doctor from Tulane Law School in 1994. He

has been a member in good standing of the Louisiana State Bar Association since 1995, and is a member of the Federal Bars for the Eastern, Middle and Western Districts of Louisiana.

### Michael A. Swick

Michael A. Swick is the co-founding partner of Kahn Swick & Foti LLC, and also heads the firm's Securities Litigation Group. Mr. Swick began his career in the mid 1990s working at some of the nation's leading securities class action law firms.

Over the past decade, Mr. Swick has played a significant role in investigating large corporate frauds and in initiating litigations against the nation's largest corporations. On behalf of shareholders, Mr. Swick has initiated actions in a variety of federal courts, primarily seeking to recover for violation the Securities Act of 1933 and the Securities Exchange Act of 1934.

Recent actions have resulted in tens of millions of dollars of recoveries for shareholders. Over his career, Mr. Swick has also participated in the litigation of cases that have resulted in hundreds of millions of dollars in recoveries for aggrieved shareholders and institutional investors.

Mr. Swick is also intimately involved with serving the firm's institutional investor clients, participating in the management and development of KSF's portfolio monitoring systems.

Mr. Swick received a Juris Doctor from Tulane Law School in 1994. Mr. Swick received a Masters of Political Philosophy from Columbia University in 1989 and a B.A. in Philosophy and Political Science from State University of New York at Albany in 1988. Mr. Swick was admitted to the State Bar of New York in 1997 and is admitted to practice before the United States District Court for the Southern District of New York.

### Charles C. Foti, Jr.

Charles C. Foti, Jr. served as the Attorney General for the state of Louisiana from 2004-2008, after serving for 30 years as one of the most innovative law enforcement officials in the United States as Orleans Parish Criminal Sheriff. Throughout his career, General Foti has remained committed to public service.

As Attorney General for the state of Louisiana, General Foti's achievements include:

- Recovered over $24 million for Louisiana consumers in consumer fraud matters,
  $8 million in anti-trust litigation, $9.1 million for state employees through Office of
  Group Benefits, over $2 million for auto complaints, over $33 million in Medicaid
  Fraud.

- Investigated and apprehended numerous contractor fraud criminals in the wake
  of the worst natural disaster in United States history, Hurricane Katrina.

- Doubled the number of arrests for crime against children through the Louisiana
  Internet Crimes Against Children Task Force.

In his tenure as Orleans Parish Criminal Sheriff, General Foti oversaw the enormous
expansion of the parish jail, growing from 800 prisoners in 1973 to more than 7,000
currently. As the prison expanded, so did the need for education and rehabilitation skills
for prisoners. As Sheriff, General Foti started the first reading and GED programs, work
release programs, drug treatment programs and the nation's first boot camp at the local
level, all to prepare prisoners for a future without crime. Administratively, General Foti
managed a multi-million dollar budget and a complex organization of more than 1,400
employees.

General Foti has for many years been an advocate for the elderly. As Sheriff, he and a
small army of volunteers provided Thanksgiving meals for senior citizens in the New
Orleans area who were alone or couldn't afford a proper holiday feast. He started a back
to work program for senior citizens that helps people over the age of 55 get back into the
workforce.

General Foti received his Juris Doctor degree from Loyola University Law School in 1965,
after serving his country in the United States Army from 1955 through 1958.

### Kim E. Miller

Kim E. Miller is a partner of Kahn Swick & Foti, LLC, who specializes in securities,
consumer, and commercial litigation. Prior to joining KSF in 2006, Ms. Miller was a
partner at one of the nation's leading plaintiff class action firms. Ms. Miller also spent two
years as a securities litigator on the defense side.

Over the course of her career, Ms. Miller has represented tens of thousands of wronged
investors and consumers in class actions filed throughout the country. Among other
cases, Ms. Miller has worked on more than 25 cases involving allegations of improper

directed brokerage arrangements and excessive charges in mutual fund cases brought pursuant to the 1934 Securities Exchange Act and/or the Investment Company Act of 1940. Ms. Miller was also involved in the mutual funds late trading/market timing litigation.

Ms. Miller has been involved in a variety of cases in which large settlements were reached, including:

- **Settlement value of $127.5 million** *Spahn v. Edward D. Jones & Co., L.P.,* 04-cv-00086-HEA (E.D. Mo.)

- **$110 Million Recovery.** *In re StarLink Corn Products Liability Litigation*, MDL No. 1403 (N.D. Ill.)

- **$100 Million Recovery.** *In re American Express Financial Advisors*, Inc. Sec. Litig., 1:04-cv-01773-DAB (S.D.N.Y.)

Ms. Miller is currently overseeing KSF's securities class actions.

Ms. Miller graduated with honors from Stanford University in 1992 with a double major in English and Psychology. She earned her Juris Doctor degree from Cornell Law School, *cum laude*, in 1995. While at Cornell, Ms. Miller was the Co-Chair of the Women's Law Symposium, Bench Brief Editor of the Moot Court Board, and a member of the Board of Editors of the Cornell Journal of Law & Public Policy. Her pro bono work includes representing families of 9/11 victims at *In re September 11 Victim Compensation Fund* hearings. Ms. Miller has also served as a fundraiser for the New York Legal Aid Society. She is admitted to practice in the States of California and New York and before the United States District Courts for the Southern and Eastern Districts of New York and the Northern, Southern, and Central Districts of California.

### Albert M. Myers

Albert M. Myers, a partner in the New Orleans office of KSF, prosecutes the rights of shareholders in class action litigation, shareholder derivative litigation, and corporate governance litigation around the world.  In addition, he represents consumers in financial services class action litigation.

