ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
RYAN A. LLORENS (225196)
BRIAN O. O'MARA (229737)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
ryanl@rgrdlaw.com
bomara@rgrdlaw.com

SAXENA WHITE P.A.
JOSEPH E. WHITE
LESTER R. HOOKER
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Telephone: 561/394-3399
561/394-3382 (fax)

[Proposed] Co-Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SUSAN HUFNAGLE, Individually and on Behalf of All Others Similarly Situated,<br><br>                      Plaintiff,<br><br>  vs.<br><br>RINO INTERNATIONAL CORPORATION, et al.,<br><br>                      Defendants. | No. 2:10-cv-08695-VBF(VBKx)<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL<br><br>DATE:    February 14, 2011<br>TIME:    1:30 p.m.<br>CTRM:  9<br>JUDGE:  Hon. Valerie Baker Fairbank |

593651_1

Class members Giuliano and Adriana Biondi Lazzeretti and Regulos Davila respectfully submit this memorandum in support of their motion for: (i) consolidation; (ii) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (iii) approval of their selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Saxena White P.A. ("Saxena White") as co-lead counsel for the class.

## I. INTRODUCTION

There are six securities class action lawsuits (the "Related Actions") pending in this Court on behalf of all purchasers of RINO International Corporation ("RINO" or the "Company") securities between May 15, 2008 through November 17, 2010 (the "Class Period") against RINO and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act"):

| Case | Date Filed |
|---|---|
| *Hufnagle v. RINO Int'l Corp.*, No. 10-8695 | Nov. 12, 2010 |
| *Baig v. RINO Int'l Corp.*, No. 10-1754 | Nov. 15, 2010 |
| *Stevens v. RINO Int'l Corp.*, No. 10-9011 | Nov. 22, 2010 |
| *Zhang v. RINO Int'l Corp.*, No. 10-1887 | Dec. 10, 2010 |
| *Chau v. RINO Int'l Corp.*, No. 10-9517 | Dec. 10, 2010 |
| *Vu v. RINO Int'l Corp.*, No. 10-1908 | Dec. 15, 2010 |

The PSLRA requires district courts to resolve consolidation prior to appointing a lead plaintiff in securities cases such as this.  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  Here, the Related Actions should be consolidated because they each involve substantially similar issues of law and fact.  *See* Fed. R. Civ. P. 42(a).

Pursuant to the PSLRA, and as soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions."  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be

- 1 -

most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The Lazzerettis and Mr. Davila should be appointed lead plaintiff because they: (1) timely filed their motion; (2) to their counsel's knowledge, have the largest financial interest in the relief sought by the class; and (3) will fairly and adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the Lazzerettis and Mr. Davila's selection of Robbins Geller and Saxena White as co-lead counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II. STATEMENT OF FACTS

RINO is engaged in the business of designing, manufacturing, installing and servicing wastewater treatment and flue gas desulphurization equipment for use in China's iron and steel industry and anti-oxidation products and equipment designed for use in the manufacture of hot rolled steel plate products. The complaint alleges that defendants issued materially false and misleading statements regarding the Company's business practices and financial results during the Class Period. Specifically, defendants failed to disclose that the Company's financial results were grossly inflated and were inconsistent with results reported by RINO to tax authorities. As a result of defendants' false statements, RINO stock traded at artificially inflated prices during the Class Period, reaching a high of $34.25 per share on November 30, 2009. As a further result of this inflation, RINO was able to consummate a registered direct offering of nearly 3.3 million shares of its common stock at $30.75 per share in December 2009.

On November 10, 2010, Muddy Waters, LLC ("Muddy Waters"), a small research firm, posted an unfavorable report about RINO's business practices, claiming that the Company is a sham that had been engaged in activities ranging from vastly inflating revenue to fabricating customer relationships and allowing its management to use company money to buy a luxury home in Orange County, California. Additionally, Muddy Waters reported a sizeable discrepancy between the Company's

1  revenue of $192.6 million reported in its fiscal 2009 Form 10-K filed with the SEC
2  and its revenue of $11 million reported in its annual report for fiscal 2009 filed with
3  the China State Administration of Industry and Commerce. After this news, RINO's
4  stock dropped more than 15% in a single day on high volume.

