Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Lee M. Gordon (174168)
HAGENS BERMAN SOBOL SHAPIRO LLP
700 South Flower Street, Suite 2940
Los Angeles, CA  90017
Telephone:  (213) 330-7150
Facsimile:   (213) 330-7152
lee@hbsslaw.com

Counsel for Movants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SUSAN HUFNAGLE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RINO INTERNATIONAL CORPORATION, DEJUN ZOU, JENNY LIU, BEN WANG, LI YU, KENNITH C. JOHNSON, JIANPING QIU, XIE QUAN, and ZEJIN LI, <br><br> Defendants. | No. CV10-8695 VBF (VBKx) <br><br> Date:  February 14, 2011 <br> Time:  1:30 p.m. <br> Courtroom:  9 <br> Judge:  Hon. Valerie Baker Fairbank |

010220-11  420757 V1

1

2   BRENDA CHAU, Individually and on )   No. 2:10-cv-09517-VBF -VBK
    Behalf of All Others Similarly Situated, )

3                                    )
                     Plaintiff, )

4        v.                          )

5   RINO INTERNATIONAL              )
    CORPORATION et al.,              )

6                                    )
                     Defendants. )

7   _____ )

8   LI BAIG, Individually and on Behalf of )   No. 8:10-cv-01754-VBF -VBK
    All Others Similarly Situated,   )

9                                    )
                     Plaintiff, )

10       v.                          )

11  RINO INTERNATIONAL              )
    CORPORATION, DEJUN ZOU, BEN     )

12  WAN, YI LIU a/k/a JENNY LIU, and )
    YU LI,                          )

13                                   )
                     Defendants. )

14  _____ )

15  ALAN STEVENS, Individually and on )   No. 2:10-cv-09011-VBF -VBK
    Behalf of All Others Similarly Situated, )

16                                   )
                     Plaintiff, )

17       v.                          )

18  RINO INTERNATIONAL              )
    CORPORATION, et al.,             )

19                                   )
                     Defendants. )

20  _____ )

21  XI ZHANG, Individually and on Behalf )   No. 8:10-cv-01887-VBF -VBK
    of All Others Similarly Situated, )

22                                   )
                     Plaintiff, )

23       v.                          )

24  RINO INTERNATIONAL              )
    CORPORATION, KENNITH C.          )

25  JOHNSON, ZEJIN LI, JENNY LIU,    )
    JIANPING QIU, XIE QUAN, BEN      )

26  WANG, LI YU, WEIGUO ZHANG, and )
    DEJUN ZOU,                       )

27                                   )
                     Defendants. )

28

1

2     PAUL H VU, Individually and on Behalf )   No. 8:10-cv-01908-VBF -VBK
   of All Others Similarly Situated, )

3                              Plaintiff, )

4         v. )

5     RINO INTERNATIONAL )
   CORPORATION, et al., )

6                        Defendants. )

7

8  **RINO SHAREHOLDER GROUP'S MEMORANDUM IN FURTHER**
**SUPPORT OF ITS MOTION FOR CONSOLIDATION, APPOINTMENT AS**

9  **LEAD PLAINTIFF AND APPROVAL OF PROPOSED LEAD COUNSEL**
**AND IN OPPOSITION TO COMPETING MOTIONS**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

I.   PRELIMINARY STATEMENT .................................................................. 1

   A.   Procedural History ........................................................................ 1

   B.   Factual Background ...................................................................... 3

II.   ARGUMENT ......................................................................................... 4

   A.   RINO Shareholder Group Has the Largest Financial Interest In the Relief Sought By the Class of Any Movant Who Also Satisfies Rule 23 .................................................................... 4

      1.   Only The Movants' Recoverable Losses are Relevant to The Evaluation of Which Movant Has the Largest Financial Interest In the Relief Sought By The Class ................. 5

      2.   Stream SICAV May Lack Standing and Fails to Satisfy Rule 23 ..................................................................... 8

      3.   BIG and RINO Investor Group Appear to be Lawyer Driven Groups Disfavored Under the PSLRA ............................ 11

   B.   RINO Shareholder Group Is an Appropriate Lead Plaintiff Group............................................................................. 13

   C.   The Remaining Movants' Losses are Dwarfed By the RINO Shareholder Group and Several of the Movants Cannot Satisfy Rule 23 ............................................................................ 16

