```
                    UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA

                       CIVIL MINUTES -- GENERAL
```

Case No.  **CV 10-8695-VBF(VBKx)**                    Dated: **February 14, 2011**

Title:    Susan Hufnagle -v- Rino International Corporation, et al.

---

PRESENT:  HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

          Joseph Remigio                         None Present
          Courtroom Deputy                       Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

          None Present                           None Present

**PROCEEDINGS (IN CHAMBERS):**        **TENTATIVE ORDER RE PLAINTIFFS' MOTIONS TO CONSOLIDATE, APPOINT LEAD PLAINTIFF AND APPROVE LEAD COUNSEL (DKTS. #15, #16, #19, #21, #27, #30, #34, #35, #37, #42)**

**I. Tentative Rulings**

   The Court has received, read, and considered the following:

- **(1)** Rosalina Lim's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Counsel (dkt. #15); and Reply (dkt. #64);
- **(2)** RINO Shareholder Group's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Proposed Lead Counsel (dkts. #16, #17); Opposition (dkts. #60, #61); and Reply (dkts. #72, #73);
- **(3)** James Blackwood-Murray's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (dkt. #19); and Reply (dkt. #63);
- **(4)** Frank Botta's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel (dkts. #21, #22); Opposition (dkts. #56, #57); and Reply (dkts. #65, #66);
- **(5)** Zheming Ruan's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel (dkts. #26, #27,

MINUTES FORM 90                        Initials of Deputy Clerk ___jre___
CIVIL - GEN

- #28); and Reply (dkt. #49);
- **(6)** Guerrilla and Hua-Mei Partnerships for (I) Appointment as Lead Plaintiffs; (II) Approval of Selection of Lead Counsel; (III) Consolidation of Related Cases (dkts. #30, #31, #33); Opposition (dkt. #52); and Reply (dkts. #67, #68);
- **(7)** Bourouis Investor Group's Motion to Consolidate Related Actions; To Be Appointed Lead Plaintiff; And To Approve Proposed Lead Plaintiff's Choice of Counsel (dkt. #34); Opposition (dkts. #58, #59); and Reply (dkt. #71);
- **(8)** Stream SICAV's Motion to Consolidate Related Actions, For Appointment as Lead Plaintiff and Approval of Choice of Counsel (dkts. #35, #36, #39); Opposition (dkts. #77, #78); and Reply (dkts. #79, #80);
- **(9)** Giuliano and Adriana Biondi Lazzeretti and Regulos Davila's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Counsel (dkts. #37, #38, #40); and Reply (dkt. #53);
- **(10)** RINO Investor Group's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Co-Lead Counsel (dkts. #42, #43, #44); and Opposition (dkts. #50, #51).

Based on the papers filed, the tentative rulings are to:

- **(1) GRANT** each Motion, in part, with respect to the requests to consolidate these related actions. *See* dkts. #15, #16, #19, #21, #27, #30, #34, #35, #37, #42.
- **(2) GRANT** Stream SICAV's Motion, with respect to the request to be appointed lead plaintiff. *See* dkt. #35.
- **(3) GRANT** Stream SICAV's Motion, with respect to its request to approve the Rosen Law Firm, P.A. as lead counsel for the class. *See* dkt. #35.
- **(4) DENY** the Motions by each other Moving Plaintiff, with respect to the request to be appointed lead plaintiff and for approval of choice of counsel. *See* dkts. #15, #16, #19, #21, #27, #30, #34, #37, #42.

## II. Background

Currently pending before the Court are six putative class actions[1]

---

[1] *Hufnagle v. Rino International, Inc., et* al., No 2:10-cv-8695; Stevens *v. RINO International, Inc., et al.*, No. 2:10-cv-09011; *Chau v. RINO International, Inc., et al.,* 2:10-cv-09517; *Baig v. RINO International, Inc., et al.,* No. 8:10-cv-01754; *Zhang v. RINO International, Inc., et al.,* No. 8:10-cv-01887; and *Vu v. RINO International, Inc., et al.,* No. 8:10-cv-01908.

