Jeffrey S. Facter (State Bar No. 123817)
Patrick D. Robbins (State Bar No. 152288)
Emily V. Griffen (State Bar No. 209162)
Jiyoun Chung (State Bar No. 226900)
SHEARMAN & STERLING LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA  94111-5994
Telephone:  (415) 616-1100
Facsimile:  (415) 616-1199
Email:  jfacter@shearman.com
          probbins@shearman.com
          egriffen@shearman.com
          jchung@shearman.com

Attorneys for Defendant
RINO International Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STREAM SICAV AND TODD MARX, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RINO INTERNATIONAL CORPORATION, et al.,<br><br>Defendants. | NO.:  CV-10-8695-VBF-VBKx<br><br>CLASS ACTION<br><br>RINO INTERNATIONAL CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Hearing: November 14, 2011<br>Time:  1:30 p.m.<br>Place:  Courtroom 9<br>Judge:  Hon. Valerie Baker Fairbank |

TABLE OF CONTENTS

Page

**NOTICE OF MOTION AND MOTION TO DISMISS**........................................1

**MEMORANDUM OF POINTS AND AUTHORITIES** .......................................1

**I.     INTRODUCTION** .................................................................................1

**II.    SUMMARY OF KEY ALLEGED FACTS**...................................................2

**III.   ARGUMENT** ........................................................................................4

     A.     The Complaint Fails to Plead Falsity and Fraud with the Requisite Particularity.................................................................5

     B.     The Complaint Fails to Plead Loss Causation .......................................8

     C.     The Complaint Fails to Adequately Allege RINO's Scienter ..............10

          1.     The Complaint Fails to Sufficiently Allege RINO's Scienter Because It Fails to Allege That Any Particular Defendant Knowingly Engaged in Wrongdoing................................................11

          2.     A Holistic Review of the Scienter Allegations Does Not Give Rise to a Strong Inference of Scienter, Either ........................................................14

**IV.    CONCLUSION**.....................................................................................16

TABLE OF AUTHORITIES

Page

Cases

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) .............................................13

Commc'ns Workers of Am. Plan v. CSK Auto Corp., No. CV06-1503-PHX-DGC, 2007 WL 951968 (D. Ariz. Mar. 28, 2007)........................................14

Dura Pharm., Inc. v. Broudo, 544 U.S. 336 (2005)....................................................8

Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976) ...............................................5, 6

Glazer Capital Mgmt., LP v. Magistri, 549 F.3d 736 (9th Cir. 2008).............passim

Henning v. Orient Paper, Inc., Case No. CV 10-5887, 2011 WL 2909322 (C.D. Cal. July 20, 2011).......................................................................12

In re Accuray, Inc. Sec. Litig., 757 F. Supp. 2d 936 (N.D. Cal. 2010).....................8

In re Cornerstone Propane Partners, L.P. Sec. Litig., 355 F. Supp. 2d 1069 (N.D. Cal. 2005)........................................................................15

In re Daou Sys., Inc., Sec. Litig., 411 F.3d 1006 (9th Cir. 2005) .......................4, 6

In re Dot Hill Sys. Corp. Sec. Litig., 594 F. Supp. 2d 1150 (S.D. Cal. 2008) ........10

In re Downey Sec. Litig., No. CV 08-3261-JFW (RZx), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ...............................................................13

In re Hansen Natural Corp. Sec. Litig., 527 F. Supp. 2d 1142 (C.D. Cal. 2007)........................................................................................13

In re Impax Labs., Inc. Sec. Litig., No. C 04-04802 JW, 2007 WL 5076983 (N.D. Cal. Jan. 3, 2007)..............................................................8

In re Int'l Rectifier Corp. Sec. Litig., No. CV 07-2544, 2008 WL 4555794 (C.D. Cal. May 23, 2008).......................................................14

In re McKesson HBOC, Inc. Sec. Litig., 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...........................................................................................7

In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig., 218 F.R.D. 76 (S.D.N.Y. 2003) .............................................................................15

In re Oak Tech. Sec. Litig., No. 96-20552 SW, 1997 WL 448168........................13 (N.D. Cal. Aug. 1, 1997)

In re Pac. Gateway Exch., Inc., Sec. Litig., 169 F. Supp. 2d 1160 (N.D. Cal. 2001)........................................................................................7

In re Rackable Sys., Inc. Sec. Litig., No. C 09-0222 CW, 2010 WL 199703 (N.D. Cal. Jan. 13, 2010).........................................................15

In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970 (9th Cir. 1999) .................... 10

Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009) ....................................... 5

Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049 (9th Cir. 2008) ... 7, 8

South Ferry LP, No. 2 v. Killinger, 542 F.3d 776 (9th Cir. 2008) ......................... 10

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007) .................. 10, 11

United States v. Ritchie, 342 F.3d 903 (9th Cir. 2003) ............................................. 3

WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc., No. 10-55401, 2011 WL 3673116 (9th Cir. Aug. 23, 2011) .................................................. 16

Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981 (9th Cir. 2009) ............. 5, 11

Statutes

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ............. passim

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 14, 2011 at 1:30 pm, or as soon thereafter as the matter can be heard, in the courtroom of the Honorable Valerie Baker Fairbank, United States District Court, Central District of California, Western Division, Courtroom 9, 312 North Spring Street, Los Angeles, California, 90012, Defendant RINO International Corporation ("RINO" or the "Company") will move the Court for an order dismissing all claims against it in Plaintiffs' Consolidated Amended Complaint.

Defendant RINO seeks an order from the Court dismissing the First Cause of Action for RINO's alleged violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.

This Motion is made following the conference of counsel required by Local Rule 7-3, which took place by email on September 6, 2011.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice ("RJN"), the Declaration of Emily V. Griffen in support of the Motion ("Griffen Decl."), all pleadings, prior briefing, exhibits, documents, and other records and files in this action, and upon such other evidence or arguments as may be presented at the hearing in this matter.

DATED:  September 9, 2011         SHEARMAN & STERLING LLP


                                  By:  _____/s/ Jeffrey S. Facter_____
                                           Jeffrey S. Facter


                                  Attorneys for Defendant RINO International
                                  Corporation

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.   INTRODUCTION**

RINO International Corporation ("RINO" or the "Company") is a Chinese environmental and remediation company that has only ever done business in China, but which recently became a U.S. public company (with its shares traded on the NASDAQ) as a result of a reverse merger in 2007.

There can be no question that this lawsuit would not have been filed but for a highly-publicized, highly negative "research" report about RINO issued by an interested short seller outfit by the name of Muddy Waters Research (the "Muddy Waters Report" or "Report").  The authors of the Muddy Waters Report freely admit that they do not understand exactly what is going on at RINO, but assert that something must be up because the numbers RINO has reported to the Securities and Exchange Commission ("SEC") in the U.S. don't match up with those reported to the State Administration for Industry and Commerce (the "SAIC") in China, and because a handful of RINO's claimed customers purportedly denied any such relationship.

Plaintiffs claim to have undertaken an investigative effort, as a result of which they also allege the concealment of related party transactions whereby the Company allegedly transacted with other companies owned, respectively, by CEO Dejun Zou's mother and nephew.  The only problem is -- and it is a fatal one -- that this Complaint is the first time these alleged related party transactions have been made public.  Plaintiffs therefore have not and cannot allege loss causation as to this alleged omission, because RINO's shareholders suffered no loss connected to the supposed related party transactions revealed for the first time in the Complaint. Those claims therefore must be dismissed.

With respect to the alleged financial misrepresentations and the alleged fabrication of customers, Plaintiffs not only fail to identify the specific statements

| DEF. RINO'S MOT. TO DISMISS<br>PLS' CONSOL. AM. COMPL. | 1 | NO. CV-10-8695-VBF-VBKx<br>296993 |
| --- | --- | --- |

that are claimed to be false or misleading, but their allegations also critically and sorely lack any actual <u>facts</u> that explain the "who, what, where, when, and how" of what they label as an alleged fraud.  The Complaint offers not a single allegation that any individual officer or director knew that RINO's revenue was overstated, or that any customer relationship was fabricated, at the time any allegedly false or misleading statements were made.  Without these essential facts, Plaintiffs fall hopelessly short of their heavy pleading burden under Rule 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA") (on both the requirements of falsity and scienter), and their Complaint must be dismissed.

Nor are Plaintiffs able to overcome the compelling non-fraudulent inference that emerges when the allegations are reviewed as a whole.  No individual defendant is alleged to have sold any stock.  The alleged "inaccuracies" and "inconsistencies" were just that, and were completely out in the open for all to discover (which is how Muddy Waters and now Plaintiffs were able to even make out a case against RINO in the first place).  And though the alleged discrepancies may appear to be large, Plaintiffs are unable to allege any facts that sufficiently plead that this was a fraud as opposed to a mistake.