Mr. Myers is currently handling many KSF lead counsel engagements, including:

- *In re Alcon, Inc. Shareholder Litigation*, No. 10 Civ. 139 (S.D.N.Y. 2010) (VM) (Chair of Plaintiffs' Executive Committee)

- *In re Bank of America Corp. Securities, Derivative, and ERISA Litigation*, No. 09 MDL 2058 (DC) (S.D.N.Y. 2009) (Co-Lead Counsel for Derivative Plaintiffs)

- *In re Barnes & Noble Stockholder Derivative Litigation*, C.A. No. 4813-VCS (Del. Ch. 2009) (Co-Lead Counsel)

- *In re Arthrocare Corp. Securities Litigation*, No. A-08-cv-00574-SS (W.D. Tex. 2009) (Co-Lead Counsel for Derivative Plaintiffs)

- *In re Morgan Stanley & Co., Inc. Auction Rate Securities Derivative Litigation*, No. 08 Civ. 7587 (AKH) (S.D.N.Y. 2008) (Lead Counsel)

- *In re American International Group, Inc. 2007 Derivative Litigation*, No. 07 Civ. 10464 (LTS) (S.D.N.Y. 2007) (Co-Lead Counsel)

Since he began his practice in 1994, Mr. Myers has represented clients in securities or corporate disputes in numerous courts.  Successful results for clients include:

- *In re Intelligroup Securities Litigation*, 468 F. Supp. 2d 670 (D.N.J. 2006)

- *Bailey v. Cumberland Casualty & Surety Co.,* No. 7:04-cv-02162-TMP, slip op. (N.D. Ala. June 3, 2005), aff'd, No. 05-13740-BB (11th Cir. May 11, 2006)

- *In re Recoton Corp. Securities Litigation*, 358 F. Supp. 2d 1130 (M.D. Fla. 2005)

- *Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000)

- *Kwiatkowski v. Bear Stearns Co.*, No. 96 Civ. 4798 (JGK), 1997 WL 538819 (Aug. 29, 1997)

- *Quaker Oats Co. v. Borden, Inc.*, No. 95 Civ. 9300 (RO), 1996 WL 255386 (S.D.N.Y. May 15, 1996).

Mr. Myers received his B.A. from Yale University and his J.D., *magna cum laude*, from New York Law School, where he was the John Ben Snow Scholar (1991-1994), a Teaching Fellow, and Chief Articles Editor of the *New York Law School Law Review*, and coached the school's moot court team in the Kaufman Securities Law Competition.

He served as a judicial intern to the Honorable Prudence Carter Beatty of the United States Bankruptcy Court for the Southern District of New York, and is the author of Anatomy of a Cross-Border Securities Investigation: A Case Study (Int'l Bar Ass'n Oct. 2004), Whom May the Corporation Serve?—The Constitutionality of Nonstockholder Constituency Statutes, 39 N.Y.L. Sch. L. Rev. 449 (1994), and other publications.

Mr. Myers is a member of the Georgia and New York bars, the Federal Bar Association, and the International Bar Association.

## Of Counsel

### Neil Rothstein

Neil Rothstein is of counsel to Kahn Swick & Foti, LLC.  Mr. Rothstein has spent more than twenty years involved in all aspects of class action litigation.  He is a graduate of Case Western Reserve University (B.A. 1986) and the Temple University School of Law (J.D. 1989).

During law school, Mr. Rothstein was a summer associate and a law clerk for two nationally known class action firms and later became an attorney at one of them. In 1997, he joined a small boutique law firm that worked on several important and widely-followed class action cases in the country.

Mr. Rothstein has extensive experience in all phases of securities, antitrust, consumer, and shareholder derivative litigation. He has always believed that the clients' needs come first.  In that light, he focuses on helping to lead Kahn Swick & Foti, LLC in client development and communications, client education and client participation in litigation in which they have been financially and otherwise injured.

## Associates

### Paul S. Balanon

Paul Balanon works as part of the KSF securities litigation team and is actively involved in all phases of litigation on matters asserted under the Securities Act of 1933 and the Exchange Act of 1934.  He has been instrumental in spearheading discovery for such cases as: *In re Superior Offshore Intl, Inc Sec Litig* (S.D. Tex.); *In re Virgin Mobile USA IPO Litig* (D. N.J.); and *In re ShoreTel, Inc Sec Litig* (N.D. Cal.).   Prior to joining the firm, Mr. Balanon worked for defense firms handling complex litigation involving products

liability, federal preemption, oil and gas indemnity, vessel casualty, marine insurance, and toxic torts.

Mr. Balanon received a B.A. in Political Science/International Relations from UCLA (1999) and a J.D. from American University (2003).  During law school, Mr. Balanon worked for Judge David Tatel at the U.S. Court of Appeals for the D.C. Circuit, the Washington Lawyers Committee for Civil Rights and Urban Affairs, and the American University Criminal Justice Clinic.  Mr. Balanon then enrolled at Tulane Law School to pursue studies in one of his areas of interest, shipping, and served on the Tulane Maritime Law Journal.  He received a Master of Laws in Admiralty (2004) and the Edward A. Dodd Prize for graduating first in his class.

Mr. Balanon is admitted to practice in Louisiana, Maryland, the District of Columbia, and before the United States Court of Appeals for the Fifth Circuit, the United States District Courts for the Eastern, Middle, and Western Districts of Louisiana.

### Sarah Catherine Boone

Sarah Catherine Boone focuses primarily on federal securities class action litigation. While she works on all aspects of complex litigation, her particular areas of expertise are discovery -- including evolving applications of technology in e-discovery – and settlement. She has been actively involved in the e-discovery and technological aspects of document production and management in several securities class actions, including *In re Opteum, Inc., Securities Litigation,* 2:07-cv-14278-DLG (S.D. Fl.), *In re ShoreTel, Inc. Securities Litigation*, 3:08-cv-00271-CRB (N.D. Cal.), *In re Superior Offshore International, Inc. Sec. Litig.* (S.D. Tex.), and *In re Virgin Mobile USA IPO Litig.* (D. N.J.). She was heavily involved in all aspects of the settlement process for *In re Xethanol Corporation Sec. Litig.* (S.D.N.Y.), *In re U.S. Auto Parts Networks, Inc. Sec. Litig.* (C.D. Cal.), *Mongeli v. Terayon Commun. Sys., Inc. et al.* (N.D. Cal.), and *In re BigBand Networks, Inc. Sec. Litig.* (N.D. Cal).

Ms. Boone holds a Bachelor of Arts in Philosophy from the University of Southern California (1999), where she was a Trustee Scholar; a Master of Fine Arts in Writing from the Master of Professional Writing Program at USC (2002); and a Juris Doctor from Tulane Law School (2007). She was admitted to practice law in the State of Montana in 2007 and in the State of California in 2010. She is a member of the State Bar Associations of Montana and California and the San Diego Bar Association, and is admitted to the United States District Courts for the District of Montana, the Northern

District of California, the Central District of California, and the Southern District of California.

**Melissa Ryan Clark**

Ms. Clark practices in KSF's New York office where she focuses on all phases of federal securities litigation.  She is actively involved in cases pending before various federal courts across the United States, including *In re Superior Offshore International, Inc. Sec. Litig.* 08-cv-00687 (S.D. Tex.) and *In Re Virgin Mobile USA IPO Litig.* 2:07-cv-05619 (D.N.J.), and has been involved in cases that have successfully settled, including *In re U.S. Auto Parts Network, Inc. Sec. Litig.* CV 07-2030 (C.D. Cal.).