5        Then, on November 15, 2010, before the market opened, RINO announced
6  extremely disappointing third quarter 2010 results with revenues of $52.7 million and
7  net income of $8.8 million, just over half the net income reported on the prior year.
8  RINO also reduced its revenue forecast for 2010 from $221-$229 million to $203-
9  $211 million. Even worse was the lack of a credible defense to the Muddy Waters
10 allegations. In fact, analysts said their own analyses were in line with the findings of
11 Muddy Waters. On this news, RINO's stock declined to $7.55 per share on volume of
12 7.7 million shares.

13       The true facts, which were known by defendants but concealed from the
14 investing public during the Class Period, were that RINO's financial results reported
15 to the SEC and investors were inconsistent with amounts reported to Chinese tax
16 authorities; and that RINO's reported financial statements were grossly inflated by
17 including revenue it had not earned. As a result of defendants' false statements and
18 omissions, RINO's common stock traded at artificially inflated prices during the Class
19 Period. Once the truth was revealed, the artificial inflation began to leak out and the
20 Company's stock declined nearly 77% from their Class Period high of $34.25, causing
21 significant damage to the class of RINO investors.

22 **III.   ARGUMENT**

23     **A.   The Actions Should Be Consolidated**

24 When "actions before the court involve a common question of law or fact, the
25 court may . . . consolidate the actions." Fed. R. Civ. P. 42(a). Here, the six Related
26 Actions allege claims on behalf of purchasers of RINO securities for violations of the
27 Exchange Act during the Class Period. The defendants, Class Periods, factual
28 allegations, and claims are nearly identical. As such, "[c]onsolidating these cases for

- 3 -

593651_1

all purposes will be the most efficient solution for the court, and will ease the litigation burden on all parties involved." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999).

### B. The Lazzerettis and Mr. Davila Should Be Appointed Lead Plaintiff

The PSLRA establishes a procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than twenty days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); *see also In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). The Lazzerettis and Mr. Davila meet each of these requirements and should therefore be appointed as lead plaintiff.

#### 1. The Lazzerettis and Mr. Davila Have Timely Filed Their Motion

The November 15, 2010, notice published in this action advised class members of the action's pendency, the alleged claims, the proposed class period, and the option of moving the Court to be appointed as lead plaintiff within 60 days of November 15, 2010, or January 14, 2011. *See* Declaration of Brian O'Mara in Support of Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Counsel

- 4 -

593651_1

("O'Mara Decl."), Ex. A.  This Motion is therefore timely filed and the Lazzerettis and Mr. Davila are entitled to be considered for appointment as lead plaintiff.

### 2. The Lazzerettis and Mr. Davila Possess the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Lazzerettis and Mr. Davila lost approximately $525,162 as a result of defendants' misconduct.  *See* O'Mara Decl., Exs. B, C.  To the best of their counsels' knowledge, there are no other applicants seeking appointment as lead plaintiff who have a larger financial interest.  As such, the Lazzerettis and Mr. Davila satisfy the PSLRA's largest financial interest requirement.

### 3. The Lazzerettis and Mr. Davila Satisfy Rule 23 of the Federal Rules of Civil Procedure

In addition to having the largest financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(3)-(4); *Cavanaugh*, 306 F.3d at 730 (focusing "in particular" on typicality and adequacy at the lead plaintiff stage).  The test of typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).  The adequacy requirement is met if no conflicts exist between the representative and class interests and the representative's attorneys are qualified, experienced and generally able to conduct the litigation.  Fed. R. Civ. P. 23(a)(4); *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003).  The Lazzerettis and Mr. Davila satisfy these requirements at this stage of the litigation.

The Lazzerettis and Mr. Davila have submitted sworn certifications confirming their desire, willingness and ability to serve as lead plaintiff.[1]  *See* O'Mara Decl., Ex. B.  Like all class members, the Lazzerettis and Mr. Davila purchased RINO stock during the Class Period at allegedly inflated prices and suffered damages as a result. *See* O'Mara Decl., Ex. C.  The Lazzerettis and Mr. Davila's $525,162 loss further indicates that they have the incentive to represent the claims of the class vigorously. *Id.*  Moreover, the Lazzerettis and Mr. Davila are not subject to unique defenses and are not aware of any conflicts between their claims and those asserted by the class. Finally, as discussed below, the Lazzerettis and Mr. Davila selected qualified counsel experienced in securities litigation.

The Lazzerettis and Mr. Davila's common interests shared with the class, their significant losses suffered and their selection of qualified counsel demonstrates their satisfaction of the Rule 23 requirements at this stage.