      1.   Rosalina Lim and Phisman Investments LLC Are Subject to Unique Defenses .................................................. 17

      2.   Guerilla Partners L.P and Hua-Mei 21st Century Partners, L.P. Are Subject to Unique Defenses ......................... 17

III.   CONCLUSION ..................................................................... 18

- i -

010220-11  420757 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apple v. LJ Int'l, Inc.,*
  No. CV07-6076 (GAF), 2008 U.S. Dist. LEXIS 12618
  (C.D. Cal. Feb. 8, 2008) ...................................................................11

*Dura Pharms., Inc. v. Broudo,*
  544 U.S. 336 (2005) ................................................................6, 7, 10

*Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v.
  Anchor Cap. Advisors,* 498 F.3d 920 (9th Cir. 2007) ..........................8

*In re Cavanaugh,*
  306 F.3d 726 (9th Cir. 2002) .....................................................4, 5, 6

*In re Charles Schwab Sec. Litig.,*
  No. 08-1510 WHA, 2008 U.S. Dist. LEXIS 116650
  (N.D. Cal. July 3, 2008) ....................................................................13

*In re Imax Secs. Litig.,*
  No. 06-cv-612S (NRB), 2009 U.S. Dist. LEXIS 58219
  (S.D.N.Y. June 29, 2009) ....................................................................8

*In re Network Assocs. Sec. Litig.,*
  76 F. Supp. 2d 1017 (N.D. Cal. 1999).......................................*passim*

*In re Verifone Holdings, Inc. Sec. Litig.*
  No. 07-cv-6140, 2008 U.S. Dist. LEXIS 64633
  (N.D. Cal. Aug. 22, 2008) ...................................................................7

*Morrison v. National Austl. Bank Ltd.,*
  130 S. Ct. 2869 (2010)...................................................................9, 10

*Schriver v. Impac Mortg. Holdings, Inc.,*
  No. SACV 06-31 CJC, 2006 U.S. Dist. LEXIS 40607
  (C.D. Cal. May 1, 2006) ......................................................................5

*Tanne v. Autobytel, Inc.,*
  226 F.R.D. 659 (C.D. Cal. 2005)..........................................................4

*W. R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP,*
    549 F.3d 100 (2d Cir. 2008) ............................................................8, 17

**STATUTES**

15 U.S.C. § 78u-4 ....................................................................................4

15 U.S.C. § 78u-4(a)(1)-(3)(b)(iii)(I) ......................................................5

15 U.S.C. § 78u-4(a)(3)(B).......................................................................4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)..........................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### MEMORANDUM OF POINTS AND AUTHORITIES

Felix Chan, Alejandro Moreno, Anupam and Gaytri Khandelwal, Timothy Sean Sutherland and Patrick Stayner (collectively the "RINO Shareholder Group") respectfully submit this memorandum in further support of their motion:  (1) to consolidate the above-captioned related cases; (2) to be appointed as Lead Plaintiff, pursuant to Section 21D(A)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (3) for approval of their selection of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Lead Counsel for the Class and in opposition to the competing motions.

The RINO Shareholder Group contends that it has suffered the largest losses of any movant who *also* satisfies the requirements of Federal Rule of Civil Procedure 23 and, therefore, respectfully requests that this Court grant its motion and deny the competing motions.

### I.     PRELIMINARY STATEMENT

**A.     Procedural History**

Currently pending before this Court are six class action cases (the "Actions") brought on behalf of all persons who purchased securities of RINO International Corporation ("RINO" or the "Company"), between May 15, 2008, and November 19, 2010 (the "Class Period").  In each related case, the plaintiff alleges

- 1 -

that RINO and certain of its officers violated the federal securities laws.  The Actions filed in this district are captioned:

| Case Name | Case Number | Date Filed |
| --- | --- | --- |
| *Hufnagle v. RINO Int'l Corp., et al.* | CV10-8695 VBF | November 12, 2010 |
| *Baig v. RINO Int'l Corp., et al.* | SACV 10-1754 VBF | November 15, 2010 |
| *Stevens v. RINO Int'l Corp., et al.* | CV10-9011  VBF | November 22, 2010 |
| *Zhang v. RINO Int'l Corp., et al.* | CV10-1887 VBF | December 10, 2010 |
| *Chau v. RINO Int'l Corp., et al.* | CV10-9517 VBF | December 10, 2010 |
| *Vu v. RINO Int'l Corp., et al.* | CV10-1908 VBF | December 15, 2010 |