MINUTES FORM 90                           Initials of Deputy Clerk ___jre___
CIVIL - GEN

(the "Actions") brought on behalf of all persons who purchased securities of RINO International Corporation ("RINO") between March 31, 2009 and November 11, 2010 (the "Class Period"). The Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §§ 78(j)(b) and 78(t)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), against RINO and certain of its officers. The first action, *Hufnagle v. Rino International, Inc., et* al., No 2:10-cv-8695, was filed on November 12, 2010, and notice of the pendency of the action was published that day on the Business Newswire and republished on November 19, 2010. .

      Plaintiffs allege that RINO, a Nevada corporation headquartered in China, and certain of its present and former officers and directors, violated the Exchange Act in connection with RINO's issuance of materially false and misleading statements about RINO's true financial condition; and the issuance of materially false and misleading financial statements in its periodic reports filed with the Securities Exchange Commission ("SEC"). *See* Complaint (dkt. #1).

      Specifically, on March 31, 2009, RINO filed its annual report for the year ended December 31, 2008 on Form 10-K with the SEC. *See id.* ¶ 31. On March 31, 2010, RINO filed its 10-K for the year ended December 31, 2009. *See id.* ¶ 33. In those filings, RINO claimed revenues of $139.3 million and $192.6 million for fiscal years 2008 and 2009, respectively. *See id.* ¶¶ 33, 34. Plaintiffs allege that these figures were materially false and misleading. *See id.* ¶ 35. According to RINO's financial statements filed with China's State Administration of Industry and Commerce, RINO only generated $11 million of revenue for fiscal year 2009. *See id.* On November 10, 2010, a market research and trading firm, Muddy Waters, issued an investigative report detailing this adverse information. *See id.* ¶¶ 38-41. Plaintiffs allege that as this adverse information was disclosed to investors, the market price of RINO shares dropped, damaging investors. *See id.* ¶¶ 42-34.

**III. Analysis**

   **A. Consolidation**

      Movants seek to consolidate the above captioned actions pursuant to Federal Rule of Civil Procedure 42. Pursuant to that Rule:

   When actions involving a common question of law or fact are pending
   before the court, it may order a joint hearing or trial of any or
   all the matters in issue in the actions; it may order all the
   actions consolidated; and it may make such orders concerning

     proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). Courts have recognized that securities class actions are particularly suited to consolidation to help expedite pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple proceedings, and minimize the expenditure of time and money. *See In re Equity Funding of Amer. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976) (citation omitted). Consolidation is appropriate when multiple cases "allege the same misrepresentations and omissions by" defendants and have similar class definitions. *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1130 (C.D. Cal. 1999). A court must rule on a motion to consolidate before it can rule on a motion to appoint a lead plaintiff. Securities Exchange Act, § 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii).

     Each of the ten motions move to consolidate the above captioned Actions, stating that each alleges the same misrepresentations and omissions by Defendants and have similar class definitions. No party has opposed the requests for consolidation. Accordingly, the Court finds that consolidation is warranted and therefore **GRANTS** the motions with respect to the requests to consolidate these related Actions. *See* dkts. #15, #16, #19, #21, #27, #30, #34, #35, #37, #42.

    **B. Lead Plaintiff**

        **i. Standard**

     Selection 21D of the Private Securities Litigation Reform Act of 1995 ("PSLRA") provides standards and procedures for selecting lead plaintiffs in a securities class action and is "intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class." H.R. 104-39 at 32. Under the procedures set out in the PSLRA, all proposed lead plaintiffs must submit a sworn certification setting forth certain facts designed to assure the Court that the plaintiff (1) has suffered more than a nominal loss, (2) is not a professional litigant, and (3) is otherwise interested and able to serve as a class representative. 15 U.S.C. § 78u-4(a)(3)(A)(I).

     Once applications for lead plaintiff status are closed, the district court must determine who among the movants for lead plaintiff status is the "most adequate plaintiff." *Id.* at § 78u-4(a)(3)(B)(I). The PSLRA directs courts to "appoint as lead plaintiff the members or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members . . .