Even the biggest of mistakes do not support a securities fraud claim without some degree of intentionality.  Not only that, the burden is on Plaintiffs to plead intentionality with particularized facts before they can be permitted to move past a motion to dismiss.  The Complaint does not do so, and must be dismissed.

## II.   SUMMARY OF KEY ALLEGED FACTS

On April 18, 2011, court-appointed Lead Plaintiff Stream SICAV and named plaintiff Todd Marx ("Plaintiffs") filed a Consolidated Amended Complaint (the "Complaint" or "Compl.") against RINO and eight of RINO's present and former officers and directors (the "Individual Defendants," and together with RINO, "Defendants").

RINO is a company that operates solely in the People's Republic of China ("PRC"). Compl. ¶ 4. It engages in the design, development, manufacture and installation of industrial equipment used mainly for environmental protection. *Id.* It was not until 2007 that RINO became a U.S. issuer (through a reverse merger[1]), thereby allowing the Company's stock to be publicly traded in the United States (on NASDAQ). *Id.* ¶¶ 21, 7.

RINO came under the spotlight when, on November 10, 2010, Muddy Waters issued a highly negative report about RINO. Compl. ¶¶ 6, 107. The Muddy Waters Report, which rated the Company's stock as a "strong sell," alleged that the Company's financials were fraudulent, and that the revenue reported by the Company was overstated and many of the customer relationships claimed by the Company did not exist. *Id.* ¶¶ 108-09. The Report also advised, at the very top of its cover page, that readers "should assume" that Muddy Waters "has a short position in the stock" covered in the Report, that it therefore "stands to realize significant gains in the event that the price of the stock declines," and that it "intend[s] to continue transacting in [RINO] securities" following the publication of its report. *See* Griffen Decl., Ex. A; RJN at 1-2.[2] After Muddy Waters issued its Report, RINO's stock price fell. Compl. ¶ 6.

---

[1] "In a reverse merger, an existing public shell company merges with a private operating company in a transaction in which the shell company is the surviving legal entity. While the public shell company survives the merger, the shareholders of the private operating company typically hold a large majority of the shares of the public company after the merger and the management and board of the private company will assume those roles in the post-merger public company." Sec. & Exch. Comm'n, Release No. 34-65034 (Aug 4, 2011) (proposing rule change adopting additional listing requirements for companies following consummation of "reverse merger" with shell company), available at http://www.sec.gov/rules/sro/nyse/2011/34-65034.pdf.

[2] A court may properly consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

This action was initiated on November 12, 2010, two days after the Muddy Waters Report was published. *See* Docket No. 1. The current Complaint, filed in April 2011, asserts a single claim against RINO for its alleged violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Compl. at 38. Plaintiffs assert this claim on behalf of a putative class consisting of all persons and entities "who purchased the publicly traded common stock and call options and who sold put options of RINO between March 31, 2009 through November 17, 2010 (the 'Class Period')." Compl. ¶ 3.

The Complaint never identifies which specific statements by RINO are alleged to be false or misleading. However, the Complaint contains vague, high-level assertions about the false and misleading nature of the reports RINO filed with the SEC in 2008 and 2009 which can generally be sorted into three categories. First, Plaintiffs claim that RINO's SEC reports materially misstated RINO's revenue, gross profit, tax liabilities, and other items. *See* Compl. ¶¶ 45, 65. Second, Plaintiffs claim that certain of RINO's claimed customers were not in fact customers of the Company. *See* Compl. ¶ 97. Third, Plaintiffs claim that RINO failed to disclose certain related party transactions, *i.e.*, that its "two largest suppliers were secretly owned by CEO Zou's mother and nephew respectively." *See* Compl. ¶¶ 46-47, 67.

## III.   ARGUMENT

To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must allege these elements: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys., Inc.*, *Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005). "At the pleading stage, a complaint stating claims under [S]ection 10(b) and Rule 10b-5 must [also] satisfy the dual

pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Rule 9(b) requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Put another way, plaintiffs must state "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

The legislatively mandated, heightened pleading standards of the PSLRA also apply and require plaintiffs claiming securities fraud to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . ." 15 U.S.C. § 78u-4(b)(1). In addition, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id*. at § 78u-4(b)(2). That state of mind, scienter, is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 & n.12 (1976). Plaintiffs' Complaint fails to meet these demanding pleading requirements.