Prior to joining KSF, Ms. Clark's legal work experience included clerking at the San Francisco District Attorney's Office and externing for the Honorable Chief Judge Jerry Brown in the United States Bankruptcy Court, Eastern District of Louisiana and the Honorable Jay C. Zainey in the Eastern District of Louisiana.

Ms. Clark received her Juris Doctor from Tulane Law School in 2007. While at Tulane, Ms. Clark was president of her graduating class and of the Business Law Society, a chairperson for the Moot Court Board, and a Senior Fellow for Legal Research & Writing. In Fall 2006, Ms. Clark attended University of California – Berkeley where she received high honors in Securities & Class Action Litigation and was a Visiting Contributor to the *California Law Review*. She received her Bachelors of Science degree in International Affairs from Florida State University in 2004.

Ms. Clark was admitted to the State Bar of New York in 2008 and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York. She is also an active member of the New York State Bar Association and is a member of its Law, Youth & Citizenship Committee.

**Christopher W. Kaul**

Christopher Kaul focuses on federal securities class action and derivative litigation.  He is actively involved in cases pending before various federal courts across the United States, including *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, 09 MD 2058 (DC) (S.D.N.Y. 2009).

Mr. Kaul received his J.D. *cum laude* from Loyola New Orleans College of Law (2010). During law school, Mr. Kaul worked for KSF as a law clerk and served as the print editor

for the *Loyola Law and Technology Annual.*  He received a B.A. with a major in finance from Wayne State University in Detroit, Michigan.

Mr. Kaul is admitted to practice in Louisiana and is a member of the Louisiana State Bar Association. Mr. Kaul is admitted to practice before the United States Court of Appeals for the Fifth Circuit and the United States District Courts for the Eastern, Middle, and Western Districts of Louisiana.


## Melinda A. Nicholson

Melinda A. Nicholson's practice focuses on shareholder derivative and class action litigation.  She is actively involved in cases pending before various federal courts across the United States, including *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, 09 MD 2058 (DC) (S.D.N.Y. 2009).  Prior to joining the firm, Ms. Nicholson worked for defense firms in New York, handling complex commercial litigations and regulatory investigations involving a variety of legal issues, including fiduciary obligations, securities violations, contractual breaches, antitrust and insurance coverage.

Ms. Nicholson completed a joint B.A./J.D. program at Tulane University, receiving a B.A. in Political Science, with a concentration in American Politics and Policies and a minor in Economics, from Tulane in 2003 and a J.D. from Tulane in 2005.  While at Tulane Law School, Ms. Nicholson served as a Notes and Comments Managing Editor for the *Tulane Law Review*, which published her comment, *The Constitutional Right to Self-Representation: Proceeding Pro Se and the Requisite Scope of Inquiry When Waiving Right to Counsel*, 79 TUL. L. REV. 755 (2005).  She received numerous awards, including the Dean's Medal for attaining the highest grade point average during the third year, the George Dewey Nelson Memorial Award for attaining the highest grade point average in common law subjects throughout the three years of law study, and Order of the Coif. She graduated from the law school *summa cum laude* and ranked second in her class.

Ms. Nicholson is admitted to practice in Louisiana and New York, and before the United States District Court for the Eastern District of Louisiana.


## Geoffrey C. Rodriguez

Geoffrey Rodriguez focuses on class action and derivative litigation.  He is actively involved in cases pending before various federal courts across the United States.

Mr. Rodriguez received a B.A. *magna cum laude* with majors in economics, history, political science, philosophy, and political economy from Tulane University (2005), where he was a Dunbar Fellow and received departmental honors in history and political science.  In 2008, he received his J.D. from Georgetown University Law, where he was a Dean's Scholar.  As a member of the Law Center's Moot Court team, he competed in the European Tax College Moot Court Competition in 2007, and served as a coach in the same competition in 2008.

Mr. Rodriguez is admitted to practice in Louisiana and is a member of the Louisiana State Bar Association.

# EXHIBIT E



NEW YORK
LOS ANGELES
TAMPA
DETROIT

## THE FIRM'S PRACTICE AND ACHIEVEMENTS

Milberg LLP, founded in 1965, was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The Firm pioneered this type of litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. The Firm's practice focuses on the prosecution of class and complex actions in many fields of commercial litigation, including securities, corporate fiduciary, ERISA, consumer, insurance, antitrust, bankruptcy, mass tort, and human rights litigation. The Firm has offices in New York City, Los Angeles, Tampa, and Detroit.

In its early years, the Firm built a new area of legal practice in representing shareholder interests under the then recently amended Rule 23 of the Federal Rules of Civil Procedure, which allowed securities fraud cases, among others, to proceed as class actions. In the following decades, the Firm obtained decisions establishing important legal precedents in many of its areas of practice and prosecuted cases that set benchmarks in terms of case theories, organization, discovery, trial results, methods of settlement, and amounts recovered and distributed to clients and class members.

Important milestones in the Firm's early years include the Firm's involvement in the *U.S. Financial* litigation in the early 1970s, one of the earliest large class actions, which resulted in a $50 million recovery for purchasers of the securities of a failed real estate development company; the Ninth Circuit decision in *Blackie v. Barrack* in 1975, which established the fraud-on-the-market doctrine for securities fraud actions; the Firm's co-lead counsel position in the *In re Washington Public Power Supply System* ("*WPPSS*") *Securities Litigation*, a seminal securities fraud action in the 1980s in terms of complexity and amounts recovered; the representation of the Federal Deposit Insurance Corporation in a year-long trial to recover banking losses from a major accounting firm, leading to a precedent-setting global settlement; attacking the Drexel-Milken "daisy chain" of illicit junk-bond financing arrangements with numerous cases that resulted in substantial recoveries for investors; representing life insurance policyholders defrauded by "vanishing premium" and other improper sales tactics and obtaining large recoveries from industry participants; and ground-breaking roles in the multi-front attack on deception and other improper activities in the tobacco industry.

Milberg remains at the forefront in its areas of practice. Significant litigation results include: *In re Vivendi Universal, S.A. Securities Litigation* (estimated $9 billion judgment, claims procedure pending); *Tyco International Ltd. Securities Litigation* ($3.2 billion settlement); *Nortel Networks Litigation* (settlement for cash and stock valued at $1.142 billion); *Lucent Technologies Securities Litigation* ($600 million recovery); *Raytheon Co. Securities Litigation* ($460 million recovery); *Managed Care Litigation* (recoveries over $1 billion and major changes in HMO practices); the *WPPSS Securities Litigation* (settlements totaling $775 million), and the *NASDAQ Market-Makers Antitrust Litigation* ($1 billion in recoveries). Milberg has been responsible for recoveries valued at approximately $55 billion during the life of the Firm.