### C. The Court Should Approve the Lazzerettis and Mr. Davila's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also Cavanaugh*, 306 F.3d at 732-33; *Cohen v. United States Dist. Ct. for the N. Dist.*, 586 F.3d 703 (9th Cir. 2009).  The Lazzerettis and Mr. Davila selected Robbins Geller and Saxena White as their counsel in this case.

Robbins Geller, a 175-lawyer firm with offices nationwide, is actively engaged in complex litigation, particularly securities litigation.  *See* O'Mara Decl., Ex. D. District courts throughout the country, including this Court, have noted Robbins

---

[1] The Lazzerettis and Mr. Davila communicated prior to making the instant motion, deciding to make this Motion jointly.

- 6 -

593651_1

1 Geller's reputation for excellence, which has resulted in the appointment of Robbins
2 Geller attorneys to lead roles in hundreds of complex class action securities cases.
3 *See, e.g., In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 636 (C.D. Cal. 2009) (Carney,
4 J.) (noting that it was "undisputable" that Robbins Geller lawyers have "extensive
5 experience prosecuting suits of this nature"); *In re Enron Corp. Sec.*, 586 F. Supp. 2d
6 732, 797 (S.D. Tex. 2008) (Harmon, J.) (commenting that the "experience, ability, and
7 reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most
8 successful law firms in securities class actions, if not the preeminent one, in the
9 country").

10      Saxena White also has extensive experience in successfully prosecuting
11 complex litigation and is lead or co-lead counsel in major securities class and
12 derivative actions nationwide. *See* O'Mara Decl., Ex. E.  Indeed, courts throughout
13 the country have recognized Saxena White's efforts in investor-related litigations
14 resulting in significant monetary benefits and corporate governance reforms for
15 aggrieved shareholders. *See, e.g.*, *In re Merrill Lynch & Co.. Inc. Sec., Derivative &*
16 *ERISA Litig.*, No. 4:07 Civ. 9633 (JSR) (S.D.N.Y. 2009) (noting Saxena White and
17 co-lead counsel had performed "excellent work" in this "important case" on behalf of
18 Merrill Lynch and its shareholders worldwide); *In re Freidman's Sec. Litig.*, No. 1:03-
19 CV-3475-WSD (N.D. Ga. 2009) (noting Saxena White's lawyers act with "dignity
20 and respect," produce "well-done pleadings," are "thorough [and] insightful," and
21 "fight[] as hard but as honestly and professionally as they can for the interest of their
22 clients").  Moreover, Saxena White and Robbins Geller have previously worked
23 together as co-lead counsel in the successful prosecution of cases just like this one.
24 *See, e.g.*, *Grand Lodge of Pa. Peters*, No. 8:07-cv-479-T-26EAJ (M.D. Fla. 2009)
25 (Saxena White and Robbins Geller, serving as co-lead counsel, prosecuted a securities
26 fraud class action that resulted in a total settlement of $6,349,000, representing 25.3%
27 of plaintiffs' expert's estimate of $25 million in total damages).
28

593651_1

As such, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber of legal representation available from Robbins Geller and Saxena White. Accordingly, the Lazzerettis and Mr. Davila's selection of counsel should be approved.

## IV. CONCLUSION

The six Related Actions before the Court are virtually identical and should be consolidated. In addition, the Lazzerettis and Mr. Davila have satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, the Lazzerettis and Mr. Davila respectfully request that the Court appoint them Lead Plaintiff, approve their selection of counsel and grant such other relief as the Court may deem just and proper.

DATED: January 14, 2011

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
RYAN A. LLORENS
BRIAN O. O'MARA

s/BRIAN O. O'MARA
BRIAN O. O'MARA

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

SAXENA WHITE P.A.
JOSEPH E. WHITE
LESTER R. HOOKER
2424 N. Federal Highway, Suite 257
Boca Raton, FL  33431
Telephone:  561/394-3399
561/394-3382 (fax)

[Proposed] Co-Lead Counsel for Plaintiff

593651_1

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 14, 2011.

    s/ BRIAN O. O'MARA
BRIAN O. O'MARA

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:    bomara@rgrdlaw.com

593651_1

# Mailing Information for a Case 2:10-cv-08695-VBF -VBK

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Emily V Griffen**
  egriffen@shearman.com,rcheatham@shearman.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Phillip Kim
The Rosen Law Firm PA
275 Madison Avenue  34th Floor
New York, NY 10016
```