On January 14, eleven motions seeking to consolidate the Actions, appoint Lead Plaintiff and approve Lead Plaintiffs' selection of Lead Counsel were filed in the lead case, *Hufnagle v. RINO International, Corp.*, Case No. CV10-8695 VBF. The competing motions are all set for hearing on February 14, 2011, at 1:30 p.m. before this Court, and all request that the cases be consolidated, the Court appoint Lead Plaintiff and approve Lead Plaintiffs' selection of Lead Counsel.  The competing Movants and their alleged losses are depicted below:

| Movant | Group Members | Losses Alleged |
| --- | --- | --- |
| RINO Shareholder Group | Felix Chan, Alejandro Moreno, Anupam and Gaytri Khandelwal, Timothy Sean Sutherland, Patrick Stayner | $1,021,752.61 (Based on Retained Shares) |
| Rosalina Lim | Rosalina Lim and Phisman Investments LLC | $27, 233.79 |
| Anupam Sarkar | | $14,450.07[1] |
| Zheming Ruan | | $70,600 |

---

[1] Mr. Sarkar withdrew his motion on January 18, 2011.  *See* Dkt. No. 41.

| Frank Botta | | $280,900 |
|---|---|---|
| James Blackwood-Murray | | $305,000 |
| Guiliano Lazzeretti, Adriana Lazzeretti, Regulous Davila | Guiliano Lazzeretti, Adriana Lazzeretti, Regulous Davila | $525,162 |
| Guerrilla and Hua-Mei Partnerships | Guerrilla Partners L.P. and Hua-Mei 21st Century Partners, L.P | $455,891 |
| Stream SICAV | | $2,021,717.51 |
| RINO Investor Group | Anna Hassenplug, Roman Shteynshlyuger, Pierce Gore, James Graham and , Diane Araiche | $1,317,217.78 |
| Bourouis Investor Group ("BIG") | Mohammed Bourouis, Kent Steels, Sherry Spooner, Richard Spooner, Mike Darouvor | $1,286,304.53 (Based on Retained Shares) |

For the reasons set forth below, the RINO Shareholder Group respectfully requests that the Court grant its motion and deny the competing motions.  The RINO Shareholder Group has the largest financial interest in the relief sought by the class and it satisfies the requirements of Rule 23.

**B.    Factual Background**

The Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act as amended by the PSLRA (15 U.S.C. §§ 78(j)(b) and 78(t)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), against RINO and certain of its executive officers.

- 3 -

In response, the RINO Shareholder Group filed a timely motion asking to serve as Lead Plaintiff on behalf of the class.[2]  The motion demonstrates that the RINO Shareholder Group has the willingness, resources and expertise to obtain excellent results for the class.  The RINO Shareholder Group also demonstrates its losses and articulates how it satisfies the requirements of Rule 23.[3]  Consequently, this Court should grant the RINO Shareholder Group's motion and deny the competing motions.

## II.    ARGUMENT

### A.    RINO Shareholder Group Has the Largest Financial Interest In the Relief Sought By the Class of Any Movant Who Also Satisfies Rule 23

The PSLRA governs the selection of Lead Plaintiff in class actions brought under the federal securities laws.  *See* 15 U.S.C. § 78u-4; *see also Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 664-65 (C.D. Cal. 2005).  The Ninth Circuit has commented that the PSLRA provides a "simple three-step process for identifying the lead plaintiff pursuant" to the criteria outlined in the PSLRA.  *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  The PSLRA provides that the investor with "the largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure" is presumed to

---

[2] *See* Motion of the RINO Shareholder Group for Consolidation, Appointment as Lead Plaintiff and Approval of Proposed Lead Counsel ("RINO Mot."), Dkt. No. 16, filed January 14, 2011.

[3] *See* Declaration of Peter E. Borkon in Support of the Motion of the RINO Shareholder Group for Consolidation, Appointment as Lead Plaintiff and Approval of Proposed Lead Counsel ("Borkon Decl."), Dkt. No. 17, filed January 14, 2011.