MINUTES FORM 90                                Initials of Deputy Clerk    jre
CIVIL - GEN

." *Id.* In the Ninth Circuit, *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002), establishes a three-step process for selecting a lead plaintiff.

In step one, timely and complete notice of the pendency of the action, the claims made and the purported class period must be published. *In re Cavanaugh*, 306 F.3d at 729; *see also* 15 U.S.C. § 78u-4(a)(3)(A).

In step two, the district court must consider the losses suffered by potential lead plaintiffs and select "the one who 'has the largest financial interest in the relief sought by the class.'" *In re Cavanaugh*, 306 F.3d at 730 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). Then the court must focus on that plaintiff to ensure that the plaintiff "satisfies the requirements of [Fed. R. Civ. P.] 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* "Although the inquiry at this stage of the litigation is not as searching as the one triggered by a motion for class certification, the proposed lead plaintiff must make at least a preliminary showing that it meets the typicality and adequacy factor." *Ghohua Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) (citations omitted). A plaintiff who satisfies the first two steps becomes the "presumptively most adequate plaintiff." *In re Cavanaugh*, 306 F.3d at 730.

In step three, once the presumptive lead plaintiff has been designated, the court gives other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements. *In re Cavanaugh*, 306 F.3d at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). "That the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient. Rather, the statute provides that the presumption 'may be rebutted only upon proof . . . that the presumptively most adequate plaintiff' does not satisfy the adequacy or typicality requirements of Rule 23." *See id.* at 729 n.2. In order to rebut the designation, class members must prove either that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa), (bb).

If the presumptive lead plaintiff is disqualified on these grounds, the candidate's position is forfeited and the court returns to the first phase to determine a new presumptive lead plaintiff. The process repeats itself until a candidate succeeds in both the first and second phases of the inquiry. *In re Cavanaugh*, 306 F.3d at 729.

MINUTES FORM 90                                Initials of Deputy Clerk    jre
CIVIL - GEN

### ii. *Cavanaugh* Three-Step Process

The Court will examine the competing motions using the three-step process established by *Cavanaugh*. First, as to published notice, there is no dispute that timely and complete notice of the pendency of the action, the claims and purported class period were made, pursuant to 15 U.S.C. § 78u-1(a)(3)(A); *see also* Rosen Decl., Ex. 1 (dkt. #39-1). Additionally, each of the motions requesting the court to appoint a lead plaintiff were made not later than 90 days after the date on which a notice was published. *See* 15 U.S.C. § 78u-1(a)(3)(B).

Second, with regard to financial interest in the litigation, Plaintiff Stream SICAV ("Stream") appears to have the largest financial interest in the action, reporting total losses of $2,021,717.51.[2] *See* Stream Motion (dkt. #36), 8:20-23, Rosen Decl., Ex. 3. Thus, if Stream otherwise meets the requirements of Rule 23(a), and in particular those of "adequacy" and "typicality," it becomes the presumptively most adequate lead plaintiff. *In re Cavanaugh*, 306 F.3d at 730.

Third, as to Rule 23[3], Stream contends that it fulfills the requirements of "adequacy" and "typicality." Typicality is achieved where the named plaintiff's claims arise from the same event or course of conduct that gives rise to the claims of the other class members and the claims are based on the same legal theory. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing *Schwartz v. Harp*, 108 F.R.D. 279, 272 (C.D. Cal. 1985)). The adequacy requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced and generally able to conduct the litigation. *See* Fed. R. Civ. P. 23(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

---

[2] RINO Investor Group reports the second highest total losses ($1,317,217.78), followed by Bourouis Investor Group ($1,286,304.53). *See* RINO Investor Group's Motion at 5:15-17 (dkt. #43) and Bourouis Investor Group's Motion at 3:16-19 (dkt. #34).

[3] Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members if impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See also In re Cavanaugh*, 306 F.3d at 730.