A.    The Complaint Fails to Plead Falsity and Fraud with the Requisite Particularity

The Complaint fails to allege with sufficient particularity the specific statements that are alleged to have been false or misleading, the reasons for falsity, or the "who, what, when, where, and how" of the supposed fraud. Nowhere is this more evident than it is with the alleged overstatement of revenue and related financial misrepresentations. On the revenue reported by RINO in 2008 and 2009, Plaintiffs point out only that the respective numbers RINO reported to the SEC on the one hand, and those it reported to the SAIC on the other,[3] don't match. *See*

---

[3] Plaintiffs allege, and RINO assumes as true for purposes of this motion only, that "[t]he SAIC (State Administration for Industry and Commerce) is the Chinese government body that regulates industry and commerce in China. It is primarily responsible for business registration, business licenses issuing and renewing, and acts as the government supervisor of corporations. All Chinese companies are required to file financial statements with the Chinese government annually or bi-annually." Compl. at 11-12, n.1.

Compl. ¶¶ 45(a), 65(a). Without more, however, this is hardly a sufficient allegation of fraud. It is not even clear if Plaintiffs allege either that the SEC filings were wrong (which may be actionable), the SAIC filings were wrong (which likely is not actionable in a U.S. securities fraud case), or both. Plaintiffs provide no facts regarding the differences or similarities in the accounting rules and other relevant reporting requirements that apply in China versus those that apply in the U.S.[4] Plaintiffs also do not allege, as they are required to do, who did what when to cause RINO to report the wrong number or why any such action constituted an intentional fraud as opposed to a mistake. *See*, *e.g.*, *id*. at ¶ 65(a) (stating merely that "[t]he revenue reported by RINO with the PRC SAIC for fiscal 2009 is substantially less than the revenue RINO reported in its audited financial statement filed with the SEC for 2009").

In the Ninth Circuit, this is insufficient under both Rule 9(b) and the PSLRA's particularity requirements. *See, e.g., Daou Systems,* 411 F.3d at 1016 ("When pleading irregularities in revenue recognition, plaintiffs should allege (1) such basic details as the approximate amount by which revenues and earnings were overstated; (2) the products involved in the contingent transaction; (3) the dates of any of the transactions; or (4) the identities of any of the customers or

[4] Nor do Plaintiffs explain which RINO entity they mean when they refer to the revenue "RINO" reported "with the PRC SAIC." Compl. ¶ 65(a). As Plaintiffs themselves acknowledge, RINO is a U.S. holding company which "primarily operates through its subsidiaries and variable interest entities ('VIEs') in the People's Republic of China." *Id*. ¶ 4. Thus, it does not appear from the Complaint's allegations that the same entity that filed SEC filings in the U.S. (RINO, the U.S holding company) also filed SAIC filings in China, which may explain some of the discrepancies between them. There may be other explanations for the discrepancies between the SEC and SAIC filings as well, none of which are addressed in the Complaint. *See, e.g.,* Benjamin Wey, "A China Expert's Views on Understanding SAIC and SEC Filing Discrepancies for U.S. Listed China Based Companies," PR Newswire, Sept 27, 2010 (concluding, upon analysis of several distinguishing factors, that "it is highly unusual and it should cause real concerns to investors if SAIC filings DO match a public company's SEC filings"), available at http://www.prnewswire.com/news-releases/benjamin-wey---a-china-experts-views-on-understanding-saic-and-sec-filing-discrepancies-for-us-listed-china-based-companies-103869893.html.

[company] employees involved in the transactions.") (quoting *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1273 (N.D. Cal. 2000)) (internal quotations omitted).[5]

While Plaintiffs also take issue with the amounts RINO reported in its annual reports as having been paid in Value-Added-Taxes ("VAT") to PRC authorities, on that point, too, Plaintiffs allege merely that those amounts must be "inaccurate," based on their own cursory mathematical calculations. Compl. ¶¶ 45(c), 65(e). Again, Plaintiffs offer no facts about how much the numbers reported by RINO are off, or how they came to be that way (and why the explanation must be one that constitutes fraud). Underscoring the breadth (but not depth) of Plaintiffs' allegations, the Complaint also claims that RINO "should have paid" more in VAT than it actually did. Compl. ¶ 65(h). But this kind of allegation, of course, is not properly the subject of a fraudulent misrepresentation claim, and serves only to demonstrate Plaintiffs' misunderstanding of what they must plead.