Milberg is consistently active in *pro bono* litigation, highlighted by its leadership role in the *Swiss Bank Litigation*, which led to the recovery of $1.25 billion from Swiss banks to benefit victims of the Holocaust, and the Firm's efforts representing claimants of the September 11 Victim Compensation Fund.

The Firm's lawyers come from many different professional backgrounds. They include former judges, professors, prosecutors, private defense attorneys, and government lawyers. The Firm's ability to pursue claims against defendants is augmented by its team of investigators, headed by a 27-year veteran of the Federal Bureau of Investigation, a full-time staff of forensic accountants and financial analysts, and an in-house litigation support department with data hosting capabilities, staffed by electronic discovery specialists.

For more information, please visit www.milberg.com.



## JUDICIAL COMMENDATIONS

Milberg has been commended by countless judges throughout the country for the quality of its representation.

Milberg partners played leading roles in representing class plaintiffs in the three-month jury trial in *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), which in January 2010 resulted in the largest verdict on record in that type of case (totaling as much as $9 billion; claims procedure pending). At the close of the trial, Judge Richard Holwell commented:

> I can only say that this is by far the best tried case that I have had in my time on the bench. I don't think either side could have tried the case better than these counsel have.

In approving a $3.2 billion securities fraud settlement, one of the largest in history, in *In re Tyco International, Ltd. Securities Litigation*, No. 02-1335 (D.N.H. Dec. 19, 2007), Judge Barbadoro lauded Milberg's efforts as co-lead counsel:

> This was an extraordinarily complex and hard-fought case. Co-Lead Counsel put massive resources and effort into the case for five long years, accumulating [millions of dollars in expenses] and expending [hundreds of thousands of hours] on a wholly contingent basis. But for Co-Lead Counsel's enormous expenditure of time, money, and effort, they would not have been able to negotiate an end result so favorable for the class. . . . Lead Counsel's continued, dogged effort over the past five years is a major reason for the magnitude of the recovery. . . .

In *Simon v. KPMG LLP*, No. 05-3189, 2006 U.S. Dist. LEXIS 35943, at *18, 30-31 (D.N.J. June 2, 2006), a case in which Milberg served as class counsel, Judge Cavanaugh, in approving the $153 million settlement, found that "Plaintiffs . . . retained highly competent and qualified attorneys" and that "[t]he Initial Complaint . . . demonstrates that [Milberg] expended considerable time and effort with the underlying factual and legal issues in this case before even filing this lawsuit. . . . Settlement discussions were conducted over a period of some fourteen months with the supervision and guidance of Judges Politan and Weinstein, and are evidence of [Milberg's] appreciation of the merits and complexity of this litigation."

In *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621, slip op. at 14-15, 26 (D.N.J. Feb. 24, 2004), Judge Pisano issued an opinion approving the $600 million settlement and complimenting Milberg's work as co-lead counsel for the class as follows:

> [T]he attorneys representing the Plaintiffs are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States. They are more than competent to conduct this action. Co-Lead Counsel diligently and aggressively represented the Plaintiffs before this Court and in the negotiations that resulted in the Settlement. . . . [T]he efforts and ingenuity of Lead Plaintiffs and Lead Counsel resulted in an extremely valuable Settlement for the Benefit of the Class.

In *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), Judge Dalzell commented on the skill and efficiency of the Milberg attorneys litigating this complex case:

> At the risk of belaboring the obvious, we pause to say a specific word about . . . the skill and efficiency of the attorneys involved. [Milberg was] extraordinarily deft and efficient in handling this most complex matter. [T]hey were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write-down of over $1.6 billion in previously reported Rite Aid earnings. . . . In short, it would be hard to equal the skill class counsel demonstrated here.



In *In re IKON Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 195 (E.D. Pa. 2000), Judge Katz commented on Milberg's skill and professionalism as one of plaintiffs' co-lead counsel:

> First, class counsel is of high caliber and has extensive experience in similar class action litigation. . . .  Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly. . . .

> Of particular note in assessing the quality of representation is the professionalism with which all parties comported themselves.  The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines.  This professionalism was also displayed in class counsel's willingness to cooperate with other counsel when appropriate. . . .  This cooperation enabled the parties to focus their disputes on the issues that mattered most and to avoid pointless bickering over more minor matters.

In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), in an opinion approving settlements totaling over $1.027 billion, Judge Sweet commented:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country.  It is difficult to conceive of better representation than the parties to this action achieved.

Judicial recognition of Milberg's excellence is not limited to courts within the United States.  In *In re Flag Telecom Holdings, Ltd. Securities Litigation*, No. 02-3400 (S.D.N.Y. 2009), Milberg litigated a discovery dispute before the English Royal High Court of Justice, Queens Bench Division, which recognized the Milberg attorney handling the matter as a "Grade A" lawyer and a "vital cog in the machine."  Likewise, in *Sharma v. Timminco Ltd.*, 09-378701 (Can. Ont. Sup. Ct. 2009), Canada's Ontario Superior Court of Justice recognized Milberg's "fine reputation and excellent credentials" in connection with Milberg's representation in a securities case pending in Canada.

Milberg has also been recognized for its commitment to public service.  In lauding Milberg's work representing victims of the September 11th attack on the World Trade Center in connection with the September 11 Victims Compensation Fund, Special Master Kenneth R. Feinberg stated the following:

> Once again, as I have learned over the years here in New York, the [Milberg] firm steps up to the plate in the public interest time and time again.  The social conscience of the [Milberg] firm, acting through its excellent associates and partners, help deal with crises that confront the American people and others, and I am personally in the debt of Milberg . . . for the work that it is doing . . . .  [T]hey are second among none in terms of the public interest, and I'm very, very grateful, not only to you guys for doing this, but . . . for the firm's willingness to help out.  I wanted to let everybody know that.

*In re September 11 Victim Compensation Fund*, Preliminary Hearing, Claim No. 212-003658 (Dec. 9, 2003).



# NOTEWORTHY RESULTS

The quality of Milberg's representation is further evidenced by the Firm's numerous significant recoveries, some of which are described below.