010220-11 420757 V1

be the most adequate investor to serve as lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(1)-(3)(b)(iii)(I); *In re Cavanaugh,* 306 F.3d at n.2 and 730.  If the investor with the largest losses does not satisfy Rule 23, the Court must then examine the plaintiff with the next largest loss to determine whether it is typical and adequate.  *In re Cavanaugh*, 306 F.3d at 732; *see also Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC, 2006 U.S. Dist. LEXIS 40607, at *25-27 (C.D. Cal. May 1, 2006) (rejecting the movants with the first and second largest loss due to inadequacy before selecting as lead plaintiff the movant with the third largest loss).

Assuming for the purposes of argument that the losses submitted accurately reflect the financial interests of the competing movants, the RINO Shareholder Group's $1,021,752.61 losses are the fourth largest financial interest asserted by the competing movants.  For the reasons articulated below, Stream SICAV's loss calculations do not accurately reflect its interest in the relief sought by the class.  Furthermore, neither Stream SICAV, RINO Investor Group nor Bourouis Investment Group (referred to hereinafter as "BIG") can satisfy the requirements of the PSLRA.  Accordingly, RINO Shareholder Group is the appropriate Lead Plaintiff.

### 1. Only The Movants' Recoverable Losses are Relevant to The Evaluation of Which Movant Has the Largest Financial Interest In the Relief Sought By The Class

Neither the Ninth Circuit nor the PSLRA establish a standard for calculating which investor has the "largest financial interest" in the relief sought by the class.  *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *13-15.  Because the PSLRA is silent on

how to assess the financial interests of competing movants, "the court may select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4.

Recently, courts charged with evaluating competing movants' financial interest have adopted an analysis that reflects the Supreme Court's holding in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). In *Dura*, the Court held that a plaintiff cannot prevail if all they do is establish the price on the date of purchase was inflated due to fraudulent conduct because "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." *Id*. at 342. No losses are incurred at the time of purchase; losses are incurred at the sale of a security. Thus, if an investor purchases stock before the fraud occurs and sells after the fraud occurs (but before the truth is revealed), the investor cannot have been harmed by the fraud. Similarly, if an investor buys and sells the stock after the fraud occurs and before the truth is revealed, fluctuations in stock price cannot be attributed to the fraud. *Id*. at 342-343. In *Cavanaugh*, the court reasoned that the evaluation of financial interest focuses on which movant "has the most to gain from the lawsuit." 306 F.3d at 730. Although a precise determination is not possible at this stage of the litigation, courts regularly equate "largest financial interest" with the amount of potential recovery. *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999). As one court explained "[w]hen calculating the greatest financial interest, the court adopts the retained share methodology, which

- 6 -

primarily looks to shares bought during the class period that are retained at the end of the class period.…  Indeed, it is difficult, if not impossible, to demonstrate loss causation for shares bought and sold before the disclosure of the misstatements or omissions." *In re Verifone Holdings, Inc. Sec. Litig.*, No. 07-cv-6140, 2008 U.S. Dist. LEXIS 64633, at *10, 12 (N.D. Cal. Aug. 22, 2008).

Applying this *Dura* based analysis to Stream SICAV, Stream SICAV held zero shares at the end of the Period.  Stream SICAV's Certification and Loss Chart demonstrate clearly that Stream SICAV sold all of its holdings in RINO on or before September 7, 2010.[4]  In all six related complaints filed before this Court, the earliest revelation of any wrongdoing was November 10, 2010.  In other words, Stream SICAV sold all its shares of RINO long before the truth was revealed.  Therefore, pursuant to *Dura*, Stream SICAV is unlikely to be able to establish loss causation because Stream SICAV bought and sold before the disclosure of the misstatements or omissions.  Accordingly, Stream SICAV's assertion that it suffered losses in excess of $2 million grossly misrepresents Stream SICAV's interest in the financial relief sought by the class.  Indeed, given that Stream SICAV bought and sold shares of RINO prior to the revelation of RINO's wrongdoing, Stream SICAV is unlikely to have suffered any causally related losses at all.  *See Dura*, 544 U.S. at 342-343.

---

[4] Attached as Exhibits 2 and 3 respectively to the Rosen Declaration In Support of Motion of Stream SICAV to Consolidate Related Actions, For Appointment As Lead Plaintiff and Approval of Choice of Counsel ("Rosen Decl."), Dkt. No. 39, filed January 14, 2011.