MINUTES FORM 90                                    Initials of Deputy Clerk ___jre___
CIVIL - GEN

Stream contends that its claims share substantially similar questions of law and fact with the members of the class and that its claims are typical of the members of the class. *See* Stream Motion (dkt. #36), 9:6-10:17. All Plaintiffs allege that Defendants violated the Exchange Act by publicly disseminating false and misleading financial statements about their business. All Plaintiffs also allege that they purchased RINO stock at prices artificially inflated by Defendants' misrepresentations and omissions and were damaged thereby. The Court tentatively finds that these shared claims satisfy the adequacy and typicality requirements of Rule 23.

Additionally, the PSLRA's legislative history expressed a preference for institutional investors, such as Stream, to serve as lead plaintiffs. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted* in 1995 U.S.C.A.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). "According to Congress, institutional investors appointed as lead plaintiffs would be the most competent plaintiff to select and control lead counsel." Moore's Federal Practice § 23.191[3][b][v]. "Moreover, the claims of institutional investors generally will be typical of the claims of the class." *Id.*

Accordingly, the Court would find that Stream fulfills the pertinent requirements of Rule 23.

### a. Oppositions to Appointing Plaintiff Stream SICAV as Lead Plaintiff

Plaintiffs Frank Botta, Guerrilla and Hua-Mei Partnerships, RINO Shareholder Group and Bourouis Investor Group (collectively "Opposing Plaintiffs") filed Oppositions and Replies to the appointment of Stream as lead plaintiff. *See* dkts. #52, #56, #58, #60, #65, #67, #71, #72. The Court will address arguments raised in these Oppositions and Replies.

Additionally, responses from Plaintiffs Zheming Ruan (dkt. #49), RINO Investor Group (dkt. #50), Giuliano and Adriana Biondi Lazzeretti and Regulos Davila (dkt. #53), James Blackwood-Murray (dkt. #63) and Rosalina Lim (dkt. #64) state that based on a review of the motions for lead plaintiff, it appears these Plaintiffs do not have the largest financial interest in the relief sought by the class.

### i. Whether Stream and its Investment Manager Have Standing

MINUTES FORM 90                                      Initials of Deputy Clerk ___jre___
CIVIL - GEN

-7-

Plaintiffs Guerrilla and Hua-Mei Partnerships (collectively "Guerrilla"), Bourouis Investor Group ("BIG") and RINO Shareholder Group ("RSG") contend that it is unclear whether Stream has standing to sue as Giorgio Peterlongo, who signed Stream's PSLRA certification, has offered no evidence that either Mr. Peterlongo or Stream have been given the power to prosecute this action on behalf of investors and thus has failed to show that Stream has "legal title to, or a propriety interest in, the claim." *Baydale v. Am. Express Co.*, 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009) (quoting *W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008)). BIG argues that Stream has not demonstrated injury-in-fact, and any attempt to do so would needlessly complicate this litigation.

The Court tentatively finds that Plaintiff Stream and its investment manager Mr. Peterlongo have demonstrated injury-in-fact such that they have standing to sue. As set forth in the Declaration of Mr. Peterlongo (dkt. #70-1), Stream is not investment advisor, but a public investment company, comparable to a mutual fund in the United States. *See* Peterlongo Decl. ¶ 4. Accordingly, the cases cited by Opposing Plaintiffs, in which courts have found that investment advisors who purchase securities for clients' accounts suffer no injury-in-fact, are distinguishable. *See, e.g., W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d 100. Instead, as stated by Mr. Peterlongo, Stream is self-managed by Mr. Peterlongo and by its Board of Directors, who have exclusive control and discretion over the assets owned by Stream. *See* Peterlongo Decl. ¶¶ 5-6. Stream invests its assets in its own name and owns the assets it purchases. *Id.* ¶ 7. Stream was the beneficial owner and held legal title to the RINO stock purchased and sold. *Id.* ¶ 8. Accordingly, Stream itself suffered injury-in-fact and has standing to serve as Lead Plaintiff. *See, e.g., In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 346-37 (S.D.N.Y. 2009); *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 579 (S.D.N.Y. 2009).