On the gross profits RINO reported for 2009, Plaintiffs simply conclude that the true number "could not be much more than $1.1 million and was likely much less," and then offer their further speculation that it "was really closer to $700,000," "[i]f one considers" the proportion RINO's raw materials make up in its costs of sales. *Id.* ¶ 65(d). These vague guesses that are all over the map are hardly the

---

[5] *See also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) ("[T]his Circuit has consistently held that the PSLRA's falsity requirement is not satisfied by conclusory allegations that a company's class period statements regarding its financial well-being are *per se* false based on the plaintiff's allegations of fraud generally.") (citing cases); *In re Vantive Corp. Sec Litig.*, 283 F.3d 1079, 1091 (9th Cir. 2002) (affirming dismissal where falsity not pled with particularity because, among other things, "there is no sufficient allegation of the amounts by which revenues were allegedly overstated"); *In re Pac. Gateway Exch., Inc., Sec. Litig.*, 169 F. Supp. 2d 1160, 1166 (N.D. Cal. 2001) (granting motion to dismiss for failure to plead falsity with particularity because "plaintiffs do not identify particular transactions where defendants improperly recognized revenues, nor do they provide details concerning the amount by which bandwidth or undersea cable assets, revenues, and earnings were overstated; the dates of the transactions; or the details of the specific entries in the reports that are alleged to have been made in error.").

---

particularized facts required by Rule 9(b) and the PSLRA. *See In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 944 (N.D. Cal. 2010) (mere speculation "cannot substitute for the specific facts necessary to plead falsity."). Also conspicuously absent are any allegations containing actual facts showing who at RINO arrived at any of these numbers, or who prepared the various reports that were submitted to the SEC, the SAIC, and the Chinese Tax Bureau. *See*, *e.g.*, Compl. ¶ 65(c).

It is not enough for Plaintiffs merely to point out some apparent inconsistencies in financial statements filed in two very different countries and then speculate that there are fraudulent reasons for those inconsistencies. The Complaint does no better than the Muddy Waters Report, which could say at best that "[i]n a general sense . . . , RINO is committing a complicated accounting fraud with a lot of moving parts." Griffen Decl., Ex. A at 8. Unfortunately for Plaintiffs, their Complaint is subject to the exacting pleading requirements of Rule 9(b) and the PSLRA. Without the additional specificity Congress has required for a securities fraud complaint, Plaintiffs have not pleaded a valid cause of action.

B.    The Complaint Fails to Plead Loss Causation

Plaintiffs also fail adequately to plead loss causation, which is a required element of a Section 10(b) claim. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 338 (2005). To establish loss causation, a plaintiff must plead and prove "that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Id.* at 346. When what is alleged is a misrepresentation or omission, loss causation must be shown by a drop in stock price when the alleged truth was revealed to the market. *See Metzler*, 540 F.3d at 1063 ("[T]he complaint must allege that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses."); *In re Impax Labs., Inc. Sec. Litig.*, No. C 04-04802 JW, 2007 WL 5076983, at *3 (N.D. Cal. Jan. 3, 2007) ("To plead loss causation adequately, a plaintiff must allege [that] . . . the 'misstatement or

omission concealed something from the market that, when disclosed, negatively affected the value of the security.'") (citation omitted).

Here, Plaintiffs allege that the putative Class Period closed on November 17, 2010. Compl. ¶ 3. As a matter of logic, then, any revelation of the purported "truth" must have occurred prior to November 17, in order to have affected the stock price and caused an injury during the Class Period. But according to Plaintiffs' own allegations, the only revelation of substance that occurred prior to this date was the publication of the Muddy Waters Report on November 10, 2010. *See* Compl. ¶¶ 107-117. This means, then, that Plaintiffs have failed to plead loss causation with regard to any alleged "truth" *not* revealed by the Muddy Waters Report, and any alleged misrepresentation or concealment of such a "truth" is not actionable and must be dismissed.

Significantly, the related party transactions alleged by Plaintiffs at length in the Complaint are nowhere mentioned in the Muddy Waters Report. *Compare* Compl. ¶¶ 46-62, 67-78 *with* Griffen Decl., Ex. A. Neither RINO CEO Mr. Zou's nephew nor mother is referenced in the Muddy Waters Report. The relevant entities, Dalian Shuangying Trading Co., Ltd. and Dalian Shuntongda Trading Co., Ltd., do not make an appearance, either. This entire category of allegations can and should therefore be dismissed for failure to plead loss causation alone.