- In *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), Milberg lawyers were instrumental in obtaining a jury verdict for an international class of defrauded investors after a trial lasting nearly four months. The jury found Vivendi liable for 57 false or misleading class period statements. The claims procedure is pending and could potentially result in a judgment of up to $9 billion. The district court had previously certified a class of purchasers from the U.S., France, England, and the Netherlands. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76 (S.D.N.Y. 2007).

- *In re Initial Public Offering Securities Litigation*, No. 21-92 (S.D.N.Y.). Milberg represented investors in 310 consolidated securities actions arising from an alleged market manipulation scheme. Plaintiffs alleged, among other things, that approximately 55 defendant investment banks, in dealing with certain of their clients, conditioned certain allocations of shares in initial public offerings on the subsequent purchase of more shares in the aftermarket, thus artificially boosting the prices of the subject securities. This fraudulent scheme, plaintiffs alleged, was a major contributing factor in the now infamous technology "bubble" of the late 1990s and early 2000s. As a member of the court-appointed Plaintiffs' Executive Committee, and with certain partners appointed by the court as liaison counsel, Milberg oversaw the efforts of approximately 60 plaintiffs' firms in combating some of the most well-respected defense firms in the nation. In granting final approval to a $586 million settlement on October 5, 2009, the court described the law firms comprising the Plaintiffs' Executive Committee as the "cream of the crop."

- *Carlson v. Xerox*, No. 00-1621 (D. Conn). Milberg served as co-lead counsel in this lawsuit, which consolidated 21 related cases alleging violations of the federal securities laws. Plaintiffs alleged that Xerox and several of its top officers reported false financial results during the class period and failed to adhere to the standard accounting practices the company claimed to have followed. In the course of litigating plaintiffs' claims, Milberg engaged in arduous and exhaustive factual discovery, including review and analysis of more than four million pages of complex accounting and auditing documents and thousands of pages of SEC deposition transcripts. Plaintiffs' claims survived three motions to dismiss and a motion for summary judgment, ultimately resulting in a $750 million settlement, which received final approval on January 14, 2009.

- *In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.). Milberg served as co-lead counsel in this litigation, which involved claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel, and certain former directors arising out of allegations of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud. Plaintiffs also asserted claims under the 1933 and 1934 Acts against PricewaterhouseCoopers LLP for allegedly publishing false audit opinions on Tyco's financial statements during the class period and failing to audit Tyco properly, despite knowledge of the fraud. On December 19, 2007, the court approved a $3.2 billion settlement of the plaintiffs' claims and praised the work of co-lead counsel.

- *In re Sears, Roebuck & Co. Securities Litigation*, No. 02-7527 (N.D. Ill.). This case involved allegations that Sears concealed material adverse information concerning the financial condition, performance, and prospects of Sears' credit card operations, resulting in an artificially inflated stock price. The approved



settlement provided $215 million to compensate class members.

- *In re General Electric Co. ERISA Litigation*, No. 04-1398 (N.D.N.Y.).  This ERISA class action was brought on behalf of current and former participants and beneficiaries of the General Electric ("G.E.") 401(k) Plan.  Milberg, serving as co-lead counsel, achieved a $40 million settlement on behalf of current and former G.E. employees who claimed that the company's 401(k) Plan fiduciaries imprudently invested more than two-thirds of the Plan's assets in company stock.  The settlement included important structural changes to G.E.'s 401(k) plan valued at more than $100 million.

- *In re Biovail Corp. Securities Litigation*, No. 03-8917 (S.D.N.Y.).  Milberg, representing Local 282 Welfare Trust Fund and serving as co-lead counsel, litigated this complex securities class action brought on behalf of a class of defrauded investors, alleging that defendants made a series of materially false and misleading statements concerning Canadian company Biovail's publicly reported financial results and the company's then new hypertension/blood pressure drug, Cardizem LA.  This was a highly complex case in which counsel took numerous depositions across the U.S. and Canada and obtained documents from defendants and several third-parties, including, among others, UBS, McKinsey & Co., and Merrill Lynch.  Milberg obtained a $138 million settlement for the class, and Biovail agreed to institute significant corporate governance changes.

- *In re Nortel Networks Corp. Securities Litigation*, No. 01-1855 (S.D.N.Y.).  In this federal securities fraud class action, Milberg served as lead counsel for the class and the court-appointed lead plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund.  In certifying the class, the court specifically rejected the defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the class.  The Second Circuit denied the defendants' attempted appeal.  On January 29, 2007, the court approved a settlement valued at $1.142 billion.

- *In re American Express Financial Advisors Securities Litigation*, No. 04-1773 (S.D.N.Y.).  This case involved allegations that American Express Financial Advisors violated securities laws by representing to class members that the company would provide tailored financial advice, when the company actually provided "canned" financial plans and advice designed to steer clients into American Express and certain nonproprietary mutual funds.  The case settled for $100 million, with the settlement agreement requiring that the company institute remedial measures.

- *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621 (D.N.J.).  In this federal securities fraud action in which Milberg served as co-lead counsel, plaintiffs alleged, *inter alia*, that Lucent and its senior officers misrepresented the demand for Lucent's optical networking products and improperly recognized hundreds of millions of dollars in revenues.  The settlement provided compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

- *In re Raytheon Securities Litigation*, No. 99-12142 (D. Mass.).  This case, in which Milberg served as lead counsel, concerned claims that a major defense contractor failed to write down assets adequately on long term construction contracts.  In May 2004, Raytheon and its auditor, PricewaterhouseCoopers LLP, settled for a total of $460 million.

- In *In re Rite Aid Securities Litigation*, No. 99-1349 (E.D. Pa.), in which Milberg served as co-lead counsel, the plaintiffs asserted federal securities fraud claims arising out of allegations that Rite Aid failed to disclose material problems with its store expansion and modernization program, resulting in artificially inflated earnings.  Judge Dalzell approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million), and certain former executives of Rite Aid ($1.6 million).

- In *In re CMS Energy Corp. Securities Litigation*, No. 02-72004 (E.D. Mich.), a federal securities fraud case arising out of alleged round-trip trading practices by CMS Energy



NEW YORK
LOS ANGELES
TAMPA
DETROIT

Corporation, Judge Steeh approved a cash settlement of more than $200 million. Milberg served as co-lead counsel in this litigation.

- *In re Deutsche Telekom AG Securities Litigation*, No. 00-9475 (S.D.N.Y.). Milberg served as co-lead counsel in this securities class action alleging that Deutsche Telekom issued a false and misleading registration statement, which improperly failed to disclose its plans to acquire VoiceStream Wireless Corporation and materially overstated the value of the company's real estate assets. On June 14, 2005, Judge Buchwald approved a $120 million cash settlement.