**2.      Stream SICAV May Lack Standing and Fails to Satisfy Rule 23**

In addition to having no recoverable losses under *Dura*, Stream SICAV is subject to unique defenses and should not be appointed as lead plaintiff.  Stream SICAV appears to be an investment advisor or fund which calls into question Stream SICAV's constitutional standing to pursue a remedy.  *See W. R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) (investment advisors lack constitutional standing); *see also Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Cap. Advisors*, 498 F.3d 920, n.1 (9th Cir. 2007) (pointing out that there is a divergence of authority on whether investment advisors have standing to serve as lead plaintiff in a securities class action); *In re Imax Secs. Litig.*, No. 06-cv-612S (NRB), 2009 U.S. Dist. LEXIS 58219, at *11 (S.D.N.Y. June 29, 2009) (noting court's hesitance to appoint a lead plaintiff movant with questionable constitutional standing, since movant would face unique legal issues that other class members would not and its appointment "could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal").

Here, Stream SICAV has offered no evidence regarding whether it owns shares of RINO in its own right or whether it is merely holding shares on behalf of investors.  Moreover, it offers no evidence that it has been given the power to prosecute this action on behalf of investors.  As such, Stream SICAV fails to establish that it has "legal title to, or a property interest in, the claim."  *W. R. Huff*,

549 F.3d at 108.  The only allegation Stream SICAV makes about the nature of its business is that it is a Luxembourg investment fund.[5]  It fails to offer any evidence demonstrating that it has standing in its own right to pursue claims against RINO and as such it is subject to unique defenses and should not be appointed as lead plaintiff.

Stream SICAV also appears to be a foreign purchaser who purchased shares of RINO on a foreign exchange and as such cannot exercise the protections of Section 10(b).  *See Morrison v. National Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010) (foreign plaintiffs who purchased shares of foreign companies on foreign exchanges cannot avail themselves of the protections of Section 10(b)).  Stream SICAV asserts that it is a Luxembourg based investment fund with its headquarters in Milano, Italy.  *See* Rosen Decl., Ex. 4:  #843 (stating that Stream SICAV is domiciled in Luxembourg with headquarters in Milano, Italy); *see also* Rosen Decl., Ex. 2 (signature of Stream SICAV's investment manager on Stream SICAV's Certification dated December 15, 2010, and signed in Milano, Italy).

As a Luxembourg investment fund, it appears that Stream SICAV purchased shares of RINO on an exchange other than the NASDAQ.  Review of the Certification submitted by Stream SICAV reveals that twenty-six (26) of Stream SICAV's trades are outside the daily price range for shares of RINO traded on the

---

[5] *See* Memorandum of Points and Authorities in Support of Motion of Stream SICAV to Consolidate Related Actions, For Appointment As Lead Plaintiff and Approval of Choice of Lead Counsel ("Stream Mot."), Dkt. No. 36, at p. 4 ("Stream SICAV is a Luxembourg investment fund").

NASDAQ.  Even more compelling is Stream SICAV's sworn statement that it traded shares of RINO on two days when the NASDAQ was closed.  Assuming that Stream SICAV's sworn Certification accurately reflects Stream SICAV's purchases and sales of RINO, Stream must have placed those twenty-eight (28) trades somewhere other than the NASDAQ.  Accordingly, Stream SICAV's trades are explicitly precluded from the protections of the Exchange Act.  *Morrison v. National Austl. Bank Ltd.,* 130 S. Ct. at 2884 ("[T]hose purchase-and-sale transactions are the objects of the statute's solicitude … And it is in our view only transactions in securities listed on domestic exchanges, and domestic transactions in other securities to which Section 10(b) applies.").

Finally, Stream SICAV's physical distance from this forum may create a practical issue prohibiting Stream SICAV from adequately serving as a class representative.  The physical distance will make it difficult for Stream SICAV to testify at trial or to attend a long trial.  *See In re Network Assocs.*, 76 F. Supp. 2d at 1030.

Because Stream SICAV has no recoverable losses under *Dura* and is subject to unique defenses, Stream SICAV cannot serve as lead plaintiff and its motion should be denied.

010220-11  420757 V1

### 3.      BIG and RINO Investor Group Appear to be Lawyer Driven Groups Disfavored Under the PSLRA

The PSLRA was enacted with the purpose of curbing lawyer driven litigation. *See Apple v. LJ Int'l, Inc.*, No. CV07-6076 (GAF), 2008 U.S. Dist. LEXIS 12618, at *10-11 (C.D. Cal. Feb. 8, 2008) (relying on *In re Network Assocs. Sec. Litig.,* 76 F. Supp. 2d 1017 (N.D. Cal. 1999), and noting that the PSLRA intended to prevent lawyer-driven litigation and return control of litigation to the plaintiffs).