Further, as the Ninth Circuit has articulated, while some courts have held that an investment advisor cannot be the appropriate lead plaintiff because it did not have express written authority to sue on its clients' behalf, other courts have found that an "investment advisor has an interest in its own right to receive full and fair disclosures regarding the true value of a company's stock, and therefore is a 'purchaser' under the PSLRA with proper standing to pursue litigation on behalf of its individual clients." *See Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Cap. Advisors*, 498 F.3d 920, 922 n.1 (9th Cir. 2007) (citing *Lehocky v. Tidel Technologies, Inc.*, 220 F.R.D. 291, 501 (S.D. 2004) and *In re Rent-Way Litig.*, 218 F.R.D. 101, 109 (W.D. Pa. 2003)); *see also Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602 (S.D.N.Y. 1989).

MINUTES FORM 90                           Initials of Deputy Clerk     jre
CIVIL - GEN

With respect to Opposing Plaintiffs' argument that Mr. Peterlongo offered no evidence that he had been given the power to prosecute this action on behalf of investors, evidence set forth by Stream indicates that Mr. Peterlongo does have the authority to bind Stream. *See* Peterlongo Decl. ¶ 12. Mr. Peterlongo states that he is "duly authorized by the Fund's Management and Board of Directors to bring this Litigation and to bind the Fund in this Litigation." Peterlongo Decl. ¶ 3.

As evidence set forth by Stream shows that it holds legal title to the RINO stock it purchased and sold, the Court would find that Plaintiff Stream and its investment manager Giorgio Peterlongo have demonstrated injury-in-fact such that they have standing to sue.

### ii. Whether Stream SICAV's Status as a Foreign Plaintiff Subjects it to Unique Defenses

Plaintiffs Guerrilla and Botta contend that appointing a foreign lead plaintiff - such as Stream, a "Luxembourg investment fund" with an investment advisor located in Milan, Italy - raises questions about subject matter jurisdiction and the res judicata effect of any judgment. *See, e.g., Baydale v. Am. Express Co.*, No 09-cv-3016, 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009); *South Ferry LP No. 2 v. Killinger*, 2011 WL 43725 (W.D. Wash. Jan. 6, 2011); *Ansari v. New York University*, 179 F.R.D. 112, 116 (S.D.N.Y. 1998); *Borochoff v. GlaxoSmithkline PLC*, 246 F.R.D. 201, 204-05 (S.D.N.Y. 2007). Opposing Plaintiffs argue that as a Luxumbourgian entity, Stream will be "subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Plaintiff Botta states that Luxumbourg does not have a formal treaty with the U.S. requiring it to enforce a civil judgment, and courts consistently refuse to appoint a foreign movant as lead plaintiff in such a situation because of the "risk that foreign courts would not give the [c]ourt's judgment res judicata effect." *Steinberg v. Ericsson LM Tel. Co.*, 2008 WL 1721484, at *1 (S.D.N.Y. Apr. 11, 2008); *In re Discovery Labs. Sec. Litig*, No. 06-cv-1820-SD, *2 (E.D. Pa. Aug. 21, 2006).

The Court tentatively finds that Stream's status as a foreign lead plaintiff does not make it subject to unique defenses that render it incapable of adequately representing the class. Courts routinely appoint foreign investors as lead plaintiffs. *In re Tronox, Inc.*, 262 F.R.D. 338 (citing *Corwin v. Seizinger,* 2008 WL 123846, at *3 n.1, *5 (S.D.N.Y. Jan. 8, 2008) (appointing as lead plaintiff an investment firm established under Luxemburg law); *Steinberg v. Ericsson LM Tel.Co.*, 2008 WL 1721484, at *2-*3 (S.D.N.Y. Apr. 11, 2008) (denying motion for reconsideration of court's appointment of a citizen of Belgium as lead plaintiff); *Jolly*