Furthermore, though the Muddy Waters Report does assert some accounting inconsistencies and issues with RINO's claimed customers, the Complaint also contains allegations that were not "revealed" by the Muddy Waters Report. For example, although the Muddy Waters Report did discuss the discrepancy in the respective revenue figures reported by RINO to the SEC and the SAIC in 2009, the Muddy Waters Report said nothing about RINO's SAIC filings for *2008*. *Compare* Griffen Del., Ex. A *with* Compl. ¶¶ 45(a), 65(c). On the customer lists as well, although Muddy Waters discussed nine of RINO's purported customers and claimed

DEF. RINO'S MOT. TO DISMISS        9        NO. CV-10-8695-VBF-VBKx
PLS' CONSOL. AM. COMPL.                                    296993

that five denied being customers, Plaintiffs investigated twenty-two and concluded that at least ten were not customers of RINO.  *Compare* Griffen Decl., Ex. A at 2-3 *with* Compl. ¶ 97.  Any such "truth" that cannot be found in the Muddy Waters Report has not been revealed to the market and thus cannot have caused any resulting alleged loss.  Therefore, the alleged misrepresentation or concealment of those purported "facts" must be dismissed for failure to satisfy the element of loss causation.  *See In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1164 (S.D. Cal. 2008) (no loss causation pled as to alleged misrepresentations about progress of Dot Hill's acquisition of Chapparal technology, where press release announced "*failure to integrate* Chapparal technology" but did not disclose information concerning the "*progress of [] integration*") (emphases added).

C.   The Complaint Fails to Adequately Allege RINO's Scienter

The PSLRA also requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  "In a securities fraud action like this one, there is no dispute as to the required state of mind:  the plaintiffs must show that defendants engaged in '*knowing*' or '*intentional*' conduct."  *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008) (emphasis in original; quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 975 (9th Cir. 1999)).  The Ninth Circuit has held that "reckless conduct [*i.e.*, deliberate recklessness] can also meet this standard 'to the extent that it reflects some degree of *intentional* or *conscious* misconduct.'" *Id.* (emphases added).

A court must view scienter allegations as a whole, and in "determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).  To qualify as "strong" within the meaning of the statute, an inference of scienter must be more than merely plausible or

reasonable; it must be cogent and "at least as compelling as any opposing inference of non-fraudulent intent." *Id.* at 314.  Courts in this Circuit are to conduct a dual inquiry:  first, the court must "determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient, [courts must] . . . conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Zucco Partners*, 552 F.3d at 992.  The Complaint does not adequately allege RINO's scienter.

> 1. The Complaint Fails to Sufficiently Allege RINO's Scienter Because It Fails to Allege That Any Particular Defendant Knowingly Engaged in Wrongdoing

The Complaint asserts that the "scienter of the Individual Defendants and other employees and agents of the Company is . . . imputed to RINO under *respondeat superior* and agency principles."  Compl. ¶ 42.  The implication is that the fraud (that must have been committed) must have been known to at least someone in the Company, and that to suggest as much is sufficient to allege RINO's scienter.  But that is not a correct statement of the law.  The Ninth Circuit does not generally allow plaintiffs to plead a corporation's scienter by relying on a "collective scienter" theory, and has instead required plaintiffs to specifically "plead scienter with respect to those individuals who actually made the false statements." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 744-45 (9th Cir. 2008). Plaintiffs here fail to do so.

As a general matter, conspicuously absent from the Complaint are any particularized allegations that any specific individual RINO officer or director knowingly or intentionally committed fraud or other misconduct.  For example, though the Complaint alleges that RINO fabricated the existence of certain

customers, there is no allegation that a particular individual at RINO (much less a defendant alleged to have made a false or misleading statement) either himself or herself fabricated a customer or knew that any claimed customer relationship did not in fact exist.

The only individual defendants for whom scienter is even attempted to be pled is Mr. Zou (RINO's CEO and board member), and, to a much lesser extent, Jianping Qiu (RINO's Chairman of the Board and Mr. Zou's spouse). *See* Compl. ¶¶ 29-30, 99-106. However, the primary scienter allegation against Mr. Zou is sorely lacking. Plaintiffs make much of Mr. Zou's so-called "admission" in a Form 8-K that RINO filed with the SEC on November 19, 2010, following the release of the Muddy Waters Report. Compl. ¶¶ 8, 79. *See* Griffen Decl., Ex. B; RJN at 1-2. But Mr. Zou's reported statement that "the Company did not in fact enter into two of the six purported contracts" says nothing about the circumstances of those two instances (*e.g.*, whether there was a technical error, a failure to complete the required paperwork, or some other reason). Nor does it say anything about when Mr. Zou came to know that these two contracts had not properly been entered into. Similarly, Mr. Zou's statement that there might be "problems" with 20-40% of the other contracts at issue says nothing about what those "problems" might be, or when he learned about them. Simply put, these allegations neither constitute an "admission" of securities fraud nor do they give rise to a "strong inference" of Mr. Zou's scienter.[6] The hodgepodge of allegations in the section of