- *In re CVS Corp. Securities Litigation*, No. 01-11464 (D. Mass). Milberg served as co-lead counsel in this class action alleging that defendants engaged in a series of accounting improprieties and issued false and misleading statements which artificially inflated the price of CVS stock. On September 7, 2005, Judge Tauro approved a $110 million cash settlement for shareholders who acquired CVS stock between February 6, 2001, and October 30, 2001.

- *Scheiner v. i2 Technologies, Inc.*, No. 01-418 (N.D. Tex.). Milberg served as lead counsel in this securities fraud case, filed on behalf of certain purchasers of i2 common stock. The plaintiffs alleged that certain of the company's senior executives made materially false and misleading statements and omissions in i2's public statements and other public documents regarding i2's software, thereby artificially inflating the price of i2's common stock. In May 2004, Milberg recovered a settlement of $84.85 million.

- *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.). This was an ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the companies' U.S. employee investment plan participants. Notably, the $90 million settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

- Milberg served as co-lead counsel in *Irvine v. ImClone Systems, Inc.*, No. 02-0109

(S.D.N.Y.), in which a $75 million cash settlement was approved by the court in July 2005. Plaintiffs alleged that ImClone issued a number of misrepresentations and fraudulent statements to the market regarding the likelihood of approval of the drug Erbitux, thereby artificially inflating the price of ImClone stock.

- In *In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)*, Nos. 02-2210 and 02-2211 (D. Del.), Milberg acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002, the last business day before trial was set to begin in the Sealed Air matter. The two settlements, which consisted of both cash and stock, were valued at approximately $1 billion.

- *Nelson v. Pacific Life Insurance Co.*, No. 03-131 (S.D. Ga.). Milberg served as lead counsel in this securities fraud class action arising from allegations of deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. The court approved a $60 million settlement of claims arising from such deception.

- The Firm was lead counsel in *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.), a landmark securities case that resulted in a recovery exceeding $4 billion for certain Prudential policyholders. The settlement was approved in a comprehensive Third Circuit decision.

- In *In re NASDAQ Market-Makers Antitrust Litigation*, No. 94-3996 (S.D.N.Y.), Milberg served as co-lead counsel for a class of investors. The class alleged that the NASDAQ



NEW YORK
LOS ANGELES
TAMPA
DETROIT

market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After more than three years of intense litigation, the case settled for a total of $1.027 billion, one of the largest antitrust settlements at that time.

- *In re Washington Public Power Supply System Securities Litigation*, MDL 551 (D. Ariz.) was a massive securities fraud litigation in which Milberg served as co-lead counsel for a class that obtained settlements totaling $775 million, the largest-ever securities fraud settlement at that time, after several months of trial.

- *In re Exxon Valdez*, No. 89-095 (D. Alaska) and *In re Exxon Valdez Oil Spill Litigation*, 3 AN-89-2533 (Alaska Sup. Ct. 3d Jud. Dist.). Milberg was a member of the Plaintiffs' Coordinating Committee and co-chair of the Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. Plaintiffs obtained a jury verdict of $5 billion, which, after years of appeals by Exxon, was reduced to approximately $500 million by the United States Supreme Court. Recently the United States Court of Appeals for the Ninth Circuit held that plaintiffs are entitled to post judgment interest on the award in the amount of approximately $470 million.

- In *In re Managed Care Litigation*, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare, valued in excess of $500 million, was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the court on November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal courts by physicians and medical associations against many of the nation's largest health insurers arising from allegations that the insurers engaged in a fraudulent scheme to systematically obstruct, reduce, delay, and deny payments and reimbursements to health care providers. These settlements brought sweeping changes to the health care industry and significant improvements to physician-related business practices.

- *In re Sunbeam Securities Litigation*, No. 98-8258 (S.D. Fla). Milberg acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The court approved a combined settlement of more than $140 million, including a $110 million settlement with Arthur Andersen LLP, Sunbeam's auditor. At that time, the Andersen settlement was one of the largest amounts ever paid by a public accounting firm to settle federal securities claims. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

- *In re Triton Energy Limited Securities Litigation*, No. 98-256 (E.D. Tex.). Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification, and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998. The case settled for $42 million.

- In *In re Thomas & Betts Securities Litigation*, No. 00-2127 (W.D. Tenn.), the plaintiffs, represented by Milberg as co-lead counsel, alleged that Thomas & Betts engaged in a series of accounting improprieties while publicly representing that its financial statements were in compliance with GAAP, and failed to disclose known trends and uncertainties regarding its internal control system and computer and information systems. The case settled for $46.5 million dollars in cash from the company and $4.65 in cash from its outside auditor, KPMG.

- *In re MTC Electronic Technologies Shareholder Litigation*, No. 93-0876 (E.D.N.Y.). Plaintiffs alleged that defendants issued false and misleading statements concerning, among other things, purported joint venture agreements to establish telecommunications systems and manufacture telecommunications equipment in China. The court approved a settlement of $70 million,



including $65 million in cash and $5 million worth of MTC Class A shares with "put" rights.

- In *In re PaineWebber Limited Partnerships Litigation*, No. 94-8547 (S.D.N.Y.). Milberg represented investors alleging that PaineWebber developed, marketed, and operated numerous investment partnerships as part of an ongoing conspiracy to defraud investors and enrich itself through excessive fees and commissions over a twelve-year period. On March 20, 1997, Judge Sidney Stein approved a $200 million settlement, consisting of $125 million in cash and $75 million worth of guarantees and fee waivers.

- In *Andrews v. AT&T*, No. 91-175 (S.D. Ga.) the Firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits. The class against AT&T was decertified on appeal and the Firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

In the context of shareholder derivative actions, Milberg has protected shareholder investments by effectuating important changes in corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

- In *In re Comverse Technology, Inc. Derivative Litigation*, No. 601272/2006 (N.Y. Sup. Ct. N.Y. Cty.). On December 28, 2009, Milberg announced a $62 million settlement for the derivative plaintiffs, which was approved by the Court on June 23, 2010. The settlement also resulted in significant corporate governance reforms, including the replacement of the offending directors and officers with new independent directors and officers; the

amendment of the company's bylaws to permit certain long-term substantial shareholders to propose, in the Company's own proxy materials, nominees for election as directors (proxy access); and the requirement that all equity grants be approved by both the Compensation Committee and a majority of the non-employee members of the Board.