So far, the participation of the members of BIG appears to be limited to signing a boilerplate "Certification Pursuant to Securities Laws".[6]  BIG cites to that Certification as an indication that they "fully understand its duties and responsibilities."[7]  However, the Certification states nothing of the sort.  It simply makes the benign point that the "[m]ovant is willing to serve as a representative party…."  *See* Miller Decl., Ex. A., Dkt. No. 34-2.  Noticeably absent from the briefing or the Certification is any statement that the members of BIG have ever met with one another; have exchanged contact information with one another; have any ability to communicate with one another during the course of the litigation; or have

_____

[6] *See* Declaration of Kim E. Miller In Support of Motion To Consolidate Related Actions; To Be Appointed Lead Plaintiff; And To Approve Lead Proposed Lead Plaintiff's Choice of Counsel ("Miller Decl."), Ex. A. (Certifications of Plaintiff Group), Dkt. No. 34-2 (Certification of Mohammed Bourouis signed January 13, 2011, at 5:59 p.m.; Certification of Kent Steels signed January 13, 2011, at 1:05 p.m.).

[7] *See* Notice of Motion and Motion To Consolidate Related Actions; To Be Appointed Lead Plaintiff; And To Approve Lead Proposed Lead Plaintiff's Choice of Counsel And Memorandum or Points and Authorities In Support ("BIG Mem."), Dkt. No. 34, at p. 3.

any decision making structure in place to direct the litigation in the event they are appointed as Lead Plaintiff.  *See* BIG Mem., p. 11; *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d at 1026-27.

Indeed, two members of BIG did not sign their Certifications until January 13, 2011, the day before they filed their motion asking to serve as Lead Plaintiff.  *See* Miller Decl., Ex. A (Certifications of Mohammed Bourouis and Kent Steels dated January 13, 2011).  These Certifications are likely in response to Kahn Swick's press release dated January 11, 2011, entitled "3 Days Left – Kahn Swick & Foti LLC and Former Louisiana State Attorney General Remind Investors With Large Financial Interests (Over $100,000) of Lead Plaintiff Deadline in Lawsuit Against RINO International Corp. – RINO."  The last minute signatures of Mohammed Bourouis and Kent Steels at a minimum create the appearance that they were cobbled together on the eve of filing for the purpose of creating the largest losses rather than to guide and steer the litigation.  While it is possible the members of BIG were introduced, exchanged information, agreed to a decision making structure and agreed to work together cooperatively and to move as a group on the day they filed their motion, it is highly unlikely.  Indeed, BIG appears to be the sort of lawyer driven group the PSLRA attempts to limit and should not be appointed as Lead Plaintiff.  *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d at 1026-27.

Similarly, the RINO Investor Group has offered no indication that they have ever met, have any decision-making structure, have an agreement or desire to work

- 12 -

1   together or have any means of communicating with one another or that prior to filing

2   their motion they authorized counsel to seek joint appointment as Lead Plaintiff.

3   Indeed, the only statement about the nature of the RINO Investor Group is that they

4   "have communicated with competent, experienced counsel concerning this case, and

5   have made this motion to be appointed lead plaintiff."[8]  Also noticeably absent from

6   the brief is an explanation of why this group would require three separate law firms

7   to prosecute this case and how this group will be able to maintain control of and

8   manage their counsel.  *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d at 1026-

9   27.  Indeed, two of the group's members signed Certifications noting that they

10  approved working with only one of the three law firms.  There is no indication that

11  they authorized adding the two additional firms.[9]

12  **B.     RINO Shareholder Group Is an Appropriate Lead Plaintiff Group**

13         The RINO Shareholder Group, comprised of six persons – two of whom are

14  husband and wife – is a proper lead plaintiff group under the PSLRA.  The PSLRA

15  mandates that the court appoint the "person or group of persons that ... has the largest

16  financial interest in the relief sought...."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also*

17  *In re Charles Schwab Sec. Litig.*, No. 08-1510 WHA, 2008 U.S. Dist. LEXIS

---

   [8] *See* Memorandum of Points and Authorities In Support of Motion of the RINO Investor Group For Consolidation or Related Actions, Appointment As Lead Plaintiff and Approval of Co-Lead Counsel, Dkt. No. 43, p.7.