*Roger Offshore Fund Ltd. v. BKF Capital Group, Inc.*, 2007 WL 2363610, at *5 (S.D.N.Y. Aug. 17, 2007)). "[A]n American court need not abstain from entering judgment simply because of a possibility that a foreign court may not recognize or enforce it . . . ." *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d Cir.), *cert. denied*, 423 U.S. 1018 (1975). "While in some contexts courts have identified *res judicata* concerns in not appointing foreign lead plaintiffs, this has been explicitly rejected when the foreign lead plaintiff movants are suing as a result of purchases made on a domestic securities exchange. *See, e.g.*, *Sgalambo v. McKenzie*, 268 F.R.D. 170, 176 (S.D.N.Y. 2010) (distinguishing cases in which courts have cited *res judicata* concerns when not appointing a foreign investor as lead plaintiff to those involving 'foreign cubed plaintiffs,' meaning they are foreign investors who purchased shares of a foreign company on a foreign securities exchange)." *Foley v. Transocean Ltd.*, 2011 WL 103960, at *6 (S.D.N.Y. Jan. 3, 2011).

Additionally, Opposing Plaintiffs have failed to provide adequate proof showing that a judgment of this Court would not be granted res judicata effect in Luxumbourg. *See Mohanty v. Big Band Networks, Inc.*, 2008 WL 426250, at *8 (N.D. Cal. Feb. 14, 2008) (rejecting challenge against Cyprus resident to serve as lead plaintiff on purported res judicata concerns that a Cyprus court would not enforce U.S. judgment, because other than argument, no actual proof through expert testimony, was provided by the competing movant); *Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 486 (E.D. Pa. 2007) ("Defendants did not consult with experts on Austrian law to determine the likelihood that an Austrian court would recognize such a claim or fail to enforce a U.S. judgment in this case . . . Such a speculative argument is simply not sufficient to support the exclusion of [the foreign plaintiff] . . . , especially when they are otherwise entitled to sue in U.S. Courts.").

### iii. Whether Stream Relied on Defendants' Misstatements

Plaintiff Botta argues that Stream's pattern of stock sales make it susceptible to arguments that it did not rely on Defendants' misstatements.[4] Plaintiff Botta contends that according to the class period, Stream purchased 25,000 shares at a cost of $165,120 after the truth about RINO was revealed on the market, and that such a pattern of

---

[4]Additionally, Plaintiff RSG's argument that Stream sold all of its shares of RINO on or before September 7, 2010 is not adequately supported by the evidence to which Plaintiff RSG cites. *See* Rosen Declaration, Exhibits 2 and 3 (dkt. #39).

MINUTES FORM 90                          Initials of Deputy Clerk ___jre___
CIVIL - GEN

purchases of the defendant's stock after full or partial disclosure of the fraud can disqualify a movant from serving as lead plaintiff or class representative. *See In re DVI Inc. Sec. Litig*, 249 F.R.D. 196, 203 (E.D. Pa. 2008); *see also In re Valence Tech. Sec. Litig.*, 1996 WL 119468 (N.D. Cal. Mar. 14, 1996).

The Court tentatively finds that Opposing Plaintiffs' argument regarding Stream's pattern of stock sales does not make Stream subject to unique defenses that render it incapable of adequately representing the class. "[C]ourts have ruled that purchases of stock by the class representatives after negative announcements during the class period or even after the close of the class period do not destroy typicality." *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 501-02 (S.D. Tex. 2004) (citing *In re Firstplus Fin. Group, Inc., Sec. Litig.*, 2002 WL 31415951, at *6 (N.D. Tex. 2002) (indicating vast majority of courts hold that a plaintiff's purchase of stock after the close of a class period or after disclosure of materially adverse information does not raise a unique defense to destroy typicality); *Del Dietrich v.* Bauer, 192 F.R.D. 119, 125 (S.D.N.Y. 2000) (finding proposed class representative typical despite continuing to purchase after wide dissemination of negative publicity).