---

[6] Plaintiffs will undoubtedly point to this Court's recent ruling in another case and argue that related party transactions gave rise to a strong inference of the CEO's scienter in that case. *See Henning v. Orient Paper, Inc.*, Case No. CV 10-5887, 2011 WL 2909322, at *5 (C.D. Cal. July 20, 2011). But the related party transactions alleged here are different. In *Orient Paper*, the defendant CEO "allegedly maintained a 70% interest" in another company that acted as Orient Paper's supplier; here, Mr. Zou is not alleged to have had any ownership interest in the related parties and there is no particularized allegation of fact that any cash was transferred back to Mr. Zou (or Ms. Qiu). Also unlike *Orient Paper*, there is no allegation here that any of the related party companies sold any stock. In any event, the alleged concealment of the related party transactions is not actionable

the Complaint entitled "additional facts suggestive of scienter" are also lacking, as they do not contain any specific facts establishing what Mr. Zou and Ms. Qiu knew and when.  Compl. ¶¶ 99-106.

The Complaint's boilerplate allegations that the Individual Defendants were "privy to" information "by virtue of their responsibilities and activities as senior officers and/or directors" are similarly deficient.  Compl. ¶¶ 136-37.  *See In re Oak Tech. Sec. Litig.*, No. 96-20552 SW, 1997 WL 448168, at *11 (N.D. Cal. Aug. 1, 1997) (allegations of knowledge based on positions within a company are "insufficient to establish [defendants'] liability for alleged misstatements"); *In re Downey Sec. Litig.*, No. CV 08–3261–JFW (RZx), 2009 WL 2767670, at *12 (C.D. Cal. Aug. 21, 2009) (allegations of knowledge based on defendant's title alone insufficient to give rise to strong inference of scienter).  *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (conclusions "couched as [] factual allegation[s]" are not entitled to deference on a motion to dismiss).

Nor do Plaintiffs' bare allegations of the names of the individual officers who signed the SEC filings (or the Sarbanes-Oxley certifications) help them allege a strong inference of scienter.  *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1160 (C.D. Cal. 2007) ("Without allegations that each of the Individual Defendants that signed various Hansen public filings knew those public filings contained misstatements, the Individual Defendants' signatures on those public filings alone does not give rise to a strong inference of scienter.").  *See also Glazer*, 549 F.3d at 747 ("Sarbanes-Oxley certifications are not sufficient, without more, to raise a strong inference of scienter.").

in this case for failure to plead loss causation, and those allegations must therefore be dismissed.  *See* Section III.B., *supra.*

### 2. A Holistic Review of the Scienter Allegations Does Not Give Rise to a Strong Inference of Scienter, Either

Even when all of the scienter allegations here are reviewed holistically, there is no strong inference of Mr. Zou's or Ms. Qiu's (or any other individual defendant's) scienter, and there is therefore no strong inference of RINO's scienter. Significantly, Plaintiffs do not allege that any of the Individual Defendants sold Company stock during the Class Period. Courts have repeatedly held that the absence of suspicious trading during the class period negates an inference of scienter. *See, e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994).

Also, to the extent that the accounting inconsistencies alleged by Plaintiffs are obvious from the face of RINO's SEC filings (*see*, *e.g.*, Compl. ¶ 45(c) (taking issue with the amount RINO claimed to have paid in VAT to PRC authorities as disclosed in the 2008 10-K)), the open and notorious fashion of these inconsistencies negates an inference of scienter. *See In re Watchguard Sec. Litig.*, No. C05-678J, 2006 WL 2038656, at *6 (W.D. Wash. Apr. 21, 2006) ("[W]hen a blatant error has been committed each quarter in open and notorious fashion for years, it is reasonable to infer that a Defendant who perpetuated the error did not do so deliberately.").

Finally, Plaintiffs' allegation that RINO "has changed auditors three times in the last 4 years and has changed its CFO's four times in that four year time period" negates, rather than bolsters, an inference of scienter. Courts have rejected such allegations as evidence of scienter. *See, e.g., Commc'ns Workers of Am. Plan v. CSK Auto Corp.*, No. CV06-1503-PHX-DGC, 2007 WL 951968, at *6 (D. Ariz. Mar. 28, 2007) ("Neither a resignation nor a termination by itself gives rise to a strong inference of scienter."); *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-2544, 2008 WL 4555794, at *16 (C.D. Cal. May 23, 2008) ("A resignation or termination provides evidence of scienter only when it is accompanied by additional

evidence of the defendant's wrongdoing."). Instead, these facts make it that much more likely that any inconsistencies were the result of an innocent mistake. *See*, *e.g.*, *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C 07-06140 MHP, 2011 WL 1045120, at *9 (N.D. Cal. Mar. 22, 2011) (citing chaotic nature of accounting department and additional chaos created by VeriFone's acquisition of foreign subsidiary as factors negating inference of scienter).