- In *In re Topps Co., Inc. Shareholder Litig.*, No. 600715/2007 (N.Y. Sup. Ct. N.Y. Cty. Apr. 17, 2007). Milberg served as co-lead counsel in this transactional case, which led to a 2007 decision vindicating the rights of shareholders under the rules of comity and the doctrine of *forum non conveniens* to pursue claims in the most relevant forum, notwithstanding the fact that jurisdiction might also exist in the state of incorporation. This case was settled in late 2007 in exchange for a number of valuable disclosures for the class.

- In *In re Marketspan Corporate Shareholder Litigation*, No. 15884/98 (N.Y. Sup. Ct. Nassau Cty.). The settlement agreement in this derivative case required modifications of corporate governance structure, changes to the audit committee, and changes in compensation awards and to the nominating committee.

- In *In re Trump Hotels Shareholder Derivative Litigation*, No. 96-7820 (S.D.N.Y.). In this case, the plaintiff shareholders asserted various derivative claims on behalf of the company against certain Trump entities and senior Trump executives in connection with the self-serving sale of a failing casino to the company in which the plaintiffs held stock. Milberg negotiated a settlement on behalf of the plaintiffs that required Donald Trump to contribute a substantial portion of his personal interest in a pageant he co-owned. In addition, the settlement required the company to increase the number of directors on its board, and certain future transactions had to be reviewed by a special committee.



# PRECEDENT-SETTING DECISIONS

Milberg has consistently been a leader in developing the federal securities, antitrust, and consumer protection laws for the benefit of investors and consumers.  The Firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the country.  In most of those cases, Milberg has served as lead or co-lead counsel.  The Firm has also been responsible for establishing many important precedents, including the following:

- In *Merck & Co., Inc. v. Reynolds* (U.S. 2010), Milberg, along with other co-lead counsel, won a significant victory before the U.S. Supreme Court, which issued a decision addressing when an investor is placed on "inquiry notice" of a securities fraud violation sufficient to trigger the statute of limitations under 28 U.S.C. § 1658(b). The Court unanimously ruled that the two-year statute of limitations was not triggered because plaintiffs did not have actual or constructive knowledge of "the facts constituting the violation," and as such, the case was not time-barred.  Importantly, the Court held that the plaintiff must be on actual or constructive notice of facts concerning the defendants' scienter in order to trigger the statute of limitations.  This decision is significant in that it potentially enables plaintiffs to bring claims based on misstatements that are more than two years old.

- *In re Lord Abbett Mutual Funds Fee Litigation*, 553 F.3d 248 (3d Cir. 2009).  This important decision set significant precedent regarding the scope of preemption under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  In reversing the District Court's dismissal of the plaintiffs' claims, the Third Circuit held that "SLUSA does not mandate dismissal of an action in its entirety where the action includes only some pre-empted claims."  In so holding, the court explained that "nothing in the language, legislative history, or relevant case law mandates the dismissal of an entire action that includes both claims that do not offend SLUSA's prohibition on state law securities class actions and claims that do . . . ."

- *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 170 (2d Cir. 2009). In this matter, the plaintiffs, Nigerian children and their families, asserted claims under the Alien Tort Statute ("ATS") in connection with Pfizer's clinical trial of the drug, Trovan, without their knowledge. In January 2009, the Second Circuit reversed the District Court's dismissal for lack of jurisdiction.  The court held that plaintiffs pled facts sufficient to state a cause of action under the ATS for a violation of international law prohibiting medical experimentation on human subjects without their consent.  Pfizer's petition for review of the Second Circuit's ruling by the United States Supreme Court is currently pending.

- *In re Comverse Technology, Inc. Derivative Litigation*, 866 N.Y.S.2d 10 (App. Div. 1st Dep't 2008).  In this derivative case in which Milberg serves as co-lead counsel, plaintiff shareholders sued certain of the company's officers and directors based on allegations of illegal options backdating.  The lower court dismissed the plaintiffs' claims, holding that the plaintiffs failed to make a pre-suit demand on the company's board, and that in any event, the board had already formed a special committee to investigate the misconduct.  In this significant opinion reversing the lower court's dismissal, the Appellate Division clarified the standards of demand futility and held that a board of directors loses the protection of the business judgment rule where there is evidence of the directors' self-dealing and poor judgment.  The court noted that the mere creation of a special committee did not justify a stay of the action and did not demonstrate that the board took appropriate steps.  Rather, "the picture presented in the complaint is that of a special committee taking a tepid rather than a vigorous approach to the misconduct and the resultant harm. Under such circumstances, the board should not be provided with any special protection."

- *South Ferry LP #2 v. Killinger,* 542 F.3d 776 (9th Cir. 2008).  The important opinion issued by the Ninth Circuit in this securities fraud class action clarified, in the post-*Tellabs* environment, whether a theory of scienter based on the "core operations" inference satisfies the



PSLRA's heightened pleading standard. In siding with the plaintiffs, represented by Milberg, the Ninth Circuit held that "[a]llegations that rely on the core operations inference are among the allegations that may be considered in the complete PSLRA analysis." The court explained that under the "holistic" approach required by *Tellabs*, all allegations must be "read as a whole" in considering whether plaintiffs adequately plead scienter. After remand, the District Court found that the plaintiffs sufficiently alleged scienter under the Ninth Circuit's analysis.

- ***In re Gilead Sciences Securities Litigation***, 536 F.3d 1049 (9th Cir. 2008). In this securities fraud class action in which Milberg represents the plaintiffs, the Ninth Circuit reversed the District Court's dismissal of the complaint in this opinion clarifying loss causation pleading requirements. In ruling that the plaintiffs adequately pled loss causation, the Ninth Circuit held that the plaintiffs' complaint identified a "specific economic loss" following the issuance of a specific press release, along with allegations of misrepresentations that were described in "abundant detail." The opinion established that plaintiffs in a securities fraud action adequately plead loss causation where they provide sufficient detail of their loss causation theory and some assurance that the theory has a basis in fact. Based on this analysis, the dismissal was reversed, and the case was remanded to the District Court for further proceedings.

- In ***Tellabs, Inc. v. Makor Issues & Rights, Ltd.***, 551 U.S. 308 (2007), in which Milberg is lead counsel for the class, the United States Supreme Court announced a uniform standard for evaluating the sufficiency of a complaint under the PSLRA. The court held that on a motion to dismiss, a court "must consider the complaint in its entirety," accepting "all factual allegations in the complaint as true," as well as "tak[ing] into account plausible opposing inferences." On remand, the Seventh Circuit concluded that "the plaintiffs have succeeded, with regard to the statements identified in our previous opinion as having been adequately alleged to be false and material, in pleading scienter in conformity with the requirements of the PSLRA. We therefore

adhere to our decision to reverse the judgment of the district court dismissing the suit." The unanimous decision was written by Judge Richard A. Posner.