   [9] *See* Declaration Of Michael Goldberg In Support Of Motion Of The RINO Investor Group For Consolidation Of Related Actions, Appointment As Lead Plaintiff And Approval Of Co-Lead Counsel, Dkt. No. 44, Ex. B (Certifications of Pierce Gore and Roman Shteynshlyuger), filed January 14, 2011.

116650, at *5 (N.D. Cal. July 3, 2008) (appointing group of six to serve as lead plaintiff).

In the appropriate circumstances, courts in this Circuit have repeatedly approved aggregating groups of investors to serve as lead plaintiff in securities cases governed by the PSLRA. *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d at 1030. In *Network Assocs.*, the Court outlined circumstances in which a small cohesive group of investors could appropriately serve as Lead Plaintiff:

> To enable the court to assess whether the proposed group is capable of performing the lead plaintiff function, it should provide appropriate information about its members, structure, and intended functioning. Such information should include descriptions of its members, including *any pre-existing relationships* among them; an *explanation of how it was formed* and *how its members would function collectively*; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation. *If the proposed group fails to explain and justify its composition and structure to the court's satisfaction, its motion should be denied or modified as the court sees fit.*

*In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d at 1026-27 (emphasis added).

Here, the RINO Shareholder Group is the only group to have presented any information regarding its formation, decision making structure, ability to communicate with one another about the litigation and desire to work together

- 14 -

cooperatively to further the interests of the class.  *See* RINO Mot., at pp. 2, 8-9.  As evidenced in their Joint Declaration, the RINO Shareholder Group developed a relationship and subsequently agreed to work together.[10]  They jointly came to the decision to serve as Lead Plaintiff.  *See* Borkon Suppl. Decl., Ex. 1, ¶ 3.  They were introduced to one another telephonically and by email on January 13, 2011.  *Id.*, ¶ 4.  The members of the RINO Shareholder Group have demonstrated their desire and ability to cooperate to further the interests of the class and to manage this litigation.  *Id.*, ¶¶ 5, 9.  They have also demonstrated their commitment to managing this litigation and their plans to continue doing so.  *Id.*, ¶¶ 14, 15.  The members of the group are sophisticated individuals and they chose outside counsel rather than the other way around.  *Id.*, ¶¶ 3, 13.  Indeed, the members of the RINO Shareholder Group are aware that they can choose any law firm, but they have determined that they wish to proceed with proposed Lead Counsel, Hagens Berman.  *Id.*, ¶ 15.  The RINO Shareholder Group intends to participate directly in this litigation, are willing and able to serve as class representatives and have participated in organizing themselves to serve in that capacity.  *Id.*, ¶¶ 5, 11, 12, 15.  They have a detailed decision-making structure in place.  *Id.*, ¶¶ 5, 8.  They have established a method for communicating among themselves and with counsel and have exchanged contact information with one another to ensure that they are able to communicate.  *Id.*, ¶¶ 5, 14, 15.  The members of the RINO Shareholder Group are exactly the proactive group the PSLRA envisions leading a securities class action such as the one at issue

---

[10] *See* Declaration of Peter E. Borkon In Further Support of RINO Shareholder's Group Motion For Consolidation, Appointment As Lead Plaintiff And Approval of Proposed Lead Counsel And In Opposition To Competing Motions ("Borkon Suppl. Decl."), Ex. 1.

- 15 -

1   here.  *Id.*, ¶ 15.  Accordingly, the RINO Shareholder Group satisfies the requirements

2   of the PSLRA and respectfully suggests that they are a permissible group.

**C.      The Remaining Movants' Losses are Dwarfed By the RINO Shareholder Group and Several of the Movants Cannot Satisfy Rule 23**

The remaining competing Movants' losses are dwarfed in size compared to the

RINO Shareholder Group.  Indeed, the losses are smaller than several of the

individual members of the RINO Shareholder Group.  The claimed financial interests

of the remaining Movants are as follows:

| | |
|---|---|
| Rosalina Lim and Phisman Investments LLC | $27,233.79 |
| Zheming Ruan | $70,600 |
| Frank Botta | $280,000 |
| James Blackwood-Murray | $305,000 |
| Guiliano Lazzeretti, Adriana Lazzeretti, Regulous Davila | $525,162 |
| Guerrilla Partners L.P. and Hua-Mei 21st Century Partners, L.P | $455,891 |

Of the remaining Movants, Rosalina Lim and Phisman Investments LLC,

Zheming Ruan, and Frank Botta have all suffered losses smaller than RINO

Shareholder Group's largest members – Alejandro Moreno and husband and wife

Anupam & Gaytri Khandelwal.  James Blackwood-Murray has suffered losses

smaller than Alejandro Moreno, the member of the RINO Shareholder Group who

suffered the largest losses, and Guiliano Lazzeretti, Adriana Lazzeretti and Regulous

Davlia all suffered losses smaller than the largest investors in the RINO Shareholder

Group.  Movants Guerilla Partners L.P and Hua-Mei 21st Century Partners, L.P. have

010220-11  420757 V1

also suffered losses smaller than the two largest members of the RINO Shareholder Group.

In addition to having financial interests in the relief sought by the class that is multiples smaller than the RINO Shareholder Group, several of these competing movants appear subject to unique defenses that prohibit them from serving as Lead Plaintiff.

### 1.   Rosalina Lim and Phisman Investments LLC Are Subject to Unique Defenses

Ms. Lim has signed two certifications declaring losses from investments in RINO.  One Certification is signed on behalf of a living trust that appears to be her own living trust.  The second Certification is on behalf of an entity called Phisman Investments LLC.  There is no explanation of who Phisman Investments LLC is or how it is related to Lim.  There is also no explanation of whether Phisman owns legal title to the shares or is an investment advisor or fund who holds those shares for the benefit of investors.  Accordingly, Phisman suffers from the same unique defenses as Stream SICAV in that it fails to offer and evidence regarding legal title to the RINO shares at issue.  *W. R. Huff*, 549 F.3d 100.

### 2.   Guerilla Partners L.P and Hua-Mei 21st Century Partners, L.P. Are Subject to Unique Defenses

Guerilla Partners L.P. and Hua-Mei 21st Century Partners, L.P. also fail to offer any evidence of whether they hold legal title to the share of RINO.  They do not allege that they have the authority to prosecute this action.  *W. R. Huff*, 549 F.3d 100.  Instead, they submit a Certification signed by Leigh Curry, Principal at a third entity called Guerilla Advisors, L.L.C.  The Certification states that Guerilla Advisors LLC is the General Partner of Guerilla Partners L.P and Hua-Mei 21st

- 17 -

Century Partners, L.P.  Review of Hua-Mei 21st Century Partners website at www.hua-mei21.com.cn/company.htm further muddies the structure of these entities.  *See* Borkon Suppl. Decl., Ex. 3(Hua-Mei website).  Hua-Mei states that it is managed by Guerilla Capital Management LLC, which is an investment fund.  *Id.*  The website also lists Leigh Curry as the Associate Portfolio Manager for Hua-Mei.  Borkon Suppl. Decl., Ex. 3.  Given the uncertainties of who owns legal title and failure to offer any evidence regarding the organizations structure of these entities as well as lack of any evidence as to who owns the RINO shares at issue, this Movant may also be subject to unique defenses making them inadequate representatives for the class.  *W. R.* Huff, 549 F.3d 100.

### III.    CONCLUSION

As demonstrated above, RINO Shareholder Group is the "most adequate plaintiff[s]" under the PSLRA.  RINO Shareholder Group has the "largest financial interest" in the relief sought by the class and ***also*** satisfies the requirements of Rule 23.  Accordingly, the RINO Shareholder Group respectfully requests that the Court grants its motion to:  (1) consolidate the six related cases; (2) appoint the RINO Shareholder Group as Lead Plaintiff; and (3) approve its selection of Hagens Berman Sobol Shapiro LLP as Lead Counsel for the Class.

DATED:  January 24, 2011

HAGENS BERMAN SOBOL SHAPIRO LLP

_____/s/ Lee M. Gordon_____
LEE M. GORDON
HAGENS BERMAN SOBOL SHAPIRO LLP
700 South Flower Street, Suite 2940
Los Angeles, CA  90017
Telephone:  (213) 330-7150
Facsimile:  (213) 330-7152
lee@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: 510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Counsel for Movants

010220-11  420757 V1

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List.  I hereby certify that I have caused the foregoing document or paper to be mailed via United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

_____/s/ Lee M. Gordon_____
LEE M. GORDON

- 20 -