### iv. Whether Stream Bought RINO Shares on a Foreign Exchange

Plaintiff RSG contends that Stream appears to be a foreign producer who purchased shares of RINO on a foreign exchange and as such cannot exercise the protections of Section 10(b). *See Morrison v. National Austl. Bank Ltd.*, 130 S. Ct. 2869 (2010). Plaintiff RSG argues that review of the certification submitted by Stream reveals that 26 of Stream's trades are outside of the daily price range for shares of RINO traded on the NASDAQ, and that Stream's sworn statement indicates that Stream traded shares of RINO on two days when the NASDAQ was closed. *See* RSG's Opposition at 9:20-10:13 (dkt. #60).

The Court tentatively finds that because Stream purchased its RINO shares in the United states through the NASDAQ stock exchange, *see* Peterlongo Decl. ¶ 8, *National Aust. Bank. Ltd.* does not apply. A listing of the trade dates for the transactions set forth in the Fund's PSLRA certification is attached as Schedule A to the Peterlongo Declaration. Accordingly, Plaintiff RSG's assertion that Stream purchased shares of RINO on a foreign exchange does not preclude Stream from exercising the protections of Section 10(b). *See Sgalambo*, 268 F.R.D at 175 (appointing Belgian as lead plaintiff, as he purchased shares on an American exchange, and stating "Although unnecessary, Stroker also submitted a

MINUTES FORM 90                                        Initials of Deputy Clerk ___jre___
CIVIL - GEN

sworn declaration on reply affirming that he purchased all of his CSN shares during the Class period on the AMEX, eliminating any uncertainty.").

### v. Whether Stream's Distance from this Court Will Impact the Litigation

Plaintiffs Botta and RSG contend that it will be difficult for a distant foreign plaintiff such as Stream to attend a long trial or to manage the litigation and control its lawyers. *See In re Network Associates, Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999).

The Court tentatively finds that Stream's distance from this Court is not a factor that affects its adequacy or typicality. *See* Peterlongo Decl. ¶ 11. "Foreign parties litigate in United States courts with regularity and there is no reason to disqualify [Stream] based on mere distance from the Court." *Murdeshwar v. Searchmedia Holdings Ltd., et al.*, CV 10-6794 DSF (JEMx), Memorandum and Order Appointing Lead Plaintiff at 2 (C.D. Cal., Dec. 15, 2010) (footnote omitted) (appointing an Italian party as lead plaintiff). Additionally, Opposing Plaintiffs have provided inadequate proof showing that Stream's location may create difficulties in the management of the case. *See, e.g., Sgalambo*, 268 F.R.D. at 177.

### C. Lead Counsel

The PSLRA provides that once the court has designated a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The decision to approve counsel selected by the lead plaintiff is a matter within the discretion of the district court. *See Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071-72 (C.D. Cal. 1999) (holding that the legislative history of the PSLRA reveals that Congress vested the district courts with the authority to appoint lead counsel); *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal. 1999) (holding that the court is charged with ensuring that the class receives quality representation at a fair price and cannot, therefore, simply defer to lead plaintiff's choice of counsel). A court generally should accept the lead plaintiff's choice of counsel unless it appears necessary to appoint different counsel to "protect the interests of the class." *Id.* at 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Stream has selected and retained the Rosen Law Firm as lead counsel. The Rosen Law Firm appears to have the experience and resources to prosecute and manage this litigation effectively. *See* Declaration of

Laurence M. Rosen (dkt. #39), Exhibit 5 (Firm resume of the Rosen Law Firm, P.A.).

The Court therefore tentatively approves Stream's retention of The Rosen Law Firm and appoints them as Lead Counsel for the Plaintiff class.

### D. Conclusion

For the foregoing reasons, the Court would **GRANT** the motions to consolidate these actions for all purposes and **GRANT** Stream SICAV's Motion for Appointment as Lead Plaintiff and Approval of Choice of Counsel pursuant to Section 21 D(a)(3)(B) of the Securities Exchange Ace of 1974.

**IT IS SO ORDERED.**

MINUTES FORM 90          Initials of Deputy Clerk    jre
CIVIL - GEN