Though Plaintiffs will undoubtedly argue in opposition that the discrepancies in the numbers reported by RINO to the SEC versus the SAIC are too great to support any theory other than fraud, courts have rejected such an argument, and for good reason. *See In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005) ("In order to distinguish 'deliberate recklessness' from 'ordinary carelessness,' allegations of GAAP violations must be augmented by 'facts that shed light on the mental state' of defendants, rather than conclusory allegations that defendant must have known of the accounting failures due to the degree of departure from established accounting principles.").[7]

Indeed, "circumstantial evidence of 'simple recklessness'" is insufficient. *In re Rackable Sys., Inc. Sec. Litig.*, No. C 09-0222 CW, 2010 WL 199703, at *4 (N.D. Cal. Jan. 13, 2010) (citation omitted). And "even inexcusable negligence is not equivalent to the mental state required by Rule 10(b)." *In re VeriFone Holdings,*

---

[7] Plaintiffs also point to various actions taken by NASDAQ and the SEC, including the SEC's issuance of an order on April 11, 2011 that noted simply that "questions have arisen" regarding the "size of the company's operations and number of employees," the "existence of certain material customer contracts," and the "existence of two separate and materially different sets of corporate books and accounts." Compl. ¶¶ 80-83. But these "questions," too, are far from evidence of fraud. *See*, *e.g.*, *Glazer*, 549 F.3d at 748 (company's settlement agreement with SEC and DOJ "were not sufficient to meet the pleading requirements of the PSLRA" because they contained "legal conclusions, rather than particularized facts giving rise to a strong inference of scienter" on the part of an individual speaker); *VeriFone Holdings*, 2011 WL 1045120, at *9 ("The SEC's belief is irrelevant, and the court will not speculate regarding the SEC's motivation."); *In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003) (striking allegations to SEC and NASD complaints and "Attorney General's conclusory report" as immaterial because no "adjudication on the merits or legal or permissible findings of fact").

*Inc. Sec. Litig.*, No. C 07-06140 MHP, 2009 WL 1458211, at *8 (N.D. Cal. May 26, 2009). Here, even when reviewed holistically, given the utter lack of specificity in the Complaint's scienter allegations, the fraudulent inference urged by Plaintiffs is not cogent nor as compelling as a non-fraudulent inference. Plaintiffs have failed to meet their pleading burden and the Section 10(b) claim against RINO must be dismissed.[8]

## IV.    CONCLUSION

For these and all of the foregoing reasons, Defendant RINO respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety with prejudice.

DATED:  September 9, 2011             SHEARMAN & STERLING LLP


                                     By:  _____/s/ Jeffrey S. Facter_____
                                                   Jeffrey S. Facter

                                     Attorneys for Defendant RINO International
                                     Corporation

---

[8] Even if Plaintiffs had sufficiently alleged scienter with respect to Mr. Zou, Ms. Qiu, or any other Individual Defendant -- which they have not -- a recent decision by the Ninth Circuit suggests that that scienter may not be attributed to RINO in any event. In *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, No. 10-55401, 2011 WL 3673116 (9th Cir. Aug. 23, 2011), the founders of Spot Runner were alleged to have engaged in a "pump and dump" scheme and to have "diverted tens of millions of dollars away from the Company and into [their own] pockets . . . ." *Id*. at *13. The Ninth Circuit dismissed a Rule 10b-5 claim for a material omission as against Spot Runner for failure to adequately allege scienter, holding that the allegations "tend to paint Spot Runner as a victim of the Founders' behavior, rather than as a potentially culpable perpetrator of fraud," and reasoning that "[b]ecause Spot Runner is a corporate entity distinct from the Founders, the Founders' motivation to commit fraud cannot be automatically ascribed to the Company, particularly where the alleged behavior is at odds with the Company's financial interests." *Id*. Thus, even if Plaintiffs' allegations, deficient though they may be, are taken as true, Plaintiffs have painted RINO, if anything, as a victim of a fraud perpetrated against it, not a perpetrator of fraud.