- ***Asher v. Baxter International, Inc.***, 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the District Court's dismissal, the Seventh Circuit resolved in plaintiffs' favor an important issue involving the PSLRA's "safe harbor" for forward-looking statements. The court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew when the statement was made as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

- ***Gebhardt v. ConAgra Foods, Inc.***, 335 F.3d 824 (8th Cir. 2003). This important decision strongly reaffirmed the principle that whether an undisclosed fact would have been material to investors cannot ordinarily be decided on a motion to dismiss. The Eighth Circuit, stressing that "[t]he question of materiality hinges on the particular circumstances of the company in question," observed that even relatively small errors in financial statements might be material if they concern areas of particular importance to investors and raise questions about management integrity.

- ***In re Cabletron Systems, Inc.***, 311 F.3d 11 (1st Cir. 2002). In this opinion, the First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The court also accepted the argument made by plaintiffs, represented by Milberg, that courts should consider the amount of discovery taken place prior to deciding a motion to dismiss, with a lack of discovery resulting in a correspondingly less stringent standard for pleading securities fraud claims with particularity.

- In ***Puckett v. Sony Music Entertainment***, No. 108802/98 (N.Y. Sup. Ct. N.Y. Cty. 2002), a class action was certified against Sony Music Entertainment on behalf of a class of recording artists who were parties to standard Sony recording or production agreements entered into during the class period. The complaint alleged



NEW YORK
LOS ANGELES
TAMPA
DETROIT

that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

- *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). The Firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the District Court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

- *In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999). Here, the plaintiffs, represented by Milberg, successfully argued that under the PSLRA, scienter is sufficiently pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. The Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

- In *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the District Court's ruling, which denied plaintiffs leave to amend to assert a cause of action against defendants for failing to disclose that the defendant Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the court's view, taken together and in

context, the Trust's representations would have misled a reasonable investor.

- In *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milbergs' position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

- *In re Salomon, Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). The Second Circuit affirmed the District Court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in District Court. Shortly thereafter, the case settled for $40 million.

- *Kamen v. Kemper Financial Services*, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand. Specifically, the Court held that "where a gap in the federal securities laws must be bridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate state law into federal common law unless the particular state law in question is inconsistent with the policies underlying the federal statute. . . . Because a futility exception to demand does not impede the regulatory objectives of the [Investment Company Act], a court that is entertaining a derivative action under that statute must apply the demand futility exception as it is defined by the law of the State of incorporation."

- *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir. 1984), *cert. denied*, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for Section 10(b) suits that are favorable to investors.

- *Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability

of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

- ***Fox v. Reich & Tang, Inc.***, 692 F.2d 250 (2d Cir. 1982), *aff'd sub nom*, ***Daily Income Fund, Inc. v. Fox***, 464 U.S. 523 (1984).  The court held that a Rule 23.1 demand is not required in a shareholder suit brought pursuant to Section 36(b) of the Investment Company Act.

- ***Rifkin v. Crow***, 574 F.2d 256 (5th Cir. 1978).  The Fifth Circuit reversed an order granting summary judgment for defendants in a Section 10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

- ***Blackie v. Barrack***, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).  This is the seminal appellate decision on the use of the "fraud-on-the-market" theory of reliance, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price.  In so holding, the court noted that class actions are necessary to protect the rights of defrauded purchasers of securities.

- ***Bershad v. McDonough***, 300 F. Supp. 1051 (N.D. Ill. 1969), *aff'd*, 428 F.2d 693 (7th Cir. 1970).  In this case, the plaintiff, represented by Milberg, obtained summary judgment on a claim for violation of Section 16(b) of the Securities Exchange Act, where the transaction at issue was structured by the defendants to look like a lawful option.  The decision has been cited frequently in discussions as to the scope and purpose of Section 16(b).

- ***Heit v. Weitzen***, 402 F.2d 909 (2d Cir. 1968).  The court held that liability under Section 10(b) of the Securities Exchange Act extends to defendants, such as auditors, who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.

**JEFF S. WESTERMAN** received his B.A. degree from Northwestern University in 1977, where he was selected to be a member of two senior honorary societies. He received his J.D. degree from the University of Pittsburgh in 1980, where he was a member of the Law Review.

Mr. Westerman's practice is primarily in the areas of securities fraud, consumer, and antitrust class actions, shareholder derivative actions, and corporate mergers and acquisitions litigation. He has served as lead or co-lead counsel in cases resulting in significant corporate governance changes, and resulting in recoveries and recognized increased value to plaintiffs totaling more than $800 million. In 2005, *The Daily Journal* recognized him as one of the top 30 securities litigators in California.

Mr. Westerman regularly serves as a moderator or speaker for programs on complex litigation, developments in class action practice, settlements, the Sarbanes-Oxley Corporate Responsibility Act, shareholder derivative actions, and trends in business litigation.

Mr. Westerman was a member (2001-2003) and Co-Chair (2002-2003) of the Central District of California Attorney Delegation to the United States Ninth Circuit Judicial Conference. He serves on the Central District of California, U.S. Magistrate Judge Merit Selection Panel (2003-present) and the standing committee on Attorney Discipline (2004-present). He is also a member of the Central District of California Attorney Settlement Officer Panel (1998-present).

Mr. Westerman was the president of the Association of Business Trial Lawyers (2004-2005); a member of the Board of Governors (1997-2005), Treasurer (2001-2002), Secretary (2002-2003), and Vice President (2003-2004). He is also on the Board of Governors of the Consumer Attorneys Association of Los Angeles (2003-present).

Mr. Westerman is the Secretary of the Los Angeles County Bar Executive Committee for the Litigation Section, a member of the Bench-Bar Civil Courts Committee, and a member of the Board of the Los Angeles Chapter of the Federal Bar Association. He is also past Chair of the LA County Bar Complex Courts Bench-Bar Committee, and he served as Judge Pro Tem in the Los Angeles Small Claims Court in 1987-1988, 1990, 1992-1993, and 1996-1997. He is a member of the Los Angeles County and Federal Bar Associations. He was on the California State Bar Task Force on Complex Litigation, and Chair of the Judicial Education Subcommittee (1997). He is one of *Lawdragon's* 3000 Leading Plaintiffs' Lawyers In America (2007- 2010).

Mr. Westerman is admitted to practice in the courts of the State of California, as well as the United States District Courts